Danielle Victor
4 Loring Road
Methuen, MA 01844
978-857-4885
daniellevictorlegal@yahoo.com

Self-Represented

FILED
CLERK, U.S. DISTRICT COURT
05/16/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: AP DEPUTY

NO CV30

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIELLE VICTOR,<br>Petitioner/Plaintiff,<br>v.<br>SOUTHWEST WINE & SPIRITS, LLC, ET AL,<br>Respondent/Defendant | Case No.: 2:22-cv-03312-DSF(SKx)<br>1) PLAINTIFF'S NOTICE OF REMOVAL<br>2) PLAINTIFF'S REQUEST FOR AN ATTORNEY<br>3) PLAINTIFF'S REQUEST FOR EMERGENCY AND IMMEDIATE RELIEF<br>4) MEMORANDUM AND POINTS IN SUPPORT THERETO<br>5) PLAINTIFF DANIELLE VICTOR'S DECLARATION TO PROCEED IN FORMA PAUPERIS<br>6) PLAINTIFF'S VERIFICATION |

Pursuant to 28 U.S.C. §1404, subdivision (a), 28 U.S.C. §1331, 28 U.S.C $1332 subdivision (a), paragraph (1), and paragraph (3), and 28 U.S.C §1251 subdivision (a), subdivision (b), paragraph (1), paragraph (2), and paragraph (3), California Code of Civil Procedure §397, DANIELLE VICTOR (hereinafter "Ms. Victor" or "Plaintiff"), hereby submits

to this court a notice of removal of her Los Angeles Superior Court, case #20STCV34566, to the U.S. District Court, Central District of California.

## PARTIES TO THE COMPLAINT

### A. PLAINTIFF

Ms. Victor has an open and pending Los Angeles Superior Court case, **#20STCV34566**, *Danielle Victor v. Southwest Wine & Spirits, LLC*, this case was thrown into arbitration, unlawfully, and is now pending in arbitration with JAMS, INC. (hereinafter "JAMs"). The reference number to this arbitration is **1220071214**. Ms. Victor is the plaintiff in this case and is in pro se, not by choice, but as a result of a prejudice and bias litigation.

### B. DEFENDANTS

The Defendants are **SOUTHWEST WINE & SPIRITS, LLC**, a Delaware limited liability company; **WALLY'S AUCTION HOUSE, LLC**, a California limited liability company; **MEL-JEN**, a California limited liability company; **GUESS?, INC.**, a corporation operating under Delaware law; **PAUL MARCIANO**, an individual; **MAURICE MARCIANO**, an individual; **CHRISTIAN NAVARRO,** an individual; **THOMAS KACHANI**, an individual**;** **MATTHEW TURNER**, an individual; **MATTHEW MARCIANO,** an individual; **JONATHAN POULIN**, an individual; **MINA JONES**, an individual; **NANCY HUNTER**, an individual; **SAMI FROMER**, an individual; **TATUM JIMENEZ**, an individual; **CHRISTIE BAKER**, an individual; **KEITH BJELAJAC**, an individual; **LAURA BURNS**, an individual; **CHRISTIE'S WINE, INC.**, a corporation operating under Delaware law; **CHRISTIE'S INC**,

a corporation operating under New York law; **CHRISTIE'S INC**, a corporation operating under New Jersey law; **3900 WA ASSOCIATES, LLC**, a corporation operating under Delaware law; **DELTA AIR LINES, INC.**, a corporation operating under Delaware law; **1840 HIGHLAND PARTNERS, LLC**, a California limited liability company; **CONCORD REAL ESTATE SERVICES, INC.**, a corporation operating under California law; **MOSS MANAGEMENT SERVICES, INC.**, a corporation operating under California law; **JEFF GREENE**, an individual; **JASON FENESCEY**, is an individual; and **DOES 1-100**, inclusive.

**ARGUMENT IN SUPPORT OF MS. VICTOR'S MOTION TO TRANSFER VENUE**

Ms. Victor's previous legal counsel; WALTER MOSLEY, (hereinafter "Mr. Mosley"), NATHALIE MEZA CONTRERAS, (hereinafter "Ms. Contreras"), and CARLOS MONTOYA, (hereinafter "Mr. Montoya") whom collectively will be referred too as ("prior legal counsel") or ("Mosley & Associates"), a fictitious business name; filed Ms. Victor's complaint under the false representation that such complaint was genuine and true in September of 2020. The complaint filed by Mosley & Associates was entirely untrue and incorrect and was done so with intention to help the Defendants conceal their unlawful conduct and crimes. Find attached in **Exhibit 1**, Ms. Victor's first amended verified general and factual allegations against the Defendants, each of them. Find attached in **Exhibit 2**, Ms. Victor's first amended legal claims and complaint for damages against the Defendants. Both exhibits are over three hundred pages with over fifty causes of actions against the Defendants. None of Ms. Victor's real and genuine allegations nor legal claims were provided to the Los Angeles Superior Court by her prior legal

counsel. Mosley & Associates also put the wrongly named Defendants, intentionally, on the complaint they filed on behalf of Ms. Victor so she would technically be suing no real person or company.

California Code of Civil Procedure §397 states:

> "*The court may, on motion, change the place of trial in the following cases: subdivision (a) when the court designated in the complaint is not the proper court.*"

Further, California Code of Civil Procedure §396a., subdivision (b) states:

> "*If it appears from the complaint or affidavit, or otherwise, that the superior court or court location where the action or proceeding is commenced is not the proper court or court location for the trial, the court where action or proceeding is commenced, or a judge thereof, shall, whenever that fact appears, transfer it to the proper court or court location, on its own motion, or on a motion…*"

The court designated in Mosley & Associates complaint filed in September of 2020, on behalf of Ms. Victor, was not the proper court. The court designated should have been the U.S. District Court, Central District of California. On its own motion, or on motion, the court may change the place of trial to the proper court, which would be this court.

Under 28 U.S.C. §1331 it states:

> "*The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.*"

Ms. Victor's case has and is arising under the Constitution, laws, or treaties of the United States giving the district courts original jurisdiction of all civil actions, including Ms. Victor's.

Further, under 28 U.S.C §1332, subdivision (a), it states that the district courts will have original jurisdiction of all civil actions if the controversy exceeds the value of seventy-five thousand dollars ($75,000), and the controversy is between citizens of different states, or between citizens of a State and citizens or subjects of a foreign state, citizens of different States "*and in which citizens or subjects of a foreign state are additional parties.*" Ms. Victor's demand for relief exceeds the value of seventy-five thousand dollars ($75,000), the controversy is between citizens of a State and citizens or subjects of a foreign state, and citizens of different states, giving the U.S. District court, this court, original jurisdiction.

Further, under 28 U.S.C §1404, subdivision (a), which states:

> "*For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…*"

In the interest of justice, a district court, this district court, may transfer a civil action to any other district or division where it might have been brought. Therefore, this case can and needs to be transferred to the U.S. District Court, Central District of California for immediate and emergency judgement and relief.

If the U.S. District Court decides not to transfer this case to their court then Ms. Victor's case will need to be transferred to the Supreme Court. Under 28 U.S.C §1251, subdivision (a), it states:

> "*The Supreme Court shall have original and exclusive jurisdiction of all controversies between two or more states.*"

This controversy is between two or more states, therefore, the Supreme Court has original and exclusive jurisdiction. The Los Angeles Superior Court is NOT the proper court.

Pursuant to the Federal Rules of Civil Procedure, Rule 65, subdivision (b), which is in regards to temporary restraining orders, allows such orders to be made without notice to the adverse party if specific facts in a verified complaint "*show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be in opposition.*" In Exhibit 1 and Exhibit 2, the court can read Ms. Victor's allegations and legal claims against the Defendants, each of them, the damage the Defendants have already caused is irreparable and without such injunction the Defendants, each of them, will continue to cause Ms. Victor irreparable injury, loss, and damaged. The Defense counsel, who has engaged in just as much unlawful conduct as the Defendants they represent, should not be allowed at any point during the remainder of this case to be in opposition to any of Ms. Victor's motions including her right to be protected from the Defendants, each of them.

**UNITED STATES CODES OF LAW/STATUES VIOLATED BY THE DEFENDANTS**

Below is a list of the United States Codes of law/statues that have been violated by the Defendants, each of them. This list is in addition to all legal claims made by Ms. Victor in **Exhibit 2**, in regards to California laws and United States laws unlawfully violated by the Defendants. The United States Codes of law are as follows:

9 U.S.C Chapter 1- General Provisions §3, §4, §6, §10, & §16

9 U.S.C Chapter 2- Convention on the Recognition and Enforcement of Foreign Arbitral Awards §204, §205, §206, & §207

12 U.S.C Chapter 35- Right to Financial Privacy §3403, §3404, §3410, §3411, §3412, §3416, §3417, & §3418

12 U.S.C Chapter 46- Government Sponsored Enterprises §4501

18 U.S.C Chapter 1- General Provisions §2, §3, §4, §16, & §24

18 U.S.C Chapter 2- Aircraft and Motor Vehicles §33

18 U.S.C Chapter 7- Assault §118

18 U.S.C Chapter 10- Biological Weapons §175, § 175b., & §177

18 U.S.C Chapter 11- Bribery, Graft, and Conflicts of Interest §201, §208, §216, §218, §220, & §225

18 U.S.C Chapter 11B- Chemical Weapons §229, §229A, & §229D

18 U.S.C Chapter 13- Civil Rights §241, §242, §245, §246, & §249

18 U.S.C Chapter 15- Claims and Services in Matters Affecting Government §285

18 U.S.C Chapter 19- Conspiracy §371 & §373

18 U.S.C Chapter 25- Counterfeiting and Forgery §471, §474, §495, §496, & §514

18 U.S.C Chapter 26- Criminal Street Gangs §521

18 U.S.C Chapter 27- Customs §548 & §550

18 U.S.C Chapter 31- Embezzlement and Theft §645, §654, §662, & §669

18 U.S.C Chapter 41- Extortion and Threats- §872 & §880

18 U.S.C Chapter 43- False Personation §912

18 U.S.C Chapter 47- Fraud and False Statements §1001, §1002, §1005, §1006, §1016, §1018, §1030, §1031, §1035, §1037

18 U.S.C. Chapter 73- Obstruction Of Justice §1505, §1506, §1510, §1512, §1513, §1514, & §1514A

18 U.S.C. Chapter 79- Perjury §1621, §1622, & §1623

18 U.S.C Chapter 88- Privacy §1801

18 U.S.C Chapter 95- Racketeering §1951, §1959

18 U.S.C Chapter 96- Racketeer Influenced and Corrupt Organizations §1962, §1963, §1964, §1965, §1966, & §1967

18 U.S.C Chapter 101- Records and Reports §2071, & §2073

18 U.S.C Chapter 103- Robbery and Burglary §2112 & §2114

18 U.S.C Chapter 109- Searches and Seizures §2232, & §2236

18 U.S.C Chapter 109A- Sexual Abuse §2244, & §2248

18 U.S.C Chapter 110A- Domestic Violence and Stalking §2261A, §2264

18 U.S.C Chapter 119- Wire and Electronic Communications Interception and Interception of Oral Communications §2511, §2515, §2516, §2517, §2518, §2519, §2520, §2521, & §2522

18 U.S.C Chapter 121- Stored Wire and Electronic Communications and Transactional Records Access §2702, & §2707

28 U.S.C Chapter 16- Complaints Against Judges and Judicial Discipline §351, §352, & §354

28 U.S.C Chapter 31- Attorney General §514, §516, §517, §518, §519, §526, §528, & §530B

28 U.S.C Chapter 33- Federal Bureau of Investigation §533, & §535

28 U.S.C Chapter 111- General Provisions §1653, §1654, §1656, & §1657

28 U.S.C Chapter 113- Evidence; Documentary §1731, §1739, §1746

28 U.S.C Chapter 121- Juries; Trial By Jury §1861, $1872

28 U.S.C Chapter 123- Fees and Costs §1912, §1915, §1918, & §1927

28 U.S.C Chapter 133- Review- Misc. Provisions §2101, §2102, §2104, §2106, §2108, & §2111

28 U.S.C Chapter 165- United States Court of Federal Claims Procedure §2503, §2504, §2505, $2506, §2511, & §2515

The U.S. Constitution amendments that have been violated throughout this litigation and continue to be violated are: Amendment I, (First Amendment), Religion, Speech, Press, Assembly, Petition has been violated. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

Amendment IV, (fourth Amendment), search and seizure, has been violated by the Defendants, each of them, which states:

> *"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

Amendment V, (fifth Amendment), grand jury, double jeopardy, self-incrimination, due process, has been violated by the Defendants, each of them, which states:

> *"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the*

> *militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation."*

Amendment VII, (Seventh Amendment), Common Law Suits- Jury Trial, has been violated. "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

Amendment VIII, (eighth Amendment), excess bail or fines, cruel and unusual punishment, has been violated by the Defendants, each of them, which states:

> *"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."*

Amendment XIII, (thirteenth amendment), abolition of slavery, has been violated by the Defendants, each of them. Section 1 of this Amendment states:

> *"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."*

Section 2 of this Amendment states:

> *"Congress shall have power to enforce this article by appropriate legislation."*

Amendment XIV, (fourteenth amendment), privileges and immunities, due process, equal protection, has been violated by the Defendants, each of them. Section 1 of this amendment states:

> *"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*

**<u>RELATED CASES NOT MARKED AS RELATED NOR COORDINATED</u>**

Another reason Ms. Victor is not comfortable with her case remaining in the Los Angeles Superior Court and JAMs is because of the alarming number of other Plaintiffs/victims that has opened cases in the Los Angeles Superior Court and none of these cases have been marked as related nor coordinated despite all cases having the same or similar legal claims.

When Ms. Victor was being forced to represent herself she discovered multiple related cases for Southwest Wine & Spirits, LLC (hereinafter "Wally's") as well as for GUESS? Inc. (hereinafter "GUESS"), none in which were ever marked as related cases or coordinated.It is important to note that the cases mentioned herein were found by Ms. Victor prior to her devices being hacked and there could be many others that are also related and not coordinated.

***The related cases that have not been coordinated for Wally's are as follows:***

*Shelby Griffiths vs. Southwest Wine & Spirits, LLC, et al.* case **#19STCV30390**. This case was not investigated by the DFEH and was filed in the LASC on August 27, 2019. The Plaintiff's attorney's were ZACK BROSLAVSKY ((hereinafter "Mr. Broslavsky") (SBN 241736) and JONATHAN A. WEINMAN (hereinafter "Mr. Weinman") (SBN 256553) of BROSLAVSKY & WEINMAN, LLP (hereinafter "Broslavsky & Weinman"). Ms. Victor, before

realizing multiple firms and judges were involved in criminal profiteering and money laundering, called Broslavsky & Weinman and left multiple messages asking for assistance or help, needless to say they did not contact Ms. Victor back. JUDGE MICHELLE WILLIAMS COURT, in her full capacity, of Department 74, of the Stanley Mosk Courthouse, was the assigned presiding judge on this case and is a named Defendant on this motion. The attorney's for the Defendants, Wally's, were BRIAN A. SELVAN (hereinafter "Mr. Selvan") (SBN 200332) and TIANYAO (CALVIN) ZHOU (hereinafter "Mr. Zhou") (SBN 302848) of WALRAVEN & WESTERFELD LLP. This case was settled then dismissed, there was no jury trial.

The next related case, found by Ms. Victor, for Wally's is *Nicole Alexander vs. Wally's Wines & Spirits ET AL*, case **#BC709710**. This case was also not investigated by DFEH and was filed in the LASC on June 12, 2018. The attorney for the Plaintiff was JAY S. ROTHMAN, ESQ. (hereinafter "Mr. Rothman") (SBN 49739) of JAY S. ROTHMAN & ASSOCIATES. The attorney's for the Defendants, Wally's, were MARK S. POSARD (hereinafter "Mr. Posard") (SBN 208790), ALLISON ROSS (hereinafter "Ms. Ross") (SBN 214962), DEBRA ELLWOOD MEPPEN (hereinafter "Ms. Meppen") (SBN 183885), ALEXIS AMBER (hereinafter "Ms. Amber") (SBN 258141), and JENNIFER M. ROSEN (hereinafter "Ms. Rosen") (SBN 293890) of GORDON REES SCULLY MANSUKHANI, LLP. How discouraging and disappointing that it is mainly women representing the Defendants who have been accused a countless amount of times of being sexual predators and harassers. The Judge assigned to this case is Judge Elizabeth R. Feffer which was held in Department 39 of the Stanley Mosk Courthouse. Judge Elizabeth R.

Feffer is also a named Defendant on this motion. The second Judge and arbitrator was JUDGE MICHAEL MARCUS of ADR SERVICES, INC. (hereinafter "ADR Services"), which is whom Ms. Riccomini and Mr. Silbergeld tried to get too arbitrate over Ms. Victor's case, the choice is not a coincidence it is purely calculated. This case was settled then dismissed, there was no jury trial.

The next related case, found by Ms. Victor, for Wally's is, *Nutsiri Kidkul vs. Mel-Jen, Inc.*, case **#20STCV00571**. This case was not investigated by any agency despite being based around civil rights violations and was filed in the LASC on January 7, 2020. The attorney for the Plaintiff was AZAR MOUZARI, ESQ. (hereinafter "Mr. Mouzari") (SBN 263461) of the BEVERLY HILLS TRIAL ATTORNEYS, P.C.. The attorney for the Defendant's, Wally's, was ROBERT F. RUBIN, (hereinafter "Mr. Rubin") (SBN 58183). This case was assigned to JUDGE MICHAEL P. LINFIELD of Department 34 of the Stanley Mosk Courthouse, who is also a named Defendant on this motion. This case was settled then dismissed, there was no jury trial.

The last case Ms. Victor had found related to Wally's before being hacked out of her devices was, *Patricia Raczkiewicz vs. Southwest Wine & Spirits, LLC, a California limited liability company*, case **#19STCV05501**. This case was not investigated by any Department and was filed in the LASC on February 14, 2019. The attorney for the Plaintiff's was DAVID G. SPIVAK (hereinafter "Mr. Spivak") (SBN 179684) of the SPIVAK LAW FIRM. The attorney's for the Defendant's, Wally's, were Ms. Meppen, Ms. Amber, and JENNIFER S. MCGEORGE (hereinafter "Ms. McGeorge") (SBN 221679) of Gordon Rees Scully Mansukhani, LLP. The Judge assigned to this case was JUDGE WILLIAM F. FAHEY, who presided in Department 69

of the Stanley Mosk Courthouse, and is a named Defendant on this motion. This case was "discharged" and did not have a jury trial.

***The related cases that have not been coordinated for GUESS are as follows:***

*Rachel Richardson vs. Guess?, Inc.*, case# CIVSB2104825. This case was not investigated by any agency and was filed in the LASC on September 20, 2021. The attorney for the plaintiff was BRAD J. HUSEN, ESQ. (hereinafter "Mr. Husen") (SBN 143525). The attorney's for the Defendant were GUY R. GRUPPIE (hereinafter "Mr. Gruppie") (SBN 155437) and JACKIE K. VU (hereinafter "Ms. Vu") (SBN 253533) of MURCHISON & CUMMING, LLP. Ms. Victor could not find which judge, if any, was assigned to this case, nor could she find the results of this case.

The next GUESS related case is *Jane Doe v. Paul Marciano, ET AL.*, case **#21STCV02126**. A case involving a potential rape victim was not investigated by any federal agency but was rather filed in the LASC on January 19, 2021. The attorney's for the Plaintiff are Ms. Bloom (SBN 158458), Mr. Goldstein (SBN 296430), and Sarah Bloom (SBN 326922) of the Bloom Firm. The attorneys for the Defendants, Mr. Marciano, GUESS, etc., are DANIEL M. PETROCELLI (hereinafter "Mr. Petrocelli") (SBN 97802), DAVID MARROSO (hereinafter "Mr. Marroso") (SBN 211655), KURT BROWN (hereinafter "Mr. Brown") (SBN 307524), and CATALINA VERGARA (SBN 223775) of O'Melveny & Myers LLP, GARY JAY KAUFMAN (hereinafter "Mr. Kaufman") (SBN 92759), NOAM REIFFMAN (hereinafter "Mr. Reiffman") (SBN 299446) of THE KAUFMAN LAW GROUP, A PROFESSIONAL CORPORATION.The judge assigned to this case is JUDGE STEVEN J. KLEIFIELD in Department 57 of the Stanley

Mosk Courthouse, whom is a named Defendant on this motion. This case was pending settlement in arbitration, Ms. Victor is unsure if such was completed, however, there was no jury trial.

The next GUESS related case is, *Susan Quinn vs. Guess?, Et al.*, case **#18STCV08500**. This case was not investigated by any federal agencies and was filed in the LASC on December 14, 2018. The attorney's for the Plaintiff were PETER A. JAVANMARDI (hereinafter "Mr. Javanmardi) (SBN 258449), MARC A. HOLMQUIST (hereinafter "Mr. Holmquist") (SBN 258406), DAVID V. HARRIS (hereinafter "Mr. Harris") (SBN 265783) of JAVANMARDI LAW, PC and HOLMQUIST LAW, PC. The attorney's for the Defendant(s) were ANDREA F. OXMAN (hereinafter "Ms. Oxman) (SBN 252646), EVE TILLEY-COULSON (hereinafter "Ms. Tilley-Coulson) (SBN 320886), and NIMA DAROUIAN (hereinafter "Ms. Darouian") (SBN 271367) of JACKSON LEWIS P.C. Ms. Victor called the Los Angeles Attorney General's office in June os 2021 she asked for a manager upon the receptionists refusal to help, she was transferred to a manager by the name of Wendell and refused to give his last name and stated "I am the only wendell who works for this office". In October, following up on the Emergency injunction she submitted, Ms. Victor called the Los Angeles Attorney General's office yet again and was transferred too Wendell after Ms. Victor demanded an answer as to how the Attorney General had yet to answer her injunction request. Again Wendell refused to give his last name so Ms. Victor googled "Wendell Los Angeles Attorney General's office" no information is found, however, the website for Jackson Lewis P.C. does come up on the search. Could Jackson Lewis P.C. been involved in Ms. Victor's computer and phone hacking and impersonated being

employees of the Los Angeles Attorney General's office? All have be named on this complaint, except for Wendell as his last name remains a mystery. The judge presiding over this case was JUDGE DANIEL S. MURPHY who at the time was in Department 32 of the Stanley Mosk Courthouse. This case was dismissed without prejudice and there was no jury trial.

The next GUESS related case is, *Denise Kish vs. GUESS?, Inc.*, case **#18STLC12332**. This case was not investigated by any federal agencies and was filed in the LASC on October 1. 2018. The attorney's for the Plaintiff were MIGUEL A. CUSTODIO, JR. (hereinafter "Mr. Custodio, Jr.") (SBN 248744) and VINEET DUBEY (hereinafter "Mr. Dubey") (SBN 243208) of CUSTODIO & DUBEY LLP. The judge that presided over this case was JUDGE JON R. TAKASUGI who at the time was in Department 94 of the Stanley Mosk Courthouse, and is also a named Defendant in this motion. The Defendants, GUESS, never had an attorney make an appearance and states they were "unrepresented". The case was dismissed without GUESS or any attorney's on their behalf making an appearance, how that is possible is a mystery to Ms. Victor.

The next GUESS related case is, *GUESS IP Holder LP, a Delaware limited partnership vs. City of Los Angeles*, case **#20STCV22170**. This case was opened in the LASC on June 11, 2020. The attorney's for the Plaintiff were MARDIROS H. DAKESSIAN (hereinafter "Mr. Dakessian") (SBN 184078), STEVEN RAUSER (hereinafter "Mr. Rauser") (SBN 198429), DONALD E. CHOMIAK (hereinafter "Mr. Chomiak") (SBN 225156) of the DAKESSIAN LAW, LTD. The attorney's for the Defendant's, the City of Los Angeles, were MICHAEL N. FEUER (hereinafter "Mr. Feuer") (SBN 111529), BEVERLY A. COOK, Assistant City Attorney

(hereinafter "Ms. Cook") (SBN 68312), and SHAUN SWIGER (hereinafter "Mr. Swiger") (SBN 232878) The judge assigned to this case was JUDGE BARBARA M. SCHEPER who was presiding in Department 30 of the Stanley Mosk Courthouse and is also listed as a Defendant in this motion. The case was settled and dismissed, there was no jury trial.

The next GUESS related case is, *Macerich Lakewood LP, a Delaware limited partnership, et. al. vs. Guess? Retail, Inc., a Delaware corporation*, case **#20STCV37026**. This case was filed in the LASC on September 25, 2020. The attorney's for the Plaintiff were GREGORY S. KORMAN (hereinafter "Mr. Korman") (SBN 216931), RYAN J. LARSEN (hereinafter "Mr. Larsen") (SBN 211622), and MEEGAN I. MACZEK (hereinafter "Ms. Maczek") (SBN 260609) for KATTEN MUCHIN ROSENMAN LLP. The attorney's for the Defendants were AMANDA L. GROVES (hereinafter "Ms. Groves") (SBN 187216), SHAWN R. OBI (hereinafter "Mr. Obi") (SBN 288088), and MEGAN L. WHIPP (hereinafter "Ms. Whipp") (SBN 319182) of WINSTON & STRAWN LLP. The judge presiding over this case was the same judge who presides over Ms. Victor's case, JUDGE YOLANDA OROZCO in Department 31 of the Stanley Mosk Courthouse. Ms. Victor did not know at the time of her filing a motion to recuse Judge Yolanda. Orzco pursuant to 170.1, she did not know that she presided over not one but two cases for GUESS and Mr. Marciano as case **#20SMCV01378**, *Macerich Lakewood LP, et al. vs. Guess Retail, Inc.,* was marked as related, and still Judge Yolanda Orozco refused to recuse herself from Ms. Victor's guess. The Judge on case **#20SMCV01378** was originally JUDGE MARK A. YOUNG in Department M of the Stanley Mark Courthouse. This case was settled and dismissed, there was no jury trial.

The next GUESS related case is, *Gabriela Cabrera vs. GUESS?, Inc. DBA G By Guess*, case **#19PSCV00403**. Despite this case being in regards to civil rights violations, no federal agencies investigate this case and it was filed in the LASC on April 30, 2019. The attorney for the Plaintiff was DAYTON MAGALLANES (hereinafter "Mr. Magallanes") (SBN 240231) of LAW OFFICES OF DAYTON MAGALLANES. The Defendants, GUESS, were again unrepresented, neither GUESS nor any attorney made an appearance. The judge assigned to the case was JUDGE PETER A. HERNANDEZ who presided in Department of the Pomona Courthouse South and is also a named Defendant on this motion. This case was dismissed, there was no jury trial.

The next GUESS related case is, *Gabriela Cabrera vs. GUESS?, Inc.*, case **#20STCV03887**. This is the second case for Gabriela Cabrera against Defendants GUESS and even this was not marked as related nor coordinated. This case was also based on civil rights violations, no federal agencies investigated this case and it was filed in the LASC on January 30, 2020. Mr. Magallanes was again the attorney for the Plaintiff of the Law Offices of Dayton Magallanes. The Defendants, GUESS, were again unrepresented by any attorney nor did they make an appearance. The judge who was assigned to this case was JUDGE WILLIAM F. FAHEY of Department 69 in the Stanley Mosk Courthouse, who is also a named Defendant on this case. Judge William F. Fahey also presided over a Wally's case that was dismissed. This case was dismissed, there was no jury trial.

The next GUESS related case is, *Gabriela Cabrera vs. Guess?, Inc.*, case **#20STCV349979**. This is the third case for Gabriela Gabrera against the Defendants GUESS

and this too was not marked as related nor coordinated. This case too, was also based on civil rights violations, no federal agencies investigated this case and it was filed in the LASC on September 14, 2020. Mr. Magallanes was again the attorney for the Plaintiff of the Law Offices of Dayton Magallanes. The Defendants, GUESS, were again unrepresented by any attorney nor did they make an appearance. The judge who was assigned to this case was JUDGE TERRY GREEN of Department 14 of the Stanley Mosk Courthouse, who is also a named Defendant on this case. This case was dismissed, there was no jury trial.

The next GUESS related case is, *Paige Janavich vs. GUESS?, Inc.*, case **#CGC19573181**. This case was meant to be a class action, it was not investigated by any federal agencies, and was filed in the LASC on January 25, 2019. The attorney's for the Plaintiff's Paige Janavich (hereinafter "Ms. Janavich") and Viktoria Wiseman (hereinafter "Ms. Wiseman") were ROBERT DREXLER (hereinafter "Mr. Drexler") (SBN 119119), MOLLY DESARIO (hereinafter "Ms. DESARIO") (SBN 230763), JONATHAN LEE (hereinafter "Mr. Lee") (SBN 267146), and ARIEL HARMAN-HOLMES (hereinafter "Mr. Harman-Holmes") (SBN 315234) of CAPSTONE LAW APC, in addition to KEVIN MCINERNEY (hereinafter "Mr. McInerney") (SBN 46941), in addition to JAMES F. CLAPP (hereinafter "Mr. Clapp") (SBN 145814) and MARITA LAUINGER (hereinafter "Ms. Lauinger") (SBN 199242) of CLAPP & LAUINGER, LLP. The attorney's for the Defendants, GUESS, were ANDREW M. PALEY (hereinafter "Mr. Paley") (SBN 149699), PAMELA VARTABEDIAN (hereinafter "Ms. Vartabedian") (SBN 251133), and ANDREA BEDNAROVA (hereinafter "Ms. Bednarova") (SBN 250709) of SEYFARTH SHAW LLP. Please note that Seyfarth Shaw, LLP address is listed as 2029 Century

Park East, Suite 3500, Los Angeles, CA, 90067 and prior to Thomspon Coburn changing their address on June 2, 2021, their address too was listed as 2029 Century Park East. The judge assigned to this case was JUDGE ANNE-CHRISTINE MASSULLO, also named as a Defendant in this motion. Judge Anne-Christine Massullo denied a request to mark this case as complex, and as all the other related cases this was not coordinated nor marked as related to any other cases. Four other judges sat on this case, JUDGE ANDREW Y.S. CHENG, JUDGE GARRETT L. WONG, JUDGE MARY E. WISS, and JUDGE TERI L. JACKSON. Ms. Victor is unsure of how this case ended as it was pending during the period of time her devices were hacked and tampered with.

The next GUESS related case is, *Guess?, Inc., a Delaware corporation vs. Ace American Insurance Company*, case **#20STCV14085**. This case was filed in the LASC on April 10, 2020. The attorney's for the Plaintiff, GUESS, were DAVID P. SCHACK (hereinafter "Mr. Schack") (SBN 106288) and MATTHEW B. O'HANLON (hereinafter "Mr. O'Hanlon") (SBN 253648) of BARNES & THORNBURG LLP. Barnes & Thornburg LLP is also located at 2029 Century Park East in Los Angeles. The attorney's for the Defendants were WILLIAM C. REEVES (hereinafter "Mr. Reeves") (SBN 183878) and CANON T. YOUNG (hereinafter "Mr. Young") (SBN 189142) of MORALES FIERRO & REEVES. The judge assigned to this case was JUDGE MEL RED RECANA who was presiding in Department 45 of the Stanley Mosk Courthouse and is also named as a Defendant in this motion. The Defendants filed a peremptory challenge pursuant to CCP §170.6, and the case was reassigned to JUDGE STUART M. RICE

who was presiding in Department 49, he too is a named Defendant on this complaint. This case was dismissed, there was no jury trial.

The next GUESS related case is, *Debra Lynn Griggs vs. Guess Inc*, case **#BC722429**. This case was not investigated by any federal agencies and was filed in the LASC on September 19, 2018. The attorney's for the Plaintiff were or still are JOHNNY DARNELL GRIGGS (hereinafter "Mr. Griggs") (SBN 110640) of GRIGGSLITTLE LAW in addition to JAMON R. HICKS, ESQ (hereinafter "Mr. Hicks") (SBN 232747) of DOUGLAS/HICKS LAW, APC. The attorney's for the Defendant's, GUESS, were MARTHA S. DOTY (hereinafter "Ms. Doty") (SBN 143287) and LISA GARCIA (hereinafter "Ms. Garcia") of ALSTON & BIRD LLP. The judge who was initially assigned on this case was JUDGE MALCOLM H. MACKEY who presided in Department 55 in the Stanley Mosk Courthouse, he too is a named Defendant on this complaint. There however was a peremptory challenge by Mr. Griggs on behalf of the Plaintiff and the case was reassigned to JUDGE DAVID SOTELO who presided in Department 40 in the Stanley Mosk Courthouse. An appeal was entered into the case and was sent to the California Courts of Appeal, Second Appellate District, Division 3 on July 15, 2019, case **#B29917**, the Judge who was assigned to this appeal was Judge David Sotelo, how can Judge David Sotelo be assigned to the case in the Stanley Mosk Courthouse and also be assigned to decide an appeal on the same case in entirely different courthouse? Wouldn't that be considered a completely conflict of interest. Ms. Victor is unsure of the result of this case as her devices got hacked.

The next GUESS related case is, *Pamela Hill vs. Guess?, Inc.*, case **#20STCV06185**. The attorney for the Plaintiff was Mr. Mouzari of Beverly Hills Trial Attorneys P.C., who also

represented Wally's in a related case mentioned above. This case was not invested by any federal agencies and was filed in the LASC on February 14, 2020. The Defendants, GUESS, nor attorney's on their behalf made an appearance on this case. The judge assigned to this case was Judge Barbara M. Scheper of Department 30 of the Stanley Mosk Courthouse. This case was settled and dismissed, this is a repeated pattern with GUESS cases, which begs the question on how a case can be settled if one party does not make an appearance?

The last related case Ms. Victor could find prior to her devices being unusable was, *Alejandro Diaz vs. Maurice and Paul Marciano Art Foundation*, case **#19STLC10206**. This case was not investigated by any Federal agencies and was filed in the LASC on September 20, 2020. The attorney's for the Plaintiff were N. NICK EBRAHIMIAN (hereinafter "Mr. Ebrahimian") (SBN 219270) and TIELLE SHU (hereinafter "Mr. Shu") (SBN 303085) of LAVI & EBRAHIMIAN, LLP. The attorney for the Defendants, GUESS, was DYLAN B. CARP (hereinafter "Mr. Carp") (SBN 196846) of Jackson Lewis P.C., which is a firm that has represented the Defendants in other related cases. The judge assigned to this case was Judge Michelle Williams Court of Department 74 of the Stanley Mosk Courthouse, who has presided over both Wally's cases and GUESS cases. This case went to the California Courts of Appeal, Second Appellate District which was filed on February 5, 2021, case **#B310343**. Judge Michelle Williams Court was the judge assigned to the appeal, again a Judge assigned to the state court case was also assigned to the appeal. Ms. Victor is unsure how this case ended.

Over a dozen cases between Wally's and GUESS that should have been marked as related and coordinated but they were not, and these are only the cases Ms. Victor could find so there is

probably a dozen more cases against the Defendants, each of them, with real or fictitious business names. These are also cases that were not investigated by any Federal agency, the EEOC, DFEH, or the Labor Commissioner's office. Ms. Victor made it known that she knew of these cases and began questioning why they were not related creating a target on her back, leaving her vulnerable to the Defendants, each of them, and their retaliation.

Pursuant to California Rules of Court, Rule 3.300, subdivision (a), cases must be marked as related, even if the cases have already been dismissed with or without prejudice, or settled, if they involved the same parties and have similar claims, any cases that have identical "*transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact*", or "*are likely for other reasons to require substantial duplication of judicial resources if heard by different judges.*"

All of the cases mentioned above, that Ms. Victor had found in her research, should have been all marked as related in compliance with this rule, the fact that they are not is purely intentional.

The most horrific part of this all is the realization that these are only cases from California, this is not including cases against Wally's from their different locations or GUESS from their different branches which begs the fearful question, how many cases have been dismissed and buried in arbitration hearings or dismissed quietly throughout the country? How many other Plaintiff's, including Ms. Victor, have suffered from the secrecy of each and every related case? Not just from becoming jobless and being owed back page and wages, but for all the sexual assault victims who have received professional harm from the backlash of coming

forward, or reputational harm from the Defense counsels horrible defamation and slander that has plagued litigations as a tactic to turn victims into villains. The emotion turmoil each victim has endured who didn't come to the realization the attorney's they hired to fight for their justice were fighting to help the Defendants, each of them. Hope ripped from almost every victim, including Ms. Victor, as attorney's agree to shove case after case into arbitration, avoiding trial and more bad publicity for the Defendants, each of them. This litigation thus far has not been in the interest of justice for Ms. Victor who is a victim but rather in the interest of protecting men and women who stand with the exact morals and values that go against the United States Constitution and the California Constitution, constitutions that were created and formed on the foundation that such laws would protect the American citizens of our state and the people of the State of California.

Each and every complaint mentioned above against these companies, owners, managers, affiliates, partners, etc., all have similar named parties and causes of actions, such as civil rights violations, discrimination, harassment, retaliation, failure to prevent, wrongful termination, negligent supervision, failure to pay wages, waiting time penalties, unfair competition, gender violence, sexual assault, amongst other things. How many of these Plaintiff's and victims had attorney's that behaved and acted unethically as did Mosley & Associates? Ms. Victor's prior legal counsel sent her absolutely no court documents, in fact Ms. Victor had to pay hundreds of dollars to see anything that had been filed with the court. Even after Ms. Victor fired Mosley & Associates she still has never received much of anything from them in her fraudulent and fabricated client file. Which begs the question, have all of the Plaintiff's, in the related cases

mentioned above, or any other related cases, received all of their court documents from their attorney's? Were or had they been given the right to be present in their own litigation? Have their rights to due process and the right to a fair and impartial trial been stolen from them as it has been stolen from Ms. Victor?

The behavior of these men who are Presidents, owners, principals, or basic management of these companies, as well as every other employee or agent, male or female, who harassed, retaliated, discriminated against, defamed, or bore witness to such and did not prevent, is shockingly horrific. Despite how shockingly bad these Defendants have behaved, and how many women and employees have attempted to come forward with legal complaints, the harassment, retaliation, discrimination, defamation, sexual abuse, etc., of the Defendants, each of them, has not been stopped, it has only continued and is a now well established pattern for the Defendants, each of them.

Despite the revolution of women finally taking a stand against their harassers and their abusers in the "Me Too" movement and a promise from police, the courts, executives in the entertainment industry, and employers, to make better efforts in preventing or ending abuse, what has really changed? Plaintiffs and victims give detailed accounts of their harassment, discrimination, sexual assault, etc., to their attorney's, the court, the Judge, providing intimate testimony after testimony and evidence, when possible, to further prove the Plaintiff's factual allegations are real and true. But still, these companies and their affiliates with their ill intentions, manipulation, and unacceptable misconduct get shadowed by the Defendants and their legal counsels with their maliciously attacks against the characters of each and every

Plaintiff; if the Defendants or their counsel even bothered to make an appearance. If these Defense counsels can make a Plaintiff look just as bad or even worse then the Defendants then the Defendants can save millions of dollars in legal fees, avoid bad publicity, and most importantly avoid criminal charges or losing their businesses; businesses where the Defendants will continue to harass, discriminate, retaliate against, and assault employees and women because the California Judicial system within the Stanley Mosk Courthouse has given them the power to do so.

This corruption has been going on for years, abuse of multiple Plaintiffs, by the Defendants, has been going on for years. The Defendants by and through their legal counsels continue their pattern and practice of harassing, discriminating against, abusing, assaulting, defaming, and defrauding each and every Plaintiff that files a complaint. The Defendants, each of them, are a danger to the health and safety of the Public, anywhere in the nation.

The Defense counsel of every related case mentioned above, and not mentioned above, has used tactics to bury all these complaints in arbitration or mandatory settlement to silence the victims and to allow these criminals to continue their repeated pattern of abuse to new employees and victims. It must be stopped. They must be stopped.

**MS. VICTOR'S RIGHT TO AN ATTORNEY AND REQUEST FOR AN ATTORNEY**

The Sixth Amendment of the United States requires that each and every adult who cannot afford to hire a lawyer at prevailing compensation rates in his or her jurisdiction must be given a qualified and trained lawyer.

Since Ms. Victor began representing herself due to having to fire her prior legal counsel for unethical misconduct, she has been unable to find new representation, mainly due to being unable to afford consultation fee's and other attorney's fees and costs. During the period of time in which Ms. Victor has been forced to represent herself, the Defendants, each of them, and their counsels, including the court, has taken complete advantage of Ms. Victor's rights, including her civil and constitutional rights.

Ms. Victor moves this court to give her a qualified and trained lawyer to represent her throughout the remainder of this litigation so that her right to due process, amongst other things, is no longer interfered with and/or denied.

## REQUEST FOR EMERGENCY INJUNCTION(S) AND JUDGEMENT

Ms. Victor moves the court to review **Exhibit 1** and **Exhibit 2**, attached, and grant all requests for injunctions as well as an immediate and emergency decision on the judgement she has prayed for.

Without the proper court stepping in to this litigation, in which it has proper jurisdiction, Ms. Victor is at imminent risk that the Defendants actions, each of them, will only get worse and more retaliatory, and Ms. Victor will face irreparable injury that can only be prevented by emergency injunctive relief and emergency judgement.

Ms. Victor has presented clear and present evidence that shows the need for equitable relief to prevent irreparable harm. Without injunctive relief, the risk is great and imminent that the Defendants, each of them, will continue their retaliatory conduct and continue to interfere

with Ms. Victor's rights until Ms. Victor is denied, not only justice, but of any and all remedies she has prayed for.

Further, the Defendants unlawful conduct, as described in both Exhibit attachments, has created a serious menace in society and is dangerous not only to Ms. Victor but to the safety and health of the public. The public with undoubtedly benefit from the issuance of an emergency injunction. Ms. Victor moves this court to consider her request for emergency injunctive relief and judgement be done on an expedited basis. Such expedited treatment is mandatory, and delay will cause even more irreparable injury and harm to Ms. Victor.

## CONCLUSION

For the foregoing reasons, Ms. Victor, respectfully requests that this court grant her notice of removal of her Los Angeles Superior Court Case, to their court, which is the proper court of jurisdiction. Ms. Victor also respectfully asks the court to consider all and every related case that has been mentioned above and to consider filing a class action suit on behalf of all deprived Plaintiff's, including Ms. Victor, against the Defendants, each of them. Ms. Victor respectfully requests that this court appoint her a qualified attorney to represent her for the remainder of this litigation. Lastly, Ms. Victor respectfully requests that this court issue emergency and immediate injunctive relief as well as an emergency judgement, which she has deemed a necessity to avoid being injured or harmed any further by the Defendants, each of them.

**DATED:** May 16, 2022

**BY:** DKV ______________________

DANIELLE K. VICTOR
PLAINTIFF IN PRO SE

**MOTION TO PROCEED IN FORMA PAUPERIS**

I, Danielle Victor, move this court for an order allowing me to proceed in *forma pauperis*. I state that I am financially unable to pay the filing fee at the time of filing and that my financial circumstances are horrible as being forced to self-represent myself in this litigation for almost an entire year has put me in extreme financial turmoil. In support of this motion, I, Danielle Victor, verify that I am unable to afford the cost of representation in this matter. I do not have the sufficient funds to pay the filing fees at this time, and if so ordered, I can provide a copy of my bank statements to provide further proof. I, respectfully ask this court that I be allowed to proceed in *forma pauperis* without payment of filing fees, service of notice fees, and for such other relief the Court deems just and proper. Attached in Exhibit 3, is my applicator for permission to proceed in *forma pauperis*.

Respectfully submitted on May 16, 2022.

**BY:** ______________________
**Danielle K. Victor**
**Plaintiff in Pro Se**

**VERIFICATION**

I am the Plaintiff in this action. I have read the foregoing NOTICE OF REMOVAL, REQUEST TO PROCEED IN FORMA PAUPERIS, REQUEST FOR AN ATTORNEY, REQUEST FOR EMERGENCY INJUNCTIVE RELIEF AND IMMEDIATE JUDGEMENT and know its contents.

The matters stated in the foregoing NOTICE OF REMOVAL, REQUEST TO PROCEED IN FORMA PAUPERIS, REQUEST FOR AN ATTORNEY, REQUEST FOR EMERGENCY INJUNCTIVE RELIEF AND IMMEDIATE JUDGEMENT are true of my own knowledge except as to those matters which are alleged on information and belief, and as to those matters I believe them to be true.

Executed on May 16, 2022, at Methuen, Massachusetts.

I declare under the penalty of perjury under the laws of the State of California and under the laws of the United States of America, that the forgoing is true and correct.

**BY:** ______________________

**Danielle K. Victor**
**Plaintiff in Pro Se**

# EXHIBIT 1

Danielle Victor
4 Loring Road
Methuen, MA 01844
978-857-4885
daniellevictorlegal@yahoo.com
daniellekvictor@gmail.com
bookingvictortwins@yahoo.com

Self-Represented

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| DANIELLE VICTOR,<br>Plaintiff,<br>v.<br>SOUTHWEST WINE & SPIRITS, LLC, ET AL.<br>Defendant | *Los Angeles Superior Court Case #: 20STCV34566*<br>*JAMs Arbitration Reference #: 1220071214*<br>**FIRST AMENDED VERIFIED GENERAL AND FACTUAL ALLEGATIONS AGAINST THE DEFENDANTS**<br>*Judge Linda L. Miller*<br>*Judge Yolanda Orozco* |

**TO DEFENDANT(S) AND THEIR ATTORNEY'S OF RECORD AS WELL AS THE COURT:**

Danielle Victor (hereinafter "Ms. Victor" or "Plaintiff"), makes the following general and factual allegations against all named Defendants as well as the Defendants known and unknown co-conspirators. Ms. Victor makes such general and factual allegations under penalty of perjury

pursuant with the laws of the State of California and the laws of the United States of America. The claims made against the Defendants in the above-captioned matter are as follows:

**GENERAL ALLEGATIONS**

1. Ms. Victor at all relevant times mentioned herein resided in the county of Los Angeles, State of California before fleeing to Essex County, State of Massachusetts for safety as a direct result of the Defendants unlawful conduct before and within this litigation.

2. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SOUTHWEST WINE & SPIRITS, LLC**, is a Delaware limited liability company and at all time relevant herein was doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Southwest wine & Spirits, LLC was and is doing business as “Wally’s”.

3. Ms. Victor is informed and believes and based thereon alleges, that Defendant **WALLY’S AUCTION HOUSE, LLC**, is a California limited liability company and at all time relevant herein was doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Wally’s Auction House, LLC was and is doing business as “Wally’s”.

4. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MEL-JEN**, is a California limited liability company and at all time relevant herein was doing substantial business in the county of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendants Mel-Jen was and is doing business as “Wally’s”.

5. Ms. Victor is informed and believes and based thereon alleges, that Defendant **GUESS?, INC.**, is a corporation operating under Delaware law and at all time relevant herein was doing substantial business in the county of Los Angeles, State of California.

6. Ms. Victor is informed and believes and based thereon alleges, that Defendant **PAUL MARCIANO** is an individual and a citizen of Morocco, and at all relevant times herein mentioned was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes that at all relevant times herein mentioned Defendant Paul Marciano was the Owner and Principal of Southwest Wine & Spirits, LLC as well as the Owner and Chief Executive Officer of GUESS?, Inc.

7. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MAURICE MARCIANO** is an individual and a citizen of Italy, and at all relevant times herein mentioned was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes that at all relevant times herein mentioned Defendant Maurice Marciano was the Owner and Principal of Southwest Wine & Spirits, LLC as well as the Chairman, Co-chairman, and/or the non-executive chairman of GUESS?, Inc.

8. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIAN NAVARRO** is a in individual who, possibly, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Christian Navarro, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all

relevant times herein mentioned Defendant Christian Navarro was the President and Principal of Southwest Wine & Spirits, LLC.

9. Ms. Victor is informed and believes and based thereon alleges, that Defendant **THOMAS KACHANI** is a in individual who, possibly, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Thomas Kachani, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Thomas Kachani was the Executive Vice President Of Operations of Southwest Wine & Spirits, LLC.

10. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MATTHEW TURNER** is a in individual who, possibly, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Matthew Turner, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Matthew Turner was the Wine Director of Southwest Wine & Spirits, LLC.

11. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MATTHEW MARCIANO** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes

and based thereon alleges, that Defendant Matthew Marciano, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Matthew Marciano was a manager of Southwest Wine & Spirits, LLC.

12. Ms. Victor is informed and believes and based thereon alleges, that Defendant **JONATHAN POULIN** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Jonathan Poulin, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Jonathan Poulin was the Assistant General Manager of Southwest Wine & Spirits, LLC.

13. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MINA JONES** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and thereon alleges that Defendant Mina Jones is a citizen of France and not of the United States. Ms. Victor is informed and believes and based thereon alleges, that Defendant Mina Jones, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant

times herein mentioned Defendant Mina Jones was a manager of Southwest Wine & Spirits, LLC.

14. Ms. Victor is informed and believes and based thereon alleges, that Defendant **NANCY HUNTER** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Nancy Hunter, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Nancy Hunter was a Human Resources Manager of Southwest Wine & Spirits, LLC.

15. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SAMI FROMER** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Sami Fromer, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Sami Fromer was the Director of Events of Southwest Wine & Spirits, LLC.

16. Ms. Victor is informed and believes and based thereon alleges, that Defendant **SAMI FROMER** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Sami Fromer, at all relevant times herein mentioned, was an individual

doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Sami Fromer was the Director of Events of Southwest Wine & Spirits, LLC.

17. Ms. Victor is informed and believes and based thereon alleges, that Defendant **TATUM JIMENEZ** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Tatum Jimenez, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Tatum Jimenez was a manager of Southwest Wine & Spirits, LLC.

18. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE BAKER** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Christie Baker, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Christie Baker was the Director of Southwest Wine & Spirits, LLC.

19. Ms. Victor is informed and believes and based thereon alleges, that Defendant **KEITH BJELAJAC** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Keith Bjelajac, at all relevant times herein mentioned, was an

individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Keith Bjelajac was the Chief Financial Officer of Southwest Wine & Spirits, LLC.

20. Ms. Victor is informed and believes and based thereon alleges, that Defendant **LAURA BURNS** is a in individual who, at all relevant times herein mentioned, resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Laura Burns, at all relevant times herein mentioned, was an individual doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Laura Burns was the Director of Human Resources of Southwest Wine & Spirits, LLC.

21. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S WINE, INC.** is a corporation operating under Delaware law who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Christie's Wine, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some

or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

22. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S INC** is a corporation operating under New York law who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Christie's Inc, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

23. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CHRISTIE'S INC** is a corporation operating under New Jersey law who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Christie's Inc, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

24. Ms. Victor is informed and believes and based thereon alleges, that Defendant **3900 WA ASSOCIATES, LLC** is a corporation operating under Delaware law who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant 3900 WA Associates, LLC, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

25. Ms. Victor is informed and believes and based thereon alleges, that Defendant **DELTA AIR LINES, INC.** is a corporation operating under Delaware law who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Delta Air Lines, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

26. Ms. Victor is informed and believes and based thereon alleges, that Defendant **1840 HIGHLAND PARTNERS, LLC** is a California limited liability company, who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant 1840 Highland Partners LLC, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

27. Ms. Victor is informed and believes and based thereon alleges, that Defendant **CONCORD REAL ESTATE SERVICES, INC.** is a corporation operating under California law, who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Concord Real Estate Services, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

28. Ms. Victor is informed and believes and based thereon alleges, that Defendant **MOSS MANAGEMENT SERVICES, INC.** is a corporation operating under California law, who, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned Defendant Moss Management Services, Inc., was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

29. Ms. Victor is informed and believes and based thereon alleges, that Defendant **JEFF GREENE** is an individual, who at all relevant times herein mentioned resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Jeff Greene, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned that Defendant Jeff Greene, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

30. Ms. Victor is informed and believes and based thereon alleges, that Defendant **JASON FENESCEY** is an individual, who at all relevant times herein mentioned resided in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges, that Defendant Jason Fenescey, at all relevant times herein mentioned, was doing substantial business in the County of Los Angeles, State of California. Ms. Victor is informed and believes and based thereon alleges that at all relevant times herein mentioned that Defendant Jason Fenescey, was the partner, agent, affiliate, joint venturer, controlling shareholder, subsidiary, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

31. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants **DOES 1-100**, inclusive, are unknown to Ms. Victor at this time. Ms. Victor therefor sues said Defendants by such fictitious names. When true names and capacities of said Defendants are ascertained, Ms. Victor will seek leave of court to amend this complaint to allege their true names and capacities. Ms. Victor is informed and believes and thereon alleges that each Defendant designated herein as a Doe is responsible in some manner for each other Defendants acts, omissions, and for the resulting injuries and damages to Ms. Victor, as alleged herein and below.

32. Ms. Victor is informed and believes and based thereon alleges, that all Defendants are, and at all time relevant herein were doing substantial business in the county of Los Angeles,

State of California. Ms. Victor is informed and believes and based thereon alleges, that all Defendants, including individuals were either residents or doing substantial business in the county of Los Angeles, State of California.

33. Ms. Victor is informed and believes and based thereon alleges that at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

34. Ms. Victor is informed and believes and based thereon alleges that at all relevant times, each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, approved, adopted, controlled, and aided and abetted the conduct of all other Defendants.

35. Defendants and each of them, are and were the agents of the other Defendants, and in acting as described herein were acting within the scope of their authority as agents thereof, and with the permission and consent of the other Defendants.

36. Ms. Victor herein was subjected to unlawful behavior by the Defendants.

37. Despite Ms. Victor making multiple verbal and written complaints to several management about sexual harassment, harassment, bullying, retaliation, and discrimination, management failed to do anything to stop such behavior nor report Ms. Victor's complaints to

the Defendants Human Resources department. The Defendants failure to report and their failure to prevent further harassment, both sexual and non, bullying, retaliation, and discrimination was willful, intentional, and in reckless disregard for Ms. Victor's rights, feelings, and over all well being.

38. The Defendants through their counsel have attempted to defame Ms. Victor and have the court perceive her in a false light excusing the Defendants behavior by accusing Ms. Victor of prostitution, extortion, among other things. The Defendants, through their counsel, have used fraudulent means throughout this three year litigation to preserve the Defendants reputation, avoid a jury trial or criminal prosecution, and to minimize all costs, including damages owed to Ms. Victor, in an effort to conceal the Defendants unlawful behavior, all without regard to Ms. Victor's guaranteed rights or feelings.

39. Ms. Victor is informed and believes that the Defendants have sexually assaulted, sexually battered, abused, harassed, discriminated against, and retaliated against multiple victims, such as Ms. Victor, both employees of the Defendants and non-employees of the Defendants. The Defendants behavior toward Ms. Victor was not the first time the Defendants have engaged in unlawful behavior and it certainly will not be the last time the Defendants engage in unlawful behavior.

40. Ms. Victor is informed and believes that the Human Resources department, and all Departments, knew or should have known about the Defendant's unlawful behavior towards female employee's and customers as well as discriminatory behavior toward ethnic employee's

and customers because there have been multiple complaints about the Defendants unwarranted and inappropriate behavior, even complaints filed in the Los Angeles Superior Court.

41. Ms. Victor is informed and believes that the Human Resources Department, and all other Departments, intentionally failed to take any appropriate action to protect female employees or customers and employees and customers of color. Their intentional neglect and cover up of the Defendants unlawful behavior was done to protect the reputation and finances of the Defendants and to ensure the Defendants avoided all legal liability and accountability.

42. Ms. Victor is informed and believes that all Defendants, collectively, decided to conceal the fact that female employees and customers and employees and customers of color were being targeted and treated in ways that violated multiple laws in the State of California as well as the laws of the United States. This concealment was done in order to protect the reputation and finances of the Defendants, collectively, as well as ensure the Defendants avoid legal liability and accountability.

43. Ms. Victor is informed and believes that all Defendants, collectively, entered into a conspiracy, the object of which was to conceal the fact that multiple victims had and continue to complain about sexually inappropriate behavior and commentary by the Defendants, complaints about racism, and complaints about harassment, bullying, and retaliation; to conceal the pattern of the Defendants and to enable the Defendants to continue to behave unlawfully with no accountability or repercussions.

44. Ms. Victor is informed and believes that the Human Resources Department and all management, agents, principals of the Defendants conspired with all Defendants, each of them,

to conceal the Defendants negligence while running the business, their complete failure to prevent harm to any and all employees and customers, and acted in furtherance of that conspiracy.

45. In furtherance of that conspiracy the Defendants and their counsel have argued that all of Ms. Victor's claims were baseless and without merit. All of Ms. Victor's claims and others claims were either ignored, not investigated, or falsely found to be without merit, as an intentional and calculated moved made by the Defendants, each of them.

46. Over the years the Defendants have engaged in unlawful behavior that was sexually or racially motivated at the Defendants place of business and all other businesses each individual Defendant is associated with and/or owns. Multiple complaints have been filed by several different Plaintiff's. Ms. Victor learned of these complaints and has discovered that no federal agency has conducted a legitimate or proper investigation in civil conspiracy with the Defendants.

47. In furtherance of the above alleged conspiracy, Ms. Victor is informed and believes that her complaint and any other complaints made by different Plaintiffs, against the Defendants, have not been reported accurately to the Department of Fair Employment & Housing (hereinafter "DFEH"), the California Department of Industrial Relations, U.S. Equal Employment Opportunity Commission (hereinafter "EEOC"), or any other legal authority or federal agency in order to preserve the Defendants reputation and finances. The Defendants behavior not being reported nor their behavior being stopped insured the Defendants constant

business occupancy, business sales and revenue, and the Defendants have not been adversely affected by their unlawful behavior.

48. Ms. Victor is informed and believes that no individual defendant has been held accountable for their individual actions and unlawful behavior toward female employees and customers or employees and customers of color.

49. Ms. Victor has suffered emotional distress, humiliation, embarrassment, mental distress, anxiety, depression, illness, shame, sadness, anger, personal and physical injuries, and unimaginable financial hardship due to the unlawful behavior by all Defendants, each of them, and their continued unlawful behavior.

## VENUE

50. The jurisdiction of this case has always been the U.S. District Court, Central District of Los Angeles. In fact, on the fraudulent *Proof Of Service of Summons* filed by Ms. Victor's prior legal counsel, Mosley Associates, who filed such document in the Los Angeles Superior Court (hereinafter "LASC") via attorney WALTER MOSLEY (hereinafter "Mr. Mosley"), who had put the court as the Central District court followed by adding the incorrect and improper address of the Stanley Mosk Courthouse. By means of deceit and fraud this case ended up in the Los Angeles Superior Court and into this arbitration. Although some of the Defendants, mentioned above, conduct business in the county of Los Angeles, State of California, Ms. Victor is informed and believes that many of the Defendants listed above are corporations or limited liability companies operating under the laws of different county's and different states. Ms. Victor is informed and believes that Defendant Paul Marciano and Maurice Marciano are not citizens

of the United States. Ms. Victor is informed and believes that the Los Angeles Superior court is not and has never been the proper venue but rather the venue of choice for the Defendants to conceal her case in an arbitration that has absolutely no jurisdiction over Ms. Victor's on going case. Ms. Victor has requested to have her case transferred on more than a dozen occasions since she began her self-representation in June of 2021. Such requests, as well her Ms. Victor's requests to amend her complaint were ignored by all parties and the court on each separate occasion.

## FACTUAL ALLEGATIONS

51. On January 11, 2019, prior to being employed at *Southwest Wine & Spirits, LLC*, a **Delaware limited liability company**, doing business as, *Wally's Auction House, LLC* and *Mel-Jen* (hereinafter "Wallys"), Ms. Victor attended Wally's with some friends, Cassandra Baker (hereinafter "Cassie") and Dezirae Deitch (hereinafter "Ms. Deitch").

52. Ms. Victor and her friends checked in at the hostess stand, at Wally's, for a table of three where they were told a wait time of thirty-five minutes and were advised to grab a drink at the bar while they waited. Standing at the host stand was a manager whose name has never been learned by the Plaintiff, (hereinafter "Manager Doe''), who was a French man, with a heavy French accent. Manager Doe followed Ms. Victor and her friends around the restaurant for several minutes. After ordering and paying for three glasses of wine, Manager Doe tapped Ms. Victor on her shoulder. Ms. Victor turned around and said "Can I help you?" Manager Doe advised Ms. Victor that she needed to leave the restaurant immediately. Plaintiff chuckled and

asked "Why?" Manager Doe told Ms. Victor that he could see her nipples through her bodysuit and that she needed to leave Wally's immediately. The Plaintiff and her friends were appalled by his degrading, outlandish, unwarranted, and disgusting remarks and refused to leave. Manager Doe kept harassing Ms. Victor tirelessly for several minutes causing a scene resulting in others in the restaurant to begin onlooking their argument either for curiosity or judgement; either way, leaving Ms. Victor humiliated and embarrassed. Ms. Victor went to the host stand and asked to speak to a different manager. Another Manager approached the host stand, apologized for what was said and allowed Ms. Victor to file a written complaint against Manager Doe whom had approached and harassed Ms. Victor, a paying customer, for no necessary reason. Ms. Victor and her friends were given three glasses of wine for free and thirty percent (30%) off their meal because of Manager Doe's actions.

53. On the evening of January 11, 2019, Ms. Victor had been wearing a yellow lace bodysuit, a cropped camouflage jacket, black leggings, and black heeled boots. Before attending Wally's, the Plaintiff and her friends had drinks at Harriet's Rooftop (hereinafter "Harriet's), located at 8490 Sunset Blvd., West Hollywood, CA 90069. Ms. Victor, nor her friends, had issues, especially on dress code, while attending Harriets. After the Plaintiff and her friends had a glass of wine at Harriet's they spontaneously decided to have dinner at Wally's, hence the no reservation and wait time for a table upon their arrival. Ms. Victor had been the only woman of color in the restaurant that evening, and was also the only woman, and person, followed, targeted, and harassed as a paying customer. Keep in mind these are actions taken by Wally's and their employee's **prior to Ms. Victor's employment**, establishing a disgusting,

unacceptable, and repeated pattern of racism, discrimination, sexual harassment, and a complete disregard to a person's individual and promised Civil rights.

54. Ms. Victor was not free or treated equal and was maliciously exposed to discrimination and harassment based on her sex, her race, her color, and her genetic information from Wally's and it's employee's during her terrible experience as a customer on January 11, 2019.

55. On February 14, 2019, the Plaintiff had an interview at Wally's for an open hostess position, a position she learned of through a Craigslist ad. Ms. Victor met with TOMARA CONRAD (hereinafter "Ms. Conrad") upon her arrival to Wally's. Ms. Conrad at the time, and possibly may still be, the Maître D, "head hostess", of Wally's. Ms. Conrad hired Ms. Victor on the spot but Ms. Conrad left briefly to get another Manager, THIBAUD DUCCINI (hereinafter "Mr. Duccini") to begin a second interview with Ms. Victor before the final decision of her hire. After Mr. Duccini conducted a brief second interview he congratulated Ms. Victor on her hire and informed her that her first training shift would be the following evening on February 15, 2019.

56. At Ms. Victor's interview, Ms. Victor had been wearing an oversized knit sweater from the brand Nasty Gal, with black jeans, and her hair in a slick back low ponytail. Ms. Conrad told Ms. Victor to dress "sexy" for work because the hostesses were the first look of the restaurant and part of the job is looking "attractive". Ms. Conrad advised Ms. Victor to not wear sweaters like the one she had on and stated, "This isn't an office." Ms. Victor took out her

cellphone to pull up her Instagram account to show Ms. Conrad pictures of her tattoos and Ms. Conrad's response was "So hot!" Ms. Victor asked if showing her tattoos would be an issue and both Ms. Conrad and Mr. Duccini confirmed that Ms. Victor's tattoos would not be an issue. Ms. Conrad again reminded Ms. Victor about how to dress, advising Ms. Victor to dress like she would if she were going to be coming to Wally's for a night out. However, Ms. Victor, remembers how she dressed for her evening out to Wally's on January 11, 2019, and how she was treated, and couldn't imagine being treated as such as an employee. Ms. Victor knew that before she accepted her job with Wally's that she had to tell Ms. Conrad or Mr. Duccini about her experience with Manager Doe, and if possible, make a request to work shifts that he was not scheduled on because Manager Doe had and would continue to make Ms. Victor uncomfortable.

57. Ms. Victor had made it known during her interview process that she had done several reality TV shows, including a show on Oxygen Network, NBC Universal, entitled, *Bad Girls Club*. Ms. Victor also made it known during her interview process that her time on television resulted in her having a large and decent Social Media following on Instagram, Twitter, SnapChat, and YouTube. Ms. Victor had asked Ms. Conrad and Mr. Duccini if someone coming into Wally's and recognizing her would be an issue. Both Ms. Conrad and Mr. Duccini were intrigued with this newly disclosed information about Ms. Victor and assured the Plaintiff that it would not be a problem because Wally's had, and possibly still has, lots of well known people and/or celebrities come in to eat or drink at their establishment. Ms. Conrad and Mr. Duccini ensured Ms. Victor that her being somewhat known could only "help" Wally's, not the opposite.

58. After Ms. Victor's interview, and prior to leaving Wally's, Ms. Victor approached Mr. Duccini and asked if there was a Manager who worked there, who was French and had a "heavy" accent" she described. Ms. Victor informed Mr. Duccini about the awful encounter she had with Manager Doe and his harassment during her visit to Wally's the month prior. Mr. Duccini told Ms. Victor that Manager Doe was terminated after multiple customers and employees had complained about him and his behavior. Ms. Victor was relieved she would not have to see or deal with that manager in a work environment as it was already hostile as a paying customer.

59. It is important to answer the question one may ask while reading these allegations, as to why Ms. Victor would seek employment at Wally's, an establishment that had already discriminated against, and harassed her. Ms. Victor, prior to building the presence she now has on Social Media, did not work full time on Social Media. When Ms. Victor moved to California she made an assumption that finding a job in a club as a bartender or bottle service would be easy especially with her history in that field of employment, however, that assumption was wrong. Things got so bad for the Plaintiff that at one point she had made a YouTube video begging the internet for money to help her pay her rent because she did not want to leave California; a moment of time she still gets harassed about on Social Media. Wally's was the first job interview and first job offer the Plaintiff had received in a long, bad, period of time, so despite her hesitation and her terrible prior experience, she had no choice but to take the job. Ms. Victor was in survival mode and that included accepting a job position at Wally's which will prove to be one of the worst mistakes she has made in her lifetime.

60. February 15, 2019, was Ms. Victor's first training shift at Wally's and the day she had filled out the paperwork required for her employment with the Company. Upon request from Mr. Duccini, Ms. Victor arrived to Wally's a half hour prior to the start of her training work shift as requested, arriving at 4pm. The half hour she was filling out paperwork she was not clocked in. Upon arrival, Ms. Victor was sat in the private dining room in the back of Wally's and was given the Wally's Employee Handbook (hereinafter "Handbook"), which was over seventy pages long. Ms. Victor was expected to read this entire Handbook in addition to reading and signing a separate pile of multiple papers, that required Ms. Victor's signature and/or initials, prior to her training shift which was scheduled to start in thirty minutes. It was impossible for Ms. Victor to read everything in full detail in thirty minutes on top of the expectation to complete a large pile of paperwork.

61. After thirty minutes had passed, at 430PM, Mr. Duccini came into the private dining room and told the Plaintiff it was time for her shift to begin. Ms. Victor quickly signed the remaining paperwork and handed it to Mr. Duccini. It is important to note that the Employee Acknowledgement and Arbitration Agreement signed by Ms. Victor was a separate document given to her with all other paperwork and the signed agreement was not torn or taken out of the Handbook after she signed her signature.

62. It is also important to note that these documents were received by Ms. Victor on June 8, 2020 by her prior legal counsel referenced by their fictitious business name, Mosley & Associates (hereinafter "Mosley & Associates" or "prior legal counsel"), and she was never

given or able to receive a copy of any of the documentation she had signed that day. An email correspondence between Ms. Victor and Mosley & Associates began on June 8, 2020 in regards to Mosley & Associates sending Ms. Victor a copy of her employee file via a drop box link, a drop box link that is now very much expired.

63. Ms. Victor had asked Mr. Duccini if she could keep the Handbook, as she barely got half way through reading it in the short amount of time that was given to her to complete such a task. Mr. Duccini informed Ms. Victor that "they were low on copies" but he would get her one by her next shift. Ms. Victor was **never** given a copy of the Handbook, not on her next shift, not in future write ups over dress code, and not even upon her *wrongful* termination. Ms. Victor was never given a copy of the Handbook to keep, nor was she ever given a copy to borrow for review with the promise that the Handbook would be returned to Wally's Management. Access to the Handbook, which stated all the rules and regulations, was limited to the half hour time slot Ms. Victor was given prior to her first training shift on February 15, 2019. It was impossible to ask any questions or to discuss concerns about the Handbook to Management or Supervisors when Ms. Victor was denied the opportunity to keep a copy. Ms. Victor, as well as other new Employees of Wally's, should have been able to take the Handbook home to read it in full, and then, only after agreeing to its entirety, should new employees be authorized to sign and return the Employee Acknowledgement & Agreement Form to the Company.

64. Once Ms. Victor had handed Mr. Duccini the Handbook and her pile of signed paperwork, Mr. Duccini walked Ms. Victor to the front of the restaurant, to the hostess stand,

and clocked Ms. Victor into her shift on the hostess computer, using a computer key that all Managers at Wally's had. Ms. Victor worked and trained until 1030PM on the evening of February 15, 2019, making the total work shift six hours, excluding the additional half hour she had filled out paperwork. During this training shift the Plaintiff received no meal break, nor any ten minute breaks, despite working a total of 6 hours. The work shift would have been 6.5 hours if the additional half hour for paperwork completion had been included, as it should have been.

65. On February 16, 2019, the Plaintiff had her second training shift and arrived at Wally's at 3PM. Mr. Duccini was the manager on duty during the Plaintiff's training shift. Ms. Victor asked Mr. Duccini if a copy of the Handbook had been made for her yet and he told her "Not yet." How is supplying a copy of the Handbook to an employee such a difficult task, especially if they had a computer and access to a printer in the office in the back of Wally's? Not giving Ms. Victor her employee handbook was an intentional act.

66. The Plaintiff wore black jeans, tan leopard print combat boots, a black one shoulder crop top, and gold drop earrings, to Wally's that evening. Plaintiff asked Mr. Duccini if the outfit she had on was acceptable and Mr. Duccini confirmed that "It was great." That evening the Plaintiff worked with hostesses Ms. Conrad, VERONICA PRINCE ("hereinafter "Ms. Prince"), and CAROLINA BANKS ("hereinafter Ms. Banks"). All of the hostesses were in crop tops showing mid drift and skin and they were all wearing heels. The Plaintiff was the only hostess wearing flat combat boots. Looking at the other hostesses' attire, the Plaintiff was learning what she could wear to work through her fellow employees "approved" and "acceptable" attire. The

closing manager clocked Ms. Victor out of her second training shift at 11PM, making the training shift a total of 7.5 hours. Once again, Ms. Victor did not receive a meal break nor a rest period during her 7.5 hours of training at Wally's.

67. On February 17, 2019, the Plaintiff worked her final training shift at Wally's and was introduced to Manager MINA JONES (hereinafter "Ms. Jones"), a manager who would soon become one of the Plaintiffs' most malicious and persistent harassers. Ms. Victor arrived to Wally's for her final training shift at 930AM. Although the Plaintiff told Ms. Conrad and Mr. Duccini, at her hiring interview, that she was unable to work mornings, Ms. Victor was still required to train for the morning shift as standard procedure.

68. Ms. Victor wore a Motel Rocks printed dress, Dr. Martin boots, and a long black maxi cardigan over her dress to Wally's that morning. Ms. Victor kept the cardigan on over her dress for the entire training shift. At the end of the shift Ms. Jones called the Plaintiff into the back office. Ms. Jones asked the Plaintiff if she knew where she was. Ms. Victor, confused by the question, asked Ms. Jones what she meant by her question. Ms. Jones explained to the Plaintiff that she was in Beverly Hills, that wearing an outfit like the one the Plaintiff had on, was not acceptable for work especially since families attend Wally's on Sunday mornings for their brunches. The Plaintiff asked Ms. Jones why the outfit wasn't acceptable and stated that she would wear it to brunch with her own family. Ms. Victor also attempted to explain to Ms. Jones that she merely dressed like she was going to a night shift as she wouldn't be covering morning shifts and had not received a copy of the Handbook and did not know the rules and regulations

surrounding dress code for hostesses that work morning vs. night shifts. Ms. Jones did not give a proper explanation as to how or why Ms. Victor's attire was unacceptable or not "Beverly Hills" worthy, but only stated to not have bare legs showing again with a dress "that length". The Plaintiff was confused by these demands because on her prior training shift, on February 16, 2019, Ms. Conrad had on a mini skirt with her legs exposed that was much shorter than the dress the Plaintiff had on for the morning shift. However, the Plaintiff agreed to not show her legs again in the workplace with any dress "too short". Feeling not only insulted but humiliated after her conversation with Ms. Jones, Ms. Victor left Wally's and her final training shift at 3PM that afternoon, making the total shift a total of 5.5 hours. Again, Ms. Victor did not receive any rest or meal periods during this training shift.

69. February 18, 2019, was the Plaintiffs' first shift as a hostess after completing the necessary three training shifts. Ms. Victor arrived to her shift at 4PM. Ms. Victor wore large rhinestone ball detailed hoops with a black turtleneck and jeans to Wally's that evening. Midway through the Plaintiff's shift she was summoned to the office again by Ms. Jones, where Ms. Jones told her that she was not going to write the Plaintiff up "this time" but Ms. Victor was required to take her earrings off immediately as they were "distracting to customers" and "unacceptable for work." Ms. Jones then handed Ms. Victor four images of models who were modeling for the brand GUESS?, INC. (hereinafter "GUESS"), which is owned by PAUL MARCIANO (hereinafter "Mr. Marciano") and MAURICE MARCIANO (hereinafter "Maurice"), principal owners of Wally's. Ms. Jones asked Ms. Victor to study the images of the GUESS models and told her that maybe she could learn a thing or two about how to dress to a

job in Beverly Hills. Every image shown to Ms. Victor was a white model who was tall and skinny, which is the polar opposite of Ms. Victor's race, color, size, and shape and no studying of these photos would change that. Completely disgusted by Ms. Jones statements, rude behavior, direct racism and discrimination towards Ms. Victor, Ms. Victor knew that she needed money and she needed a job, so Ms. Victor complied with Ms. Jones demands and removed her earrings before returning to the hostess stand.

70. The Plaintiff was the only hostess employed at Wally's who got in trouble for all of her attire, even her jewelry, and this was only her fourth shift since her employment with Wally's began. After her second, unpleasant, insulting, and discriminatory conversation with Ms. Jones, Ms. Victor became self-aware that working at this restaurant was probably going to give her issues. However, at this time Ms. Victor had not been doing Social Media full time and she desperately needed employment. Unfortunately, since Wally's was the first job offer the Plaintiff had received, she promised herself that she was going to deal with any and all the hostility that would be thrown her way and attempt to suck it up because she learned the hard way that California is an expensive state, Los Angeles is an expensive city, and Ms. Victor had bills to pay. Ms. Victor left her first official shift as a non-training hostess of Wally's at 12AM, midnight. Ms. Victor had worked a full 8 hour work shift, and although she received a half hour meal break, she did not receive any rest or recovery periods.

71. On February 20, 2019, Ms. Victor arrived to work at Wally's at 1PM in the afternoon. Ms. Victor wore black jeans, a black ribbed body suit, a long black maxi cardigan, and black

boots. The Plaintiff recalls sighing in relief on her way home at 9PM that evening as it was the first shift, since her employment began, that Ms. Jones or any other manager hadn't harassed her about one thing if not the other. Ms. Victor's work shift was 8 hours, she did get a half hour meal break, but again, did not have any rest of recovery periods.

72. On February 22, 2019, Ms. Victor arrived to work at Wally's at 1PM, wearing a cropped, off white knit sweater with a black faux leather midi skirt, black tights (so her legs were not exposed), a leather jacket, and combat boots. Although the Plaintiff was not sent home, Ms. Jones made it a duty to approach the hostess stand and start a conversation with the Plaintiff about how she doesn't understand the style of "young America" and how women dress differently in France. Ms. Jones proceeded to go on and on and on about how women in France wouldn't wear the Plaintiff's style clothing to work or in general, maliciously, and intentionally insulting Ms. Victor. Ms. Victor was put in a very uncomfortable situation being judged, ridiculed, and humiliated once again on her appearance and outfit by Ms. Jones. Ms. Victor took notice that Ms. Jones was not making comments or striking similar conversations with any of the other hostesses that evening. Ms. Victor did not leave work that evening until 945PM, making her shift a total of 8.75 hours worked. Again, Ms. Victor did not get any rest or recovery periods during this shift.

73. February 22, 2019 concluded Ms. Victor's work shifts for her first pay period at Wally's, this pay period was for the dates February 11, 2019 to February 24, 2019. Ms. Victor recorded her working shifts as February 15, February 16, February 17, February 18, February

20, and February 22 of 2019, these do not included any dates or times in which she could have picked up a shift or added hours or failed to keep or failed to receive accurate payroll records date and times from Wally's. The total hours that the Plaintiff knows she had worked, not including any missing hours, or undocumented hours, for the pay period of 02/11/2019-02/24/2019 was 42.75 hours. The Regular pay rate for Ms. Victor during her employment at Wally's was $14 an hour and the overtime pay rate was $21 an hour. At $14 an hour for 40 hours and $21 an hour for 2.75 overtime hours, the total amount of the check should have been $617.75, minus the appropriate taxes and fees.

74. Ms. Victor was issued a check on March 6, 2019 for the amount of $469.25. The check was issued by Wally's Wine & Spirits. The address for Wally's Wine & Spirits on the check was 10459 Jefferson Blvd., Culver City, CA 90232. The phone number listed on the check was (310)-475-0805. The check was issued by Bank of America, check number 53034. The routing number on the check was 12100035, the account number was 00000325017209061, and the sequence number was 000574431014. In the employee file sent to Ms. Victor on June 8, 2020, by her prior legal counsel, Wally's had marked Ms.Victor's first shift as February 28, 2019 and did not include her entire first pay period which is falsified information and fraud on the court. This check was short hours, hours that have never been paid to Ms. Victor.

75. Ms.Victor's next pay period, and the pay period Wally's attempted to state was Ms. Victors first week, to deceive the court, was from 2/25/19 - 3/15/19. Ms. Victor worked on February 25th, 2019 from 5PM to 12AM, midnight, and she did not take her dinner meal break

until 1030PM that evening. This shift was seven hours, minus a half hour meal break, making the time clocked in for Ms. Victor six and half hours. Ms. Victor was unable to take any rest or recovery periods this shift. Employees of Wally's were required to download an app where they could chat with management or other employees about switching shifts, ask questions, or comment concerns, etc. Manager Ms. Jones contacted Ms. Victor on the app following her shift and stated that she was changing the time frame of her meal period so that the Human Resources Department (hereinafter "HR") did not fine Wally's for Ms. Victor taking her break past the five hour required time. Ms. Victor did not fully understand what Ms. Jones meant by penalties but what Ms. Victor did understand is that Ms. Jones had it out for her and if she didn't comply she would only become a bigger target for Ms. Jones to bully, harass, or retaliate against, so Ms. Victor agreed to have Ms. Jones adjust her time sheet.

76. Ms. Victor worked from 5PM to close on February 16, 2019. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

77. Ms. Victor worked from 1PM to 945PM on February 28, 2019, working a total of eight hours and forty-five minutes. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

78. Ms. Victor wore an expensive bustier, embellished top from the brand Nasty Gal, black jeans, and boots to work that evening. The embellishments on Ms. Victor's top had sequins and embellishments that resembled what someone would have worn to a Great Gatsby

themed party, a top that got more than enough compliments from customers that dined at Wally's that evening. However, Ms. Jones, per usual, made it a point to find her way to the host stand to make insulting commentary towards Ms. Victor and her attire. At one point while a customer was complimenting Ms. Victor's top stating it was "gorgeous", Ms. Jones interjected into the conversation stating "Gorgeous? It is distracting." Both Ms. Victor and the customer looked at each other in discomfort before Ms. Victor walked her and her party to their table. Ms. Jones, yet again, humiliated, embarrassed, and degraded Ms. Victor but this time did so in front of customers, maliciously and with pleasure.

79. Ms. Victor arrived to work at 1PM on March 1, 2019, wearing a tan jumpsuit, black Dr. Martin boots, a gold necklace, and a leather thick jacket to wear in and out of work to keep warm. After about twenty minutes of being at Wally's, Ms. Jones approached Ms. Victor while seating a group of customers and told her "Meet me at the hostess stand." Ms. Victor met Ms. Jones at the host stand and she was scolded harshly again in front of customers about how she needed to go home immediately to change or just leave for the entire shift. Ms. Victor again embarrassed and humiliated asked Ms. Jones, why?, as she did not see what could possibly be wrong with her outfit. Ms. Jones told her that her "bottom" was not appropriate in her jumpsuit and that she received complaints from customers wives that "Ms. Victor's bottom was making them uncomfortable." Horrified by what Ms. Jones was saying but even more horrified that Ms. Jones was saying such things in front of customers at the host stand instead of in their office, Ms. Victor was at a loss for words. Ms. Jones demanded she leave immediately and change or leave and not come back. Ms. Victor left Wally's at 140PM to head back to her apartment via

Uber to change. At this point Ms. Victor had not begun driving herself to work and was taking Ubers to and from, which was an additional cost that had been stressing Ms. Victor out. Mr. Duccini who had heard of Ms. Jones decision to send Ms. Victor home to change ensured Ms. Victor that she would be reimbursed for that time but never was.

80. Ms. Victor arrived back to work at 256PM and had changed into a black long sleeve body suit with black jeans and black boots, and was more than highly upset about the entire situation. Upon arriving back to Wally's the entire staff at Wally's took amusement discussing Ms. Victor's situation and everyone kept coming up to her, even staff members she did not know, making comments like "damn girl, you got sent home for that ass!" Ms. Victor was absolutely mortified.

81. MATTHEW MARCIANO (hereinafter "Matt Marciano") had called Ms. Victor over to a table he was sitting at with his friends and informed her he had heard about what happened. Matt Marciano then told Ms. Victor his nickname for her would be "tiny". Ms. Victor asked Matt Marciano why that would be his nickname for her where he responded "because your ass is big but you are small," and then him and his friends all had a nice laugh at Ms. Victor's expense while drinking their drinks. Keep in mind, Matt Marciano was drinking while on the clock as a Manager, a pattern he repeats the entire time Ms. Victor was employed at Wally's Ms. Victor at this point had just about enough of everyone at Wally's and of how she was being treated during this shift. At 930PM, which could not have come soon enough, Ms. Victor's shift had ended and she went home. On the Uber drive home Ms. Victor realized that this job was going to be very

difficult for her and that she had, in the short amount of time of being employed, been through more discrimination and harassment than she had ever experienced at a job, ever. Wally's had begun to take its emotional toll on Ms. Victor and would continue to do so up until her wrongful termination and continue even further throughout this three year litigation.

82. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

83. Ms. Victor's next shift would be no different, and the harassment would only progress. Ms. Jones attempted to send Ms. Victor home yet again for her attire. Ms. Victor arrived to Wally's at 1PM on March 4, 2019, wearing a black turtle neck jumpsuit with a gold and black belt around her waist for accessory detailing and again had a thick leather jacket with leopard faux fur detailing to wear outside going to and from work. Ms. Jones walked right up to Ms. Victor with her own sweater/cardigan and told Ms. Victor she needed to put her sweater on or leave because her "bottom" was "too much" in the black jumpsuit she was wearing to work. Ms. Victor refused to put on Ms. Jones cardigan and was infuriated by the demand. Ms. Jones threatened that if she didn't cover up her "bottom" then she will be asked to leave work for the entire shift. Ms. Victor was forced to wear her thick leather and faux fur jacket for her entire shift which was eight hours and forty five minutes which caused Ms. Victor to overheat. Ms. Victor received no rest or recovery period which was a pattern repeated every shift she worked for Wally's.

84. Ms. Victor left work at 945PM that evening, again she was upset, humiliated, embarrassed, and retaliated against. All other hostesses wore crop tops, mini skirts, thigh high boots, mesh dresses, bright colors, hoop earrings, everything and anything Ms. Victor could not dare attempt to wear. Ms. Victor was being discriminated against not only for her race but for her genetic information.

85. Ms. Victor arrived to work on March 6, 2019 at 1PM, she recalls that it had been raining because she wore a rain jacket to work. After the last prior two traumatizing work shifts Ms. Victor decided to wear a simple black long sleeve and black jeans to her shift so Ms. Jones, nor any other manager, could possibly target her for her attire or her body. The restaurant was quiet that afternoon due to the weather.

86. Ms. Victor went to the ladies room in the back and upon exiting the restroom, to go back to the host stand, CHRISTIAN NAVARRO (hereinafter "Mr. Navarro"), whom had been sitting next to THOMAS KACHANI (hereinafter "Mr. Kachani"), yelled out to Ms. Victor, "I have been stalking your social media." Ms. Victor walked over to the island table Mr. Navarro and Mr. Kachani had been sitting at and asked Mr. Navarro if he would ask Mr. Marciano and Maurice if she could be a brand ambassador model for GUESS. Remember, Ms. Victor has a large following on social media from doing reality TV and was a brand ambassador model for many brands such as PrettyLittleThing, FashionNova, My Mum Made It, MissGuided, AKIRA, and many more brands, so asking that question to Mr. Navarro was not outlandish. Mr. Navarro laughed at Ms. Victor's request and stated, "Honey, you are not tall, you are not white, you are

not skinny, and you are not blonde. You would never be a brand model for GUESS." Both Mr. Navarro and Mr. Kachani laughed at Mr. Navarro's response as if his remark was comedy or humor. Ms. Victor, insulted and disgusted, simply stated "Wow" before deciding not to engage in the conversation any further and walked back to the hostess stand. Can you image how hard it must have been for a black female to be blatantly discriminated against at the beginning of a work shift and be forced to maintain composure, class, and professionalism while suffering internally? It is unimaginable.

87. Around 3PM, Mr. Marciano came into Wally's to prepare for a lunch meeting he had scheduled at Wally's. Mr. Navarro and Mr. Marciano were engaging in a conversation in front of the host stand when Mr. Navarro told Mr. Marciano about Ms. Victor's request and his response to such request and both him and Mr. Marciano bursted out laughing. Mr. Marciano then confirmed "Sorry you wouldn't model for my brand. Clean the front door glass before my guests arrive." Ms. Victor grabbed windex and rags to do as she was told like a slave. Standing in front of these two men who were still engaging in conversation, Mr. Marciano told Ms. Victor to "clean the bottom of the glass doors", which required Ms. Victor to bend over in front of the two men. She heard nothing but creepy silence behind her as she was doing such. After she was done windexing the doors Mr. Marciano told Ms. Victor that he didn't like her jeans and to not wear them again. Ms. Victor could not believe it. Not only were these black jeans she wore almost every shift to be safe from getting in trouble, but how could there be anything wrong with simple black jeans?

88. There was not a single shift, since Ms. Victor began, where she wasn't getting in trouble for baseless reasons, or walking on egg shells petrified she was going to be harassed. Ms. Victor realized this day, that the Manager Doe who targeted her as a customer prior to her employment must have learned his discriminatory behavior from the owner's and principals directly because Mr. Navarro and Mr. Marciano had absolutely no issue showing their clear prejudice towards blacks, especially black females, to a black female, Ms. Victor.

89. Towards the end of Ms. Victor's shift that evening, Ms. Conrad told Ms. Victor to set up a specific table for Maurice who had been marked down for dinner on the calendar with a party of people. Ms. Conrad had explained to Ms. Victor that Maurice was "Me Too'd" during the "Me Too" movement and was only allowed to come into the restaurant once a month and only with supervision. Ms. Victor could not believe how racist and predatory the owners of the job she was working at were, but again, at the time was desperate for a job and money and couldn't afford to quit. Ms. Victor left work at 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

90. Ms. Victor's next work shift was March 9, 2019, where she arrived to work at 1PM. Ms. Victor had her hair big and curly with added curly hair extensions. Ms. Victor wore different black jeans, a black top, with a gold and black embellished tuxedo jacket, black combat boots, and a red lip. Ms. Jones approached Ms. Victor at the hostess stand and stared at her uncomfortably for a minute or so prompting Ms. Victor to ask, "What?" Ms. Jones stated, "This

is the first shift you don't look terrible, good job." Ms. Victor, in shock, just dropped her jaw in amazement at how rude and cruel Ms. Jones was while Ms. Jones simply walked away from the host stand satisfied at her harassment towards Ms. Victor. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

91. Ms. Victor received her second pay check from Southwest Wine and Spirits LLC on March 15, 2019 for the pay period from 2/25/19 - 3/10/2019.The address on the paycheck was 2107 Westwood Blvd., Los Angeles, CA 90025 and there was no phone number on this check. The check# was 100515280 issued from Bank Of America. The routing number was listed as 06300004, the account number was listed as 00000005505975677, and the sequence number was listed as 000577840256. Not only was Ms. Victor's missing wages from the previous pay period not applied for this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. This check, which was check# 100515280, was only for $533.61, which was not even remotely close to what Ms. Victor was owed in back pay and current pay.

92. Ms.Victor's next work shift was March 11, 2019, she arrived to work at Wally's at 430PM wearing a black turtleneck long sleeve top, black jeans, and small gold hoop earrings. Ms. Victor was working alongside Ms. Banks. During Ms. Victor's eight hour work shift, Ms. Banks confessed to Ms. Victor about her sexual and romantic relationship with Mr. Navarro and asked Ms. Victor to keep it a secret as their relationship was not allowed. Ms. Banks went into

full details about her sex with Mr. Navarro, her trips with Mr. Navarro, and how she gets upset about other females, especially those who are also employed with Wally's who were sleeping with him too. Ms. Victor was taken back by this information but could see how such is possible as Mr. Navarro had often times approached Ms. Victor discussing her social media and her photos.

93. One shift Mr. Navarro had approached Ms. Victor stating he was "shocked" to see Ms. Victor clothed because she was always "so naked" on her Instagram, a possible remark used strategically by Mr. Navarro to see if he could sleep with Ms. Victor as he had slept with Ms. Banks and other females who have been employed at Wally's.

94. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020, which to Ms. Victor's belief, had been amended and changed strictly because of her lawsuit, as the entire Handbook, even the dress code section has been altered. At the bottom of the Handbook given to Ms. Victor by her prior legal counsel in June of 2020 it had a copyright symbol next to "2019 Ervin Cohen & Jessup LLP" which was not on the original Handbook. If need be Ervin Cohen & Jessup LLP can be subpoenaed, under oath, under penalty of perjury, to provide the court exact dates in which the Handbook was amended, which should have been told to all employee's past and current pursuant to California Labor law.

95. Under this new Handbook Wally's added a section entitled "Conflict of Interest and Outside Business Activities". This section states the following, "Employees are expected to avoid any conflict of interest during their employment by Wally's…An employee should

immediately disclose any relationship described in the foregoing paragraph to his or her supervisor…An employee's failure to disclose any of the relationships set forth in this policy shall be subject to discipline, up to and including termination." Ms. Banks and Mr. Navarro did not disclose to anyone of their sexual and/or romantic relationship, in fact, Ms. Banks was imperative that Ms. Victor keep what she was told confidential to avoid Mr. Navarro and herself being subjected to any repercussions from said relationship. Mr. Navarro's other relationships were also not disclosed nor subject to discipline, suggesting that sleeping with your boss allows you to break the rules and not be subjected to the discipline of such rules. So had Ms. Victor slept with Mr. Navarro, her boss, who made sexual commentary often, would the harassment, bullying, retaliation, and discrimination ended? And was such harassment, bullying, retaliation, and discrimination a result of Ms. Victor not being interested in any man at Wally's, including Mr. Navarro?

96. This Handbook, the one given to Ms. Victor in June of 2020, also had a section entitled "Off-Duty Conduct" that was absolutely added into the Handbook after Ms. Victor's termination. However, this section states the following, "Involvement in off-duty conduct that adversely affects Wally's legitimate business interests or an employee's ability to perform him or her work may result in discipline up to and including termination." Ms. Banks was affected by her off-duty conduct and relationship with Mr. Navarro. Many shift Ms. Banks' mood would be ruined or she would be sad and struggle through her shift because Mr. Navarro had disrespected her, ignored her, or would be all over female customers in front of her during her shifts as a hostess. Due to Mr. Navarro breaking the rules of his company's own Handbook, neither him

nor Ms. Banks were disciplined for their relationship that not only affected Ms. Banks but other hostesses around her who had to see her suffer from said relationship.

97. Another female, an employee of the Wally's located in Santa Monica, CA, MARTINA NUCHEVA (hereinafter "Ms. Nucheva"), came into the Beverly Hill's location for dinner and drinks. Ms. Banks was working as well as Ms. Victor during the shift Ms. Nucheva came into the Beverly Hills location. Mr. Navarro was attentive to Ms. Nucheva, caressing her back, etc., while she was dining at the restaurant. Ms. Banks began discreetly crying at the host stand so Ms. Victor asked Ms. Banks what was wrong. Ms. Banks then pointed to Ms. Nucheva and disclosed to Ms. Victor that Mr. Navarro was indeed sleeping with her too and she hated working while she was in the restaurant and also hated seeing Mr. Navarro interacting with her.

98. In the Handbook given to Ms. Victor in June of 2020 there was a section entitled "Non-Fraternization". This section stated the following, "The company desires to avoid misunderstanding, complaints of favoritism, possible claims of sexual harassment and the employee morale and dissension problems that can potentially result from relationships between employees. Accordingly, all employees, both management and non-management, are prohibited from fraternizing or becoming romantically involved with other employees when, in the sole opinion of the Company, their personal relationships create a potential conflict of interest, cause disruption, create a negative or unprofessional work environment, or present concerns regarding supervision, safety, security, or morale." Further this section states, "In the case where the Company determines, in its sole discretion, that a relationship between two employees…

presents an actual or potential conflict of interest, the Company may take whatever action it determines to be appropriate to avoid actual or potential conflict of interest. Such action may include, but is not necessarily limited to, transfers, reassignments, changing shifts, or where deemed appropriate, disciplinary action up to and including possible termination. Employees who have questions about whether a particular romantic relationship violates this policy should contact the Director of Human Resources." Ms. Banks was indeed subjected to favoritism because she was sleeping with the boss, in fact, one shift Ms. Victor covered for Ms. Banks because she went away with Mr. Navarro. Ms. Victor eventually made a complaint to Manager TATUM JIMENEZ (hereinafter "Ms. Jimenez"), Manager CHRISTIE BAKER (hereinafter "Ms. Baker") whom were all aware of Mr. Navarro's sexual relationships with employees. Again, Mr. Navarro violated the rules of his companies own Handbook to satisfy his own predatory sexual demands.

99. Mr. Navarro often times drank, especially at night, at Wally's. On evenings that he was extremely intoxicated he would walk to the hostess stand and tell the hostesses to keep him away from the females because he didn't want to get in trouble. Mr. Navarro himself knew of his own capability to become completely out of line and turn to predatory behavior, especially with liquor in his system.

100. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 also had a section entitled "Equal Employment Policy/Policy Against Discrimination". This section has a paragraph that states, "Managers and supervisors are prohibited from providing favorable

treatment to employees with whom they are involved in a consensual sexual relationship (and should consult with the Director of Human Resources regarding any such relationship prior to its inception or as soon as possible)." Again, Mr. Navarro and multiple managers, supervisors, and employees all violated the rules they were meant to follow in the Handbook to satisfy their sexual needs. Not only did Mr. Navarro target his female employees, he also provided the females that did sleep with him favorable treatment, then advised his managers and supervisors to not report any of his conduct that was clearly known throughout the restaurant. Ms. Victor did not sleep with Mr. Navarro nor any man at Wally's and did not receive favoritism but rather retaliation for not sleeping with Mr. Navarro, other male employees, or the customers the Defendants allowed to harass and assault Ms. Victor. I guess when you are the President and the Principal of Wally's or the Owner you can not only break the rules but tell your employees to not do a thing about you breaking the rules.

101. On March 11, 2019, Ms. Victor worked until 1215AM. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

102. On March 13, 2019, Ms. Victor arrived to work at Wally's at 1PM wearing black leather pants, black studded boots from EGO, and a black turtleneck bodysuit. Both Ms. Baker and Ms. Jones felt it necessary to tell Ms. Victor how much they did not approve of her footwear, but Ms. Victor was not sent home. Ms. Jones called her boots "a hazard" due to the spike and stud detailing and "ugly". While Ms. Baker walked to the hostess stand and

uncomfortably stared at Ms. Victor's shoes for what felt like a lifetime, finally stating, "those are interesting." Ms. Victor did not respond to either Ms. Jones or Ms. Baker's disrespect while Ms. Conrad who has witnessed all of the Ms. Victor's abuse, asked Ms. Victor how she takes it and said, "I would quit if I were you." Unsure if Ms. Conrad was making that comment on behalf of the management and employees who have continuously bullied, harassed, discriminated against, and retaliated against Ms. Victor, so that Ms. Victor would be convinced to quit allowing the Defendants to avoid a wrongful termination suit, or if Ms. Conrad was genuinely making such statement in concern/disbelief.

103. Ms. Victor left work at 915PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

104. Ms. Victor worked on March 14, 2019 beginning her shift at 1PM. In the middle of her shift Manager WALTER MERIDA (hereinafter "Mr. Merida") came up to Ms. Victor to ask her how she was doing, concluding the conversation by telling Ms. Victor "to hang in there" and he advised Ms. Victor to not let Ms. Baker or Ms. Jones get under her skin. Mr. Merida would be the only male employee, manager, supervisor who remained professional throughout Ms. Victor's employment and who did not harass, discriminate against, or retaliate against Ms. Victor whatsoever.

105. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

106. At this point, Ms. Victor began texting Mr. Duccini all her outfits prior to going to work to ensure that she would no longer be told to leave work because of her attire. On March 16, 2019, Ms. Victor texted an image of her outfit, which was a one shoulder long sleeve silver maxi dress and heels, to Mr. Duccini asking if her outfit was "acceptable". Mr. Duccini confirmed that her outfit was acceptable so Ms. Victor headed to work at Wally's and arrived at 1PM. Hours into her shift Ms. Baker approached the hostess stand and told Ms. Victor that she got complaints from women who were in the restaurant about Ms. Victor's attire. Ms. Victor told Ms. Baker that her outfit was approved by Mr. Duccini and was highly confused by her remarks. At this point the weather was warmer and Wally's had their air conditioning on full blast so the establishment was ice cold. Ms. Victor does not wear bras, never has, never will, as she believes that they cause breast cancer. Ms. Baker told Ms. Victor that her "hard nipples" in her clothing were "unacceptable" to "classy" families that were at the establishment dining and that her "nipple rings" were causing women's husbands to stare. Ms. Victor was completely mortified, humiliated, and embarrassed yet again by the management of this company. Ms. Baker told Ms. Victor that she wouldn't be sending Ms. Victor home this time but rather warned her that she better start wearing bra's now that the AC is on and it will be "cold" inside. Ms. Victor told Ms. Baker that she would not be wearing bras due to her beliefs leaving Ms. Baker to shrug her shoulders prior to walking away from the hostess stand. Ms. Victor then witnessed Ms. Baker huddle up into a group of other managers and/or supervisors including Ms. Jimenez.

107. Ms. Jimenez, who Ms. Victor relatively got along with, later approached Ms. Victor and told her that all the managers were looking for any reason to fire Ms. Victor and "hated" that

she worked there, proving that Ms. Victor was right with her assumptions that the management was harassing her intentionally in hopes that she will quit without having to terminate her, a termination which would be wrongful any which way they did such as it was fueled with “hate”, coercion, and discrimination.

108. Ms. Victor worked till 930PM that evening. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

109. March 18, 2019 would be another brutal work shift Ms. Victor would be forced to struggle through. Ms. Victor wore black fitted pants that had a black waist band and white pin stripe detailing, a white top and gold jewelry. Only about twenty minutes into her shift Mr. Merida came up to the hostess stand and told Ms. Victor that Ms. Jones wanted to see Ms. Victor in the office now. Ms. Victor already knew it was going to be about her looks, body, or attire, a pattern the Defendants repeated during her entire employment. Ms. Victor walked into the back management office of Wally’s and was greeted by Ms. Jones asking the question, “Do you think you are in a nightclub?” Ms. Victor stated no. Ms Jones continued to state that Ms. Victor “was in Beverly Hills not a cheap club and her outfit made the restaurant look trashy which was strictly prohibited.” Ms. Jones then continued to insult Ms. Victor by saying, “You don’t look like you belong in Beverly Hills”. Ms. Victor completely infuriated and at her wits end finally stood up to Ms. Jones and defended her clothes, her body, and her looks, and demanded to file her own complaint about the persistent harassment she had been enduring every shift especially

by Ms. Jones and Ms. Baker. Mr. Merida did take Ms. Victor's complaint while Ms. Jones wrote Ms. Victor up for her clothing, but these documents would not be in any of the employment files received by Ms. Victor is 2020 or 2021.

110. Ms. Jones then decided to pull out pictures of GUESS models wearings GUESS, again, and told Ms. Victor "You don't look like them and if you don't start looking like them you will continue to be sent home and written up and your third write up will lead to a termination." Ms. Victor snapped back and told Ms. Jones that she is not a white girl who was tall or slim and she cannot change the way her body is shaped. Ms. Victor was ordered to go home and change or leave and not come back for the remainder of her shift. In tears, Ms. Victor left the back office with Mr. Merida, who told Ms. Victor to "hang in there" and "to not take it personally, it is not personal it is business". No, it was discrimination, harassment, and retaliation.

111. As Ms. Victor was waiting for her car to go home Matt Marciano asked her where she was going and she explained how she was being sent home again for her attire. Matt Marciano told Ms. Victor that he didn't see anything wrong with her outfit but to make Ms. Jones "shut up" it was best to just go home and change. Then Matt Marciano said, in what he thought was a joking manner, "start wearing clothes that don't focus on your ass" then started laughing. Ms. Victor wanted to quit in this very moment but did not want these people to win so she went home, changed, and came back to finish what felt like the longest shift of her life.

112. Upon arriving back to Wally's, Ms. Victor saw Ms. Conrad who had arrived to work after Ms. Victor had left to change, wearing a crop top, a mini skirt, and thigh high boots. Ms. Victor immediately went up to Ms. Jones and asked her if Ms. Conrad would be sent home for her attire as she was previously and Ms. Victor was more clothed. Ms. Jones told Ms. Victor to worry about herself and not other employees. Infuriated beyond belief, Ms. Victor found Mr. Merida and asked him the same question in regards to Ms. Conrad and her attire. Mr. Merida shrugged his shoulders and said "Remember, it's not personal, it's just business." Ms. Victor stated "No it's racist!" Ms. Victor was the only female employee who got in trouble for her attire while all the Caucasian hostesses never got in trouble for their outfits that barely covered them. Ms. Victor was a target and would continue to be a target until her wrongful termination in June of 2019.

113. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

114. On March 21, 2019, Ms. Victor went to an event with her friend Cassie at DELILAH, located at 7969 Santa Monica Blvd., West Hollywood, CA 90046. After the event concluded Ms. Victor and Cassie went to Wally's for a small appetizer and a drink. Employees were allowed to go to Wally's on non-work shifts as long as it was approved by management prior. Ms. Victor got it approved by management to come March 21st and March 22, 2019 to Wally's for an appetizer and drink, which were non-work shifts for Ms. Victor. Ms. Victor had

no issues with going to Wally's on March 21, 2019 as Ms. Victor was never treated poorly or discriminated against by Mr. Merida who was the manager on duty that evening.

115. However, on March 22, 2019, Ms. Victor's treatment at Wally's, while attending on a non-work shift, would be entirely different and per usual… unlawful. Ms. Victor went to Wally's with her girlfriend Cassie prior to their dinner reservation at MASTRO'S STEAKHOUSE, located at 246 N Cannon Drive, Beverly Hills, CA 90210. Ms. Victor was wearing a grey turtleneck long sleeve dress and snake print thigh high boots. While at Wally's, Ms. Victor and her girlfriend Cassie received a lot of attention from other customers, especially their male customers. Ms. Victor did not stay at Wally's long, however, she did see Ms. Baker meeting with other management, whispering, pointing, and discussing Ms. Victor while she was simply enjoying food and drinks at the restaurant she was employed with. After this date, Ms. Victor was the only employee banned from coming into Wally's on non-work shifts, and was provided no explanation as to why. Ms. Victor knew that such decision was not only based on the constant harassment and retaliation she had received every shift and now non-shift, but because, from the beginning of her employment, Ms. Victor was discriminated against and treated unequal compared to her other co-workers. Co-workers who would be allowed to attend Wally's on non-work shifts for dinner and drinks.

116. On March 24, 2019, Ms. Victor picked up someone else's morning shift as Ms. Victor never usually worked morning shifts. Ms. Victor knew she would be working with Ms. Jones and decided to wear a simple button down top, black jeans, black boots, her hair in a low

pony, and a red lipstick. Ms. Jones just couldn't stop herself from harassing Ms. Victor and made sure to yell at Ms. Victor for something prior to her shift ending. Ms. Jones told Ms. Victor that she should not wear red lipstick to morning shifts as it may give customers the "wrong idea". The wrong idea? How could a shade of lip stick give customers or anyone the wrong idea? Ms. Victor wore red lipstick often to her work shifts at Wally's but this was the first time she had gotten scolded for such. Blatant harassment, retaliation, and discrimination.

117. On March 29, 2019, Ms. Victor received her third pay check from Wally's for the pay period from 3/11/2019 - 3/24/2019. The check was written out by Southwest Wine And Spirits LLC. The address on the check was 2307 Westwood Blvd., Los Angeles, CA 90025. There was no phone number on this check. The check number was 100515490. The routing number on the check was 06300004, the account number was 00000005505975677, and the sequence number was 000574022361. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. The check was written out for the amount of $572.06, not even remotely close to what Ms. Victor was owed in back pack and current pay.

118. On March 25, 2019 Ms. Victor was working the mid afternoon shift at Wally's. Ms. Jimenez approached Ms. Victor and asked her if she was looking for any side jobs to make extra cash, Ms. Victor undoubtedly said yes. Ms. Jimenez said her friend was looking for "bartenders" to work his "private" events and if Ms. Victor would be interested in bartending for any of them,

again Ms. Victor said yes. Ms. Jimenez told Ms. Victor she was allowed to leave work early to go home and get into something "sexier" and to head to her friends mansion to have an interview. So Ms. Victor left her work shift early, headed back to her apartment to change, then headed to an address provided by Ms. Jimenez to meet with her friend for an interview. Upon arriving to the address given to Ms. Victor, she was put into a room to await an interview by Ms. Jimenez's friend. Ms. Victor was hired on the spot and was told she would be working his next event as a trial run to see if it was a good fit for both of them. Ms. Victor ended up working Ms. Jimenez's friends "private" party on April 6, 2019. These "private" events are actually called "poker" nights where celebrities and/or wealthy men come to a mansion to play poker while expecting the women employees at the event to provide them sexual gratification in exchange for poker chips as "tips" or payment. All this information was not told to Ms. Victor by Ms. Jimenez and she was thrown into an extremely uncomfortable situation. Ms. Victor brought her friend Lala Craig (hereinafter "Ms. Craig") and they were both ordered to sign Non-Disclosure agreements prior to working. Ms. Victor stayed at the bar all night and was horrified to witness women under the table performing actions such as fellatio to men at the poker table. Ms. Victor texted Ms. Jimenez immediately, texts that were given to Ms. Victor's prior legal counsel as evidence, evidence that was intentionally lost by her prior legal counsel in order to help the Defendants conceal more of their unlawful behavior. Ms. Victor told Ms. Jimenez what was going on and Ms. Jimenez told her "to do what was comfortable" for her, meaning perform the sexual favors you are okay performing… which was absolutely NONE for Ms. Victor. Ms.

Victor proceeded to tell Ms. Jimenez about how uncomfortable she was and asked her to text her friend to let her leave early. Ms. Victor ended up leaving the party as soon as it became an orgy.

119. On April 12, 2019, Ms. Jimenez gave Ms. Victor an envelope of cash in the amount of one thousand three hundred and eighty dollars from working her friends poker night. Ms. Jimenez proceeded to tell Ms. Victor not to tell anyone about her side business and advised Ms. Victor to let her know if she had any friends that were "into those type of jobs". While the Defendants and their legal counsel have attempted to accuse Ms. Victor of extortion, prostitution, amongst other things, Ms. Jimenez, a manager of the Defendants establishment, was literally looking to prostitute females for her own cash benefit. Mosley & Associates knew of this information and told Ms. Victor it was an amazing argument they could present in her favor before they conveniently lost all of Ms. Victor's text message evidence. Mosley & Associates eventually told Ms. Victor that she was unable to present nor discuss Ms. Jimenez's actions and illegal behavior attempting to get Ms. Victor or anyone Ms. Victor knows to be sex trafficked at private Hollywood events due to her signing an NDA. This information provided by Mosley & Associates to Ms. Victor was in fact untrue and in complete violation of California State law and a lie. All intentional and malicious actions done in conspiracy with the Defendants were done in order to conceal more and all of the Defendants unlawful, disgusting, predatory behavior. A concealment that allows the Defendants to not be held accountable or legally liable, saving them costs, and criminal prosecution.

120. On March 29, 2019, Ms. Victor wore a red and black midi dress, black tights, and black boots to her work shift at Wally's. Matthew Turner (hereinafter "Mr. Turner") knew a group of men who were considered VIP customers of Wally's. This group regularly came into Wally's and always spent a large amount of money when they did come in. This group of men always sat in the main dining room of Wally's at a large island table. Mr. Turner would always come into the main dining room to present and attempt to sell, this group of men, expensive bottles of wine or liquor, and often times would be successful at making said sales. This group of men would stay at Wally's for hours and always left the establishment intoxicated.

121. On March 29, 2019, Ms. Victor fell victim to the sexual harassment of these customers, harassment that was not only allowed but encouraged by the Defendants. These men grabbed Ms. Victor's buttocks, arms, and other body parts, and even hollered at her every time she would walk by their table. Mr. Turner took it upon himself to tell the customers of Ms. Victor's Podcast which was entitled "Swallow It" leaving the intoxicated customers to begin calling her "Ms. Swallow It" in front of other customers and employees. Ms. Victor told Mr. Turner to tell his little group of friends to stop touching her and he responded by saying "they spend thousands, suck it up."Ms. Victor, in tears, went to the back office to file a complaint that would never make it to the HR department nor her employee file given to her in 2020 and 2021 by her prior legal counsel.

122. The Defendants, through their counsel, have taken pleasure in accusing Ms. Victor of prostitution, yet on nights like March 29, 2019, Ms. Victor was advised by the Defendants to

"suck it up" and to be "extra" nice to their VIP customers. Basically, telling Ms. Victor to enjoy their sexual harassment as the harassment makes the customers want to spend more money which is only beneficial for the Defendants. If the customers are convinced they have a shot with Ms. Victor then they will spend more money which works out for the Defendants but makes Ms. Victor suffer. In fact, the Defendants refusal to stop such harassment, their encouragement of such harassment, and their instructions to Ms. Victor to "take it" and to be "extra" nice to VIP customers, is the equivalent to the Defendants forcing Ms. Victor to be behave like a prostitute, where her body is the entertainment, and the Defendants are the ones reaping the reward.

123. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

124. On March 30, 2019, Ms. Victor wore a black tube top midi dress, black tights, a gold belt for detail, and black boots to her shift at Wally's. At this point, Ms. Victor had been employed with Wally's for over two months and her tattoo's were never covered nor were they a big secret. However, during this shift Ms. Victor was brought into the back office and told that her shoulder tattoo's showing was "unacceptable", tattoo's that she had displayed more than often. The Defendants were so desperate to get Ms. Victor to quit that they began to nit-pick every little detail of Ms. Victor's being. Whatever they choose to nit-pick was how they would harass, retaliate, and discriminate against Ms. Victor. Why would Ms. Victor's tattoos just now be an "unacceptable" issue for the Defendants but during the prior two months of employment

had not been? Malicious and intentional harassment, retaliation, and discrimination by the Defendants to make Ms. Victor suffer. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

125. On March 31, 2019, Ms. Victor wore a black sleeveless turtleneck maxi dress that had slits on the side with combat boots to her work shift at Wally's. Although not sent home, Ms. Baker asked Ms. Victor if she thought the slits in her dress were "too high". Ms. Victor firmly said no. Management at this point was trying to break Ms. Victor in hopes that she would quit, they were relentless and work had become intolerable for Ms. Victor.

126. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

127. There was a customer who often came to Wally's to just stare and look at Ms. Victor. Prior to his creepy, inappropriate behavior, Ms. Victor exchanged numbers with this man in hopes to establish more business connections for her entertainment and social media career aspirations, Ms. Victor would learn this was a mistake. This man abused the right to contact Ms. Victor, sending her insane and creepy messages and voicemails at all hours of any night. Ms. Victor made the management of Wally's aware of her issues with this customer and asked them, for her safety, to ensure that he was not allowed into Wally's while she was on shift. Management agreed to comply with Ms. Victor's request which she learned was a lie on April 1, 2019.

128. This man came to Wally's on April 1, 2019, while Ms. Victor was working on shift, and was allowed into the restaurant. This man ordered one drink at the bar before standing diagonally across from the hostess stand, where Ms. Victor was, and he just stared at Ms. Victor for over an hour. This man sent Ms. Victor multiple text messages about how a black car would be outside waiting for her when she got off her shift and that she'd "better" get into the car, followed by forty-two more text messages which forced Ms. Victor to block his number.

129. In the Handbook given to Ms. Victor by her prior legal counsel in 2020, it had a section entitled "**Physical Security**", which states the following: "Security and safety in the workplace is every employees responsibility." "The welfare of our employees and the security of the Company facilities require that every individual be aware of the potential risks. Immediately notify your manager if you see any person acting in a suspicious manner, in or around Company premises." "Our workplace safety program is top priority at the restaurant. We want the restaurant to be a safe and healthy place for employees, customers, and visitors. A successful safety program depends on everyone being alert and committed to safety." "Full cooperation by all employees is necessary for the Company to accomplish its goal of maximizing the security and safety of its employees." Again Ms. Victor was subjected to unequal treatment and accommodations in her own workplace as the Defendants rules for "**Physical Security**" only applied to anyone but Ms. Victor.

130. Despite Ms. Victor's request to not have this man attend the restaurant while she was working, for her safety, the Defendants allowed him to come. Despite, the other hostesses,

servers, and managers that had witnessed this man stand diagonal from the hostess stand for over an hour, stalking Ms. Victor, the Defendants did absolutely nothing to ensure Ms. Victor's safety. It was as though the Defendants took pleasure in watching Ms. Victor being in an uncomfortable and unsafe situation that could have been avoided had the Defendants followed the law and their own Handbook.

131. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

132. On April 3, 2019, Ms. Victor wore a leopard striped dress, black tights, a black cardigan, and black boots to her shift at Wally's. Ms. Victor was ridiculed so badly about her appearance on this day that she actually posted on her Instagram (hereinafter "IG") story, "I'm not even remotely close to being in the mood today". At one point Ms. Jimenez told Ms. Victor that the other management was in the office discussing how her outfit was not "Beverly Hills equivalent", whatever that even means. The Defendants harassment and retaliation was getting progressively more intense and worse every work shift as an attempt to try and force Ms. Victor to give up and quit to avoid a wrongful termination. Not a shift would go by where Ms. Victor was not subjected to extreme retaliation, harassment, or discrimination but Ms. Victor refused to let the Defendants win and she refused to quit.

133. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

134. Ms. Victor received her fourth check from Wally's on April 12, 2019, for the pay period of 3/25/2019 - 4/7/2019. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was CERIDIAN TAX SERVICE (hereinafter "Ceridian"), which is a corporation operating under Delaware law. The holding company for Ceridian was CERIDIAN HCM HOLDINGS INC., which is also a corporation operating under Delaware law. The check number was 730223195. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000571865394. The check was issued for the amount of $564.73. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

135. Ms. Victor experienced the raft of all Defendants working together to hate, blame, and harass her fully during her work shift on April 12, 2019. Ms. Victor was working the mid afternoon shift, Ms. Conrad, who, as stated previously, was the head hostess, told Ms. Victor to put a customer into wine room to be sat at the private table. This customer was not a VIP customer of Wally's but Ms. Conrad thought the customer and his friends were attractive and said, "he looks like a black guy with money, seat him in the wine room." Ms. Victor did as she

was told, as always. Keep in mind that the only person who was able to make decisions on seating was Ms. Conrad, no one else. The only other, and second, private dining room that was located in the back of the restaurant was also taken by customers.

136. The JONAS BROTHERS, including NICK JONAS, celebrity musicians and entertainers, soon came into Wally's, surprisingly, with no reservation, looking to be sat somewhere secluded and private. However, both private dining areas were currently filled. Mr. Kachani and all other upper management that was on duty came to the hostess stand freaking out, swearing, and yelling at all of the hostesses about who the random person was in the wine room and who sat them in there. Ms. Victor told management that she had sat the man in there under the orders of Ms. Conrad, who then denied making such orders, throwing Ms. Victor under the bus. The Jonas Brothers bought a few bottles of wine and then left Wally's due to the dining rooms not being available, which left the Defendants infuriated and somehow Ms. Victor was to blame. Ms. Victor was ordered to go home early for "f&%king up" Wally's opportunity to make a large sale off the Jonas Brothers. Ms. Victor, in tears, left early, shocked at how she was treated for a decision made by Ms. Conrad not herself.

137. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

138. On April 15, 2019, Ms. Victor wore a long red maxi dress, a choker necklace, and combat boots to her work shift at Wally's. Matt Marciano frequently sat on the outdoor patio with his friends and girlfriend on what should have been working hours and they would all drink

and get intoxicated. When Ms. Victor arrived to work Matt Marciano in front of his group of friends and girlfriend screamed, “Now Tiny, that ass in that dress!” He then proceeded to call Ms. Victor over to his table where he told Ms. Victor all his friends were still doubting that her “ass” was real. Annoyed Ms. Victor proceeded to go back inside only to be approached by Ms. Jimenez who assured Ms. Victor she didn’t have an issue with her outfit but other management had an issue with the “tightness” of the dress on her body because it focused on her “shape”. Ms. Victor wanted to scream, this job became a literal nightmare for her. Ms. Victor was not sent home for her attire because the restaurant was too busy but she received unwelcoming looks by management all night every time she left the host stand and walked someone to their table.

139. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

140. On April 17, 2019, Ms. Victor wore red lipstick and lip gloss to her shift at Wally’s and was not scolded or yelled at for doing such. Which proved to Ms. Victor that Ms. Jones’ prior remarks about her red lipstick was Ms. Jones’ personal opinion and bias and not a Company policy or rule that was being unfollowed by Ms. Victor. Ms. Jones’ behavior, amongst other individual Defendants was, and has always been, discriminatory against Ms. Victor.

141. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

142. Ms. Victor wore a black dress and combat boots to her work shift at Wally's on April 19, 2019. Upon walking into Wally's, Ms. Victor was greeted by manager JONATHAN POULIN (hereinafter "Mr. Poulin") who said, "Must be cold outside huh?" It took Ms. Victor a second to realize that Mr. Poulin was referring to Ms. Victor's breasts as her nipples were hard. Despite Mr. Poulin not only making inappropriate comments about Ms. Victor's breasts and letting it be known he was examining Ms. Victor's breasts, he was not reprimanded for such actions, but Ms. Victor was told never to wear that dress to work again by Ms. Baker. Ms. Baker's personal distain for Ms. Victor and Ms. Victor's protected characteristics caused her to completely ignore a male managers blatant sexual harassment and focused only on Ms. Victor's body in her outfit yet again.

143. Ms. Victor was not sent home because the restaurant had reservation after reservation that evening, including one for the RYU's. Ms. Ryu, Ms. Victor unsure of her first name, was a VIP customer, an awful one. Every time she came into Wally's she would get drunk and then abuse all the hostesses, calling them ugly, whores, classless, amongst other things. The hostesses, including Ms. Victor, were told to ignore Ms. Ryu's abuse as she was a high paying customer and could do and say as she pleased. Employees of Wally's could be subjected to sexual harassment, sexual battery, discrimination, verbal abuse, etc., as long as the Defendants reaped the reward.

144. Ms. Ryu's son is ROYCE RYU, who was in Wally's almost every single day, and always left extremely intoxicated. Royce Ryu will also be the VIP customer the Defendants

attempt to say Ms. Victor solicited despite Ms. Victor barely speaking more than ten words to Royce Ryu. Ms. Ryu's behavior was to be expected but she was exceptionally harsh to Ms. Conrad who fought back tears after being called ugly by Ms. Ryu.

145. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

146. Matt Marciano's drinking during his work shifts or at the establishment on non-work shifts was known by all employees, including Ms. Victor. Matt Marciano was reckless, angry, and a complete mess most of the time when he drank, even if he was the manager on duty. Matt Marciano's girlfriend BONNIE ROTTEN (hereinafter "Ms. Rotten") was a pornstar and Matt Marciano would brag about this often while at the restaurant, he also treated Ms. Rotten… rotten. Abusive in so many ways including verbally, which was triggering for Ms. Victor as she too had been in an abusive relationship.

147. On April 20, 2019, Matt Marciano got drunk on the outside patio and began screaming at Ms. Rotten, unsure over what, but in such a way it was triggering for Ms. Victor. Matt Marciano's behavior caused PTSD in Ms. Victor, making her suffer from a severe anxiety attack while at work. Ms. Victor had to ask to leave work early due to this anxiety attack that was triggered by Matt Marciano's abusive behavior toward's his girlfriend Ms. Rotten, an altercation that was viewed by paying customers as well. This wasn't the first time and it would not be the last time such an altercation happens at Wally's between Matt Marciano and Ms. Rotten or Matt Marciano and any other third party that pissed him off.

148. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

149. Ms. Victor was issued her fifth paycheck from Wally's on April 26, 2019 for the pay period from 4/8/2019 - 4/21/2019. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was CERIDIAN HCM HOLDINGS INC., which is also a corporation operating under Delaware law. The check number was 730339466. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000477956127. The check was issued for the amount of $627.68. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "Payroll Register Report" which was run by NANCY HUNTER (hereinafter "Ms. Hunter"). This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees, GILLESCHRIST ZAMBA (hereinafter "Mr.

Zamba"), JENNIFER CARMODY (hereinafter "Ms. CARMODY"), and NATASHA MARC (hereinafter "Ms. Marc"). The private information of Mr. Zamba, Ms. Carmody, and Ms. Marc, including their yearly earnings and their social security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

150. On April 22, 2021, Ms. Victor wore a blue ribbed dress that had button detailing and boots to her work shift at Wally's. Matt Marciano, Mr. Navarro, and Mr. Kachani were all seated on the outside patio dining area. Matt Marciano called Ms. Victor over to their table and stated how the weather was bringing attention to her "boobs" making Mr. Navarro laugh. Ms. Victor rebutted by telling them that she had zero control over the weather. Mr. Kachani told her to think about "wearing bras or sweaters on chillier days". Annoyed Ms. Victor went back to the host stand.

151. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

152. On April 27, 2019, Ms. Victor wore a black dress from Motel Rocks that had chain detailing and her Doc Marten boots. This shift was no different than every other shift where she was harassed about her appearance. Ms. Victor was so upset she posted on her IG story, "I need to pray about the anger in my veins tonight." The Defendants were intentionally, unlawfully, and with malice, trying to make Ms. Victor suffer every time she went to work. The Defendants wanted Ms. Victor's work shifts to be insufferable, they wanted her to QUIT.

153. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

154. Ms. Victor wore a black bodysuit, a black cardigan, and black jeans to her work shift at Wally's on May 4, 2019. Even with Ms. Victor having a cardigan on, Ms. Baker still pulled Ms. Victor aside stating that her side "boob" area was still noticeable to customers and advised Ms. Victor to not wear that bodysuit again. Ms. Victor wanted to say, "are you serious?", to Ms. Baker. However, Ms. Jimenez made it known to Ms. Victor about managements plan to get rid of her and did not want to give them an opportunity to do such, so she agreed not to wear the bodysuit again. The harassment, retaliation, and discrimination against Ms. Victor was so evident across the restaurant that servers, bartenders, and other employees, who Ms. Victor barely engaged with or knew, would ask Ms. Victor if she was okay. The Defendants behavior towards Ms. Victor created a hostile environment not equal nor free of harassment or discrimination.

155. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

156. Ms.Victor was issued her sixth check from the Defendants on May 10, 2019 for the pay period of 4/22/2019 - 5/5/2019. The check was issued through Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions

Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was CERIDIAN HCM HOLDINGS INC., which is also a corporation operating under Delaware law. The check number was 730456378. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000475280373. The check was issued for the amount of $511.37. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this pay period on a print out entitled "Payroll Register Report" which was run by Ms. Hunter. This print out document had the employee information, including social security numbers and earnings, of not only Ms. Victor but other Wally's employees. This time the employees included Ms. Victor, Ms. Carmody, Ms. Marc, Mr. Poulin, and MARCO OSORNO (hereinafter "Mr. Osorno"). The private information of these employees, including their yearly earnings and their social security numbers, was NEVER information the Defendants had legal right to disclose to Ms. Victor and yet they did so carelessly.

157. On May 6, 2019, Ms. Victor wore a black crop top, black jeans, and boots to her work shift at Wally's, she had been working the closing shift that evening. Mr. Poulin was the closing manager that evening. The restaurant was a lot slower than usual and not busy. Mr.

Poulin engaged in a conversation with Ms. Victor discussing how he has told other managers to "back off" and they needed to "chill" harassing Ms. Victor about her clothes and body because Ms. Victor would sue them. Ms. Victor ensured Mr. Poulin that if their behavior continued and/ or they fired her wrongfully, as she has been warned to expect, then she absolutely would be suing Wally's.

158. The individual Defendant, Mr. Poulin, warned the other Defendants, each of them, to stop their harassment, despite himself being one of the harassers, and even his own suggestion was ignored as their behavior did not seize.

159. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

160. On May 10, 2019, Mr. Turner told Ms. Victor that he had spent a lot of his time watching her YouTube videos and listening to her podcast, which is not something Ms. Victor asked him, or any of the Defendants to do. Mr. Turner brought up Ms. Victor's story about her encounter with NBA player BLAKE GRIFFIN (hereinafter "Mr. Griffin"), and told Ms. Victor that he had every intention of asking him about it next time he came into Wally's, Mr. Griffin came in often. Ms. Victor told him "absolutely not" and stated her life outside of work is completely different than here at work nor would it be professional to bother a customer about their past encounter with an employee. Mr. Turner laughed and as he walked away from the hostess stand yelled, "I can't wait". The other hostesses at the stand, curious of Mr. Turners

remarks, asked Ms. Victor a million annoying and harassing questions about her personal YouTube videos, videos she never wanted to discuss while at work.

161. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

162. On May 13, 2019, Ms. Victor went to work and was awaiting on Management to give her an answer about having her birthday dinner with her girlfriends in the private dinner room. Multiple employees including Ms. Jimenez and Ms. Conrad had their birthday dinners and engagement lunches in the private dining room so Ms. Victor wanted to enjoy the same luxury with her girlfriends for her birthday. However, Ms. Victor was denied by management to host her birthday party in the back dining area and was not provided a reason why. This is now the second time Ms. Victor was not offered equal accommodations by the Defendants.

163. On May 17, 2019, the day before Ms. Victor's birthday, upset she had to make new plans after being denied having her birthday dinner in Wally's private dining room, Ms. Victor worked the closing shift at Wally's. Ms. Victor wore a bra for the first time while being employed at Wally's because her shirt was white. Ms. Victor was told by not just one but multiple Defendants, "Wow, wearing a bra for once?", "Wearing a bra? Shocking", etc. That many people, including named Defendants, had been paying such close attention to Ms. Victors breasts that it was noticeable to them when she put on a bra. During this shift Ms. Conrad used Ms. Victor's birthday as an excuse to "celebrate" and by celebrating Ms. Conrad was drinking

and taking explicit drugs with customers who were supplying them for her. Ms. Conrad attempted to encourage Ms. Victor to join the celebrating but failed in her attempts.

164. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

165. Ms. Victor's seventh paycheck from Wally's was issued on May 24, 2019 for the pay period from 5/6/2019 - 5/19/2019. The check was issued from Bank of America. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was CERIDIAN HCM HOLDINGS INC., which is also a corporation operating under Delaware law. The check number was 730575789. The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000573739260. The check was issued for the amount of $642.35. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's. In the employee file Ms. Victor received from Mosley & Associates in June of 2022, the Defendants put the check information for this

pay period on a print out which was run by Ms. Hunter. This print out document had a section entitled "Cash Tips" and someone put on the line that Ms. Victor received $5.00 in cash tips which was an absolute lie, nor did Ms. Victor or any of the hostesses ever report how much tips they made at the end of the evening to management, ever, despite it being California law to do such.

166. On May 23, 2019, Mr. Turner crossed more than enough lines that would call for disciplinary action by the Defendants, yet nothing would be done. Ms. Victor was standing at the hostess stand with the other hostesses, Ms. Baker was also standing at the hostess stand. Mr. Turner approached the hostess stand with a smug look on his face staring at Ms. Victor with disgust. Mr. Turner blurted out, "if I was a manager and I saw your social media you would have never gotten a job here. One look at your social media and you can tell you don't belong in Beverly Hills." Ms. Victor looked at Ms. Baker, who was laughing at Mr. Turners remarks, and asked her to write him up. Ms. Baker refused stating, "he's just joking". Ms. Baker failed to prevent and participated in Ms. Victor's harassment.

167. That same night Mr. Griffin was reserved in the private dinning room, Mr. Turner, prior to leaving the hostess stand told Ms. Conrad that Ms. Victor wasn't allowed to seat Mr. Griffin's table. Upon Mr. Griffin's arrival Mr. Turner went to the door to greet him and his party and while passing the host stand asked Mr. Griffin if he "remembered this psycho". Ms. Victor was not only humiliated and embarrassed, she was pissed. Mr. Turner had NO right. Ms. Victor left her shift in tears, which happened often. Ms. Victor to the best of her knowledge, is unsure

when she took her meal break this shift, but does know she was not given any rest or recovery periods.

168. On May 25, 2019, Ms. Victor wore a bright neon lime green, one shoulder long sleeve dress with tights, and boots to her work shift at Wally's. Despite getting more than enough compliments from customers, management again had an issue with Ms. Victor's attire, stating that the color was "distracting" to their guests. Ms. Conrad, amongst other hostesses, always wore bright colors, it was only an issue when Ms. Victor did. Conveniently, for the Defendants, in the Handbook Ms. Victor received from Mosley & Associates in June of 2020, the Defendants changed their entire section in regards to work attire, stating hostesses could only wear neutral colors which was absolutely NOT the case when Ms. Victor was employed.

169. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

170. On May 26, 2019, Ms. Conrad introduced Ms. Victor to a good friend of Mr. Marciano's who was visiting from France and who had taking a liking to Ms. Victor's appearance. Ms. Conrad told Ms. Victor that they were all going to grab drinks at the Highlight Room after the shift had ended and to meet her there. Ms. Victor went home changed and went to the highlight room to meet them all, however, Ms. Conrad, nor anyone else was in site, only this man who was visiting Mr. Marciano from France. Ms. Victor felt tricked and entrapped in what felt like a set up by Ms. Conrad to sleep with Mr. Marciano's friend who was married and had multiple children. Ms. Victor went right home and did not entertain him nor the situation.

Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

171. June was repetitive but had gotten progressively worse for Ms. Victor, in fact, there was a shift she walked into work and the other hostesses starting hugging her telling Ms. Victor how much they were going to miss her. Confused by such interactions, KARISSA YATES (hereinafter "Ms. Yates"), another hostess, texted Ms. Victor that management had told everyone that she was being fired. Can you imagine how awful it must have been for Ms. Victor to walk into that ambush and hold it together professionally and emotionally for a shift? The Defendants always wanted Ms. Victor fired, for no legitimate reason, other than pure racism, discrimination, and retaliation.

172. One shift, in June, Ms. Victor was standing beside Ms. Conrad who was wearing a crop top, the type of top that always use to get Ms. Victor in trouble or sent home. A customer arrived at the restaurant and was awaiting to be sat by the hostesses and during her wait began to engage in conversation with Ms. Victor and Ms. Conrad. Prior to the customers table being ready Ms. Conrad had been asked by the customer "how far along are you?", the customer had thought that Ms. Conrad was pregnant. The customer proceeded to say, "I could have never worn crop tops during my pregnancy," then chuckled. Ms. Conrad, upset, told the customer that she was not pregnant and proceeded to tell Ms. Victor where to seat her. Ms. Victor walked back to the hostess stand and asked Ms. Conrad if she was okay as her mood had clearly changed. This is being mentioned to show that Ms. Victor always got in trouble for her outfits while Ms.

Conrad did not, even when such outfits of Ms. Conrad's were non-flattering or inappropriate. Ms. Conrad could do as she pleased as the rest of the Defendants. She wore mini skirts, bright colors, low v-neck tops, mesh dresses, thigh high boots, you name it, and she never got sent home to change or written up. Ms. Victor would wear a classy one piece turtleneck jumpsuit and be written up and sent home because her "body" was distracting to "wives husbands".

173. Ms. Conrad had received terrible reviews on Yelp, that described her rudeness and unfriendliness as the front of Wally's. Ms. Conrad with all the Defendants, each of them, organized a meeting with Yelp and paid the women that came in a decent amount of money to get rid of all bad reviews on the Wally's Yelp page, including, the reviews about Ms. Conrad.

174. Ms.Victor received her next pay check, which would be the last time the Defendants issued her a check, on June 7, 2019. The check was issued by Bank of America. Despite this NOT being Ms. Victor's last check, the Defendants, unlawfully made it so. The check was issued by Southwest Wine & Spirits LLC. The address for Southwest Wine & Spirits LLC, on the check, was 10459 Jefferson Blvd., Culver City, CA 90232. There was no phone number on the check. However, there was another company under the name "Payment Solutions Support" listed on the check, additionally. This company had the address of 17390 Brookhurst Street, Fountain Valley, CA, 92708, listed on the check. When Ms. Victor googled this address the Company that resulted in the search was Ceridian, which is a corporation operating under Delaware law. The holding company for Ceridian was CERIDIAN HCM HOLDINGS INC., which is also a corporation operating under Delaware law. The check number was 730695307.

The routing number was 06111278, the account number was 00000003299020208, and the sequence number was 000479928459. The check was issued for the amount of $669.78. Not only was Ms. Victor's missing wages from all previous pay periods not applied to this check but this paycheck too was missing hours and wages, a pattern that will repeat with every check Ms. Victor received during her employment at Wally's.

175. On June 10, 2019, Ms. Victor was scheduled to work the closing shift at Wally's, however, she would leave early by her own decision, a decision that would be the beginning of the end of her employment with Wally's. Matt Marciano and his girlfriend Ms. Rotten had been sitting in the main dining room, drinking, per usual. They began to argue violently in the middle of the restaurant in front of other employees and customers. Matt Marciano was screaming at the top of his lungs at Ms. Rotten, so loudly that the veins in his neck had swelled up and expanded. Matt Marciano tossed his drink on Ms. Rotten and then choked her out. All employees, customers, and staff just stood there watching this horrible interaction. Ms. Victor asked the managers on shift if they were going to stop Matt Marciano from hurting his girlfriend, and no one did a thing… NO ONE.

176. Weeks prior to this night Ms. Victor had been on shift when Mr. Kachani, Matt Marciano, and Ms. Baker all got into an argument at the hostess stand. Matt Marciano who, at the time, was intoxicated on the job, was being yelled at by Mr. Kachani that his behavior while on the work premises was not acceptable. The two men went back and forth aggressively and angrily in front of the hostesses on shift and Ms. Baker. They did not seize their arguments, not

even for customers that were walking in and out of the restaurant. Matt Marciano's behavior did not change, now he was comfortable enough to choke out his girlfriend in the middle of the restaurant.

177. Ms. Victor went to the hostess stand, explained her severe PTSD to her co-workers, clocked out and left Wally's for the night, refusing to stand by and do nothing like all other management.

178. Ms. Victor to the best of her knowledge, is unsure when she took her meal break this shift, but does know she was not given any rest or recovery periods.

179. On June 12, 2019, Ms. Victor wore a blue midi turtleneck dress with her hair curled to her work shift at Wally's. ASHA ABDELLA (hereinafter "Ms. Abdella") was working the morning shift 930AM - 3PM, while Ms. Victor came in to work the 1PM to 9PM shift. Wally's was beyond slow, so Ms. Victor asked Ms. Abdella to take photos of her for her IG, photos that remained posted on her IG for two years. After Ms. Abdella took Ms. Victor's photos she asked Ms. Victor if she could see how the photos came out. Ms. Victor handed Ms. Abdella her phone to look. Ms. Abdella began scrolling too far in Ms. Victor's camera roll and landed on personal photos of Ms. Victor that exposed her breast area, Ms. Victor immediately snatched her phone from Ms. Abdella. Ms. Abdella began discussing how she doesn't take such photos of herself and Ms. Victor responded "to each their own". However, Ms. Abdella kept going and going and going about the topic which resulted in Mr. Poulin overhearing the conversation and interjecting with the statement, "Tit pics? I used to love getting tit pics when I was single". Mr. Poulin went

on and on and on at the host stand about breasts and photos of breasts which was completely inappropriate, unwelcome, and unwanted by both Ms. Abdella and Ms. Victor.

180. This wasn't the first nor the last time Mr. Poulin as well as the other Defendants used the hostess stand to voice their sexual opinions about sexual topics or customers. Mr. Poulin was the king of coming to the host stand to discuss customers that had just come into the restaurant, with comments like "Did you see the rack on her?" Nothing was off limits to Mr. Poulin, a woman's entire physique was up for discussion when he deemed it fit. In fact, there was one afternoon a group of woman had been dining on the outdoor patio and had drank a bit too much. Matt Marciano, Mr. Poulin, and Mr. Navarro were all staring through the hostess stand window at the group of women, commenting on all of them and what they would do to them, sexually. At one point one of the women's breast fell out of her top and none of her friends let her know. Mr. Navarro, Mr. Poulin, and Matt Marciano lost their minds. Eventually the customer saw the three men disgustingly and creepily staring at her through the window making her realize that her breasts had fallen out of her top. The three men all jolted away from the window with Mr. Poulin yelling "She caught us!" Followed by all them having a nice laugh over their predatory behavior.

181. Another instance when Mr. Poulin took it upon himself to have the hostesses listen to him at the host stand was when the actress AMBER MEADE (hereinafter "Ms. Meade") came into the restaurant with one of her girlfriends. Ms. Meade was wearing a dark teal mesh and sheer top with no bra so her nipples were exposed. Ms. Meade looked beautiful as Ms. Victor

recalls, however, Mr. Poulin focused only on her exposed nipples. The entire hour or two Ms. Meade was at the restaurant Mr. Poulin walked up to the hostess stand no less than five times talking about her breast and how he “can’t stop staring”. Making Ms. Victor, the other hostesses, and possibly Ms. Meade, if she overheard, uncomfortable.

182. At the end of Ms. Abdella’s shift she hugged Ms. Victor, asked Ms. Victor if they could go out soon, and then left the restaurant. Half way through Ms. Victor’s shift, Ms. Jimenez approached Ms. Victor and asked her if she could work on Saturday even though she was not scheduled to work. Ms. Victor said sure and asked who she was covering. Ms. Jimenez explained to Ms. Victor that they planned on making Ms. Abdella work her entire shift on Friday then they were going to terminate her. Ms. Victor, a bit shocked, asked why she was being terminated. Ms. Jimenez responded by stating, “She doesn’t fit the vibe of the restaurant.” Ms. Victor, disgusted, asked, “You mean she’s too black?” Ms. Jimenez laughed and confirmed the reasoning. Ms. Abdella did absolutely nothing to warrant being fired from Wally’s, other than being too dark skinned for the Defendants. Ms. Victor firmly believes that they hire ethnic employees to pretend they are hiring enough people to create diversity, however, they intentionally and maliciously would immediately plan how to fire them or terminate them.

183. There was once a mixed race ethnic server, who had loyal customers, and was a great server, however, she stood up for herself when the Defendants came at her wrongfully like they had done to Ms. Victor. One lunch break, when Ms. Victor had been working, this server along with two others had gone next door to the restaurant called GRATITUDE. Ms. Baker,

without the knowledge of the employees, including the ethnic server, told the management of Gratitude to refuse cash and have them pay with their credit cards, which they had done. Ms. Baker then retrieved those credit card statements from the management of Gratitude which showed that the servers had alcoholic beverages on their lunch breaks, terminating all of them on the spot. The Defendants are not new to using deception, fraud, and malice to retaliate against any employees they wanted to get rid of which Ms. Victor would soon fall victim too.

184. On June 12, 2019, Ms. Victor worked her last shift before her wrongful termination. Ms. Victor was called into the office soon after her shift began and Mr. Poulin explained to her that all employees needed to sign a new waiver for taking late meal breaks and she too was require to sign one. Ms. Victor did such, however, this documentation, nor any documentation or complaints would be in the employee file given to Ms. Victor by her prior legal counsel in 2020 or 2021.

185. On June 14, 2019, Ms. Jimenez had texted Ms. Victor to confirm that Ms. Victor would still be covering Ms. Abdella's shift the following day, Saturday June 15, 2019. Ms. Victor texted Ms. Jimenez back and confirmed that she would be there for the work shift. At 4:12pm Ms. Victor received a voicemail on her cellphone from Ms. Baker. In the voicemail Ms. Baker told Ms. Victor that she received a complaint of "pornographic images" that were seen on Ms. Victor's phone and that Ms. Victor was suspended "pending" investigation. Ms. Baker again made sure to say that Ms. Victor was suspended <u>immediately</u> and to not come into her shift tomorrow. Ms. Baker told Ms. Victor that they would give her a call back to let her know how

the investigation panned out but "as of right now" Ms. Victor was not allowed to go to Wally's. Ms. Baker ended the voicemail by telling Ms. Victor to give her a call if she had any questions.

186. Minutes after the voicemail was left on Ms. Victor's phone and was listened to, Ms. Victor immediately called the Defendants. Ms. Conrad answered the reception at the host stand and Ms. Victor told Ms. Conrad that it was her. Ms. Conrad immediately said "I am so sorry baby, I can't believe they fired you." Ms. Conrad said fired, not suspended, fired. Flabbergasted, Ms. Victor asked Ms. Conrad if the managers were already telling other employees that she was fired. Ms. Conrad confirmed that it was circulating around the restaurant and everyone was talking about it. Ms. Victor asked Ms. Conrad to transfer her to the office to speak to Ms. Baker. Ms. Conrad transferred the call.

187. Ms. Baker and Ms. Victor got on the phone with one another. Not once did Ms. Baker mention to Ms. Victor that she was on speaker or that there was any other managers present to bear witness to their phone call. Ms. Victor asked Ms. Baker what the ridiculous voicemail was. Ms. Baker told Ms. Victor that she received a complaint from another employee about Ms. Victor having pornographic images on her phone that made the other employee feel uncomfortable. Ms. Baker then told Ms. Victor that she was suspended pending an investigation. Ms. Victor asked Ms. Baker how an investigation works and what to expect and Ms. Baker provided no information to Ms. Victor whatsoever. Ms. Baker did tell Ms. Victor that she would be contacted once the investigation was complete. Ms. Victor asked if it was Ms. Abdella who made the complaint against her as she was being fired. Ms. Baker confirmed that it had been Ms. Abdella. Ms. Victor attempted to explain what happened with Ms. Abdella to Ms. Baker but Ms.

Baker would try and talk over her every other word. Ms. Victor asked Ms. Baker if Ms. Abdella had made a complaint against Mr. Poulin as well, as he was fully engaged in the conversation that made Ms. Abdella "extremely uncomfortable". Ms. Victor asked Ms. Baker if Mr. Poulin was also suspended pending an investigation. Ms. Baker became flustered and agitated with Ms. Victor asking questions that Ms. Victor felt she deserved the answers too. Ms. Baker did not answer any. Ms. Victor then asked Ms. Baker why she was being suspended after one complaint from a disgruntled employee who just got terminated, but not a single person that Ms. Victor filed a complaint against had ever been looked into, written up, suspended, or punished in the same manner as Ms. Victor was for her first and only complaint.

188. Ms. Victor expressed to Ms. Baker her feelings of being targeted and how management, including her, we're all looking for any reason to fire her and that Ms. Abdella's termination and complaint was the perfect way to get rid of the two black girls that "didn't fit the vibe of the restaurant." Ms. Baker did not deny any of Ms. Victor's allegations nor did she answer any of Ms. Victor's questions. Ms. Baker just kept saying that Ms. Victor would be called when the investigation was complete.

189. It is important to keep in mind that Ms. Baker is the same manager who had stood at the hostess stand and laughed as another employee insulted, degraded, judged, bullied, and humiliated Ms. Victor followed by Ms. Bakers failure to prevent such and failure to report, despite Ms. Victor asking her to report Mr. Turner. Ms. Baker is also the manager who came up to Ms. Victor on several occasions and commented on the Plaintiffs nipples, outfits, social media, how she made mens wives feel, and much more throughout her entire employment. Ms.

Jimenez had previously told Ms. Victor that management, including Ms. Baker, wanted Ms. Victor fired from the restaurant because of Ms. Victor's protected characteristics. Ms. Bakers entire motivation to terminate Ms. Victor was fueled and motivated by her own personal judgements and biases of Ms. Victor. Ms. Victor's complaints that she had previously made, often times directly to Ms. Baker that were against Ms. Victor's superiors were never investigated nor reported to the HR department. But Ms. Victor was immediately suspended off a single complaint of an employee who just got fired. Ms. Victor's "suspension pending investigation" was bias, malicious, unlawful, and done with extreme malice. It was a personal attack against Ms. Victor and in no way professional or legal.

190. Ms. Victor demanded the contact information for the HR department, whom Ms. Victor would later learn in this litigation was Ms. Hunter and LAURA BURNS (hereinafter "Ms. Burns"). Ms. Baker refused to give Ms. Victor any email address that was a reliable number for the HR Department. Ms. Baker only provided Ms. Victor with a phone number to call. Once Ms. Victor ended the call with Ms. Baker, she immediately began calling the number provided to her from Ms. Baker for HR. Ms. Victor got the numbers voicemail box and left a voicemail asking to be called back to discuss details of the complaint made against her and to ask why none of her complaints had ever been handled in this same exact way. Over a period of days, and then weeks, Ms. Victor continued to call and continued to leave voicemails. Till this day, Ms. Victor has never spoken to Ms. Hunter, Ms. Burns, nor anyone from the HR Department. Ms. Victor was never given any answers as to why none of her numerous complaints were taken as

seriously as the complaint made against her. There was never an "investigation" against Ms. Victor, it was a simple and blatant wrongful termination based on pure hate.

191. Ms. Victor had texted Ms. Jimenez soon after Ms. Baker's voicemail was received and let her know that she would be seeking legal counsel and would be suing. Ms. Victor, who had a personal and friendly relationship with Ms. Jimenez outside of work, expressed to Ms. Jimenez her disappointment on how she could allow this to happen to her especially since she is the one who constantly warned her about management wanting to fire her. Ms. Jimenez also complained often about how unethical she thought the behavior of all Defendants was, which now includes herself.

192. Ms. Conrad, later that evening, sent Ms. Victor a long text message, apologetic, and Ms. Victor also let Ms. Conrad know that she would be seeking legal counsel. In one of the many voicemails, that Ms. Victor left for the number provided to her for the HR Department, she had also stated that she would be seeking legal counsel for wrongful termination, sexual harassment, and discrimination, amongst other things. Which gave the Defendants more than enough notice and time to use their power and connections to ensure Ms. Victor's litigation was doomed from the start. For example, they had more than enough time to change their entire Handbook, including the Arbitration section, to ensure that it minimized Ms. Victors opportunity to have an equal and fair chance at due process and the Defendants could avoid a jury trial where they know Ms. Victor would win on the merits.

193. On June 17, 2019, Ms. Victor contacted Mr. Mosley, and by July 2, 2019, her retainer to sue the Defendants was signed, which would turn out to be a terrible mistake as Mr.

Molsey, Mosley & Associates, The Dominguez Firm (hereinafter "TDF"), Thompson Coburn LLP (hereinafter "Thompson Coburn"), and all attorney's and associates of each firm have been working together since the beginning to ensure the Defendants a quick and cheap litigation. Ms. Victor has NEVER had full and equal access to the judicial system and this joke of an arbitration is a prime example.

194. Ms. Victor has yet, to this day, received her final paycheck nor all back pay, overtime pay, vacation pay, penalties, etc., that is owed to her. But that didn't stop the Defendants, their counsel, Mosley & Associates, and TDF from conspiring together when a copy of the Handbook was emailed to Ms. Victor in June of 2020 which was almost an entire year since she signed a retainer to sue the Defendants. The Defendants and their co-conspirators had doctored fraudulent paperwork in her employee file, that showed two fake payments the Defendants supposably FedEx'd to Ms. Victor after refusing to provide check numbers and Fed Ex tracking information. The Defendants sent a print out for the check they had allegedly sent for the pay period from 6/3/2019 - 6/16/2019 that was issued by Wally's on 6/21/2019 for the amount of $667.44. These fake printed pieces of paper are only evidence in support of Ms. Victor's allegations that the Defendants broke the law, many laws, anytime they deemed it fit, to conceal their unlawful behavior without suffering the consequences and legal liability.

195. The Defendants and their co-conspirators printed out a second piece of paper for a check for the pay period from 6/17/2019 - 6/30/2019. A pay period that began three days after Ms. Victor's wrongful termination and a pay period that Ms. Victor did not work at all as she was told by Ms. Baker to NOT step foot in Wally's, not even to get her final payment nor wages

owed in back pay, etc. This print out states that the check was issued on July 5, 2019, almost an entire month after Ms. Victor got wrongfully terminated, and just days after she signed her retainer with Mr. Mosley. This check states that Ms. Victor worked thirteen hours during this pay period and the check was issued in the alleged amount of $172.47. These print outs are entirely fake and having them presented to Ms. Victor was insulting to her intelligence but having them presented in this litigation was fraud on the court. The Defendants have not paid Ms. Victor a single penny she is owed and has gone to extreme unlawful measures to conceal that truth.

196. Emails in the employee file sent over to Ms. Victor by Mosley & Associates containing incriminating evidence against the Defendants trying to not only conceal their wrongful termination but a pathetic and malicious tactic to paint Ms. Victor in a false light. These emails show that the Defendants broke California laws as if doing such was acceptable or normal. Here are just a few of the things said in the emails that are not only contradicting but prove the Defendants broke many sections of law: “I did some digging. It turns out Danielle Victor had shown a few of the hosts naked pictures of herself which in turn had made Asha feel uncomfortable”. “I will suspend her this afternoon and send you final check details next week”. “I'll cut the check on Monday”. “I told her according to the handbook, we do not tolerate any harassment and take all complaints very seriously”. And these are just some of the many lies that the Defendants nor their legal counsel could keep up with or maintain throughout this litigation.

197. Mosley & Associates kept telling Ms. Victor to postpone filing a labor and wage complaint with the Labor Commissioner until Ms. Victor took it upon herself to file such claim

on August 9, 2019, which was almost two months since her wrongful termination and non payment of wages, In the employee file given to Ms. Victor in June 2020, defendants KEITH BJELAJAC (hereinafter "Mr. Bjelajac") and LAURA BURNS (hereinafter "Ms. Burns") began communication with the Labor Commissioners office with the email of <laborcomm.WCA.LAO@dir.ca.gov> on April 21, 2020. These email correspondence with the Labor Commissioner as well as Ms. Victor's scheduled hearing were almost an entire year after she filed her complaint on August 9, 2019. With that being said, the Defendants had an opportunity to compel arbitration about this dispute and did not, again waiving their legal right to do so, that is why the Defendants and their co-conspirators have gone to outlandish lengths to ensure this case goes to arbitration, even if it got here illegally.

198. The Handbook given to Ms. Victor by her prior legal counsel in June of 2020 had the following sections that were violated by the Defendants themselves: Under *Discrimination and Harassment* the Defendants violated the following sections: *Equal Employment Policy/ Policy Against Discrimination*, *Policy Against Harassment*, *Harassment Training*, *Manager Training*, and *Investigation of Reported Misconduct*. Under *Confidentiality And Conflict Of Interest* the Defendants violated the following sections: *Confidentiality of Business Information*. *Under Payroll Practices* the Defendants violated the following sections: *Pay Days*, *Payroll Corrections*, and *Request for Payroll Records*. Under *Hours Of Operation*, *Work Schedules and Compensation* the Defendants violated the following sections: *Meal and Rest Periods*, *Recovery Periods*, *Time Records*, *Accuracy Of Time*, *Overtime*, *Tip Reporting*, and *Guest Tips*. Under

*Personnel Records* the Defendants violated the following sections: *Personnel Records*, *Personnel Data Changes*, and *Confidentiality of Medical Records*.

199. Under Company Policies and Procedures, the section entitled “General Rules of Conduct”, the Defendants violated the following conduct: 1) Dishonesty in any form; 7) Unauthorized use of Company equipment, time, materials, or facilities; 9) Use, possession, or sale of unlawful drugs or alcohol while on Company premises, while in a Company vehicle, or while on duty, or reporting to work under the influence of alcohol or any unlawful drugs; 11) Failure to observe safety regulations; 12) Failure to report any unsafe conditions, damage to equipment or machinery, job-related traffic accidents or violations to your manage; 13) Carelessness or negligence while performing duties; 16) Destruction or damage to the property of the Company, another employee, a client/customer, independent contractor, vendor or a visitor; 17) Unlawful harassment, discrimination or retaliation, including sexual harassment, against another employee, a client/customer, independent contractor, vendor or a visitor; 18) Disruptive horseplay on Company time or property; 19) Threatening, intimidating, or covering other employees, client/customers, independent contractors, vendors, or visitors; 20) Insubordination; 22) Disrespect or discourtesy to managers/supervisors, co-workers, and/or clients/customers; 23) Failure to immediately and properly report a job-related injury, no matter how minor; 24) Making or receiving excessive personal telephone calls or text messages, other than emergency calls, during working hours; 25) Falsifying, altering, destroying, or willfully omitting information from any time card or Company record (including employment applications); 28) Using the confidential information of a prior employer for your own or the

Company's benefit; and 32) Improper use of and/or failure to use timecards appropriately. Under this same Chapter the sections Discipline, Alcohol And Drug Policy, Social Media Policy were all violated by the Defendants.

200. The entire section entitled "Employee Appearance" was changed in its entirety prior to it being given to Ms. Victor by her prior legal counsel in June of 2020. However, the portion entitled "Reporting Unsafe Conditions" was violated by the Defendants.

201. Under *Alcohol and Service Policies*, the defendants violated the following sections: *Alcohol Service Policies*, *Alcohol Awareness Policy*, and *Intoxicated Guests*.

202. The Defendants violated *Vacation* and *Vacation Pay* sections of their own Handbook, as well as *Sick Leave*. The entire portion of the Handbook in regards to The End of the Employment Relationship was violated by the Defendants. In conclusion, their entire arbitration portion of their handbook, its rules and regulations, have never been enforceable, yet here this case is, being held unlawfully in arbitration.

203. Ms. Marc had contacted Ms. Victor and told her that several employees, including bus boys, servers, and bartenders were being sat down and coerced by the Defendants to allege that Ms. Victor would walk around the restaurant showing off private videos and body parts. Ms. Victor had given this text message evidence to Mr. Mosley and his associates whom had told Ms. Victor, conveniently, that they lost such evidence right before Ms. Victor terminated their legal services for extreme unethical misconduct.

204. A week after Ms. Victor's "suspension pending investigation", Ms. Victor's twin sister GABRIELLE VICTOR (hereinafter "Gabi" or "twin sister") and Gabi's son

MARCELLUS VICTOR (hereinafter "Marcellus" or "nephew"), came to visit Ms. Victor in Los Angeles. They had gone to the Whole Foods located in Beverly Hills a few streets over from Wally's. While they were walking out of Whole Foods, Mr. Zamba had been walking into Whole Foods in his Wally's uniform, clearly on his lunch break. Ms. Victor had a friendly yet uncomfortable and humiliating encounter with Mr. Zamba as he apologized to her for what had happened and confirmed the entire restaurant was discussing her "pornographic images". Not only did the Defendants coerce almost the entire staff at Wally's but they defamed Ms. Victor by telling everyone her private business in regards to her employment. Their unlawful behavior never seized, not even after she was wrongfully terminated.

205. Ms. Victors prior legal counsel withdrew her Labor Complaints from the Labor Commissioners office without her knowledge, consent, or signature in May of 2020 to help the Defendants.

206. Ms. Victor's prior legal counsel, intentionally, delayed the filing of Ms. Victor's complaint over an entire year to try and ensure the Defendants could not be liable for certain laws they most definitely broke by given them the chance to claim affirmative actions. Such affirmative actions that only worked in the Defendants favor because Ms. Victor's prior legal counsel intentionally, maliciously, and reckless waited to file her complaint. Ms. Victor's prior legal counsel and the Defendants needed the statute of limitations to be in affect for more than half of Ms. Victor's causes of action. Intentional actions taken to conceal the Defendants unlawful conduct and steps necessary to ensure the Defendants avoid legal liability and accountability for such unlawful conduct.

207. The California Department of Human Resources divides progressive discipline into two phases, the "corrective phase" and the "formal adverse action" phase. In the corrective phase Ms. Victor had the right to be made aware of performance deficiencies and given an opportunity to correct them. During the formal adverse action phase, Ms. Victor should have had the right to respond to Wally's Human Resource department and also the chance to appeal to the State Personnel Board.

208. The State employer must provide due process before it can deprive an employee of their property, in this case, Ms. Victor's pay, back pay, overtime pay, etc., are her property. Wally's should have provided Ms. Victor a written notice that fully explained the adverse action, which was her "suspension pending investigation", a minimum of five days prior to the date of the adverse action which would have been Sunday June 9, 2019, since the adverse action took place on June 14, 2019. Ms. Victor had worked with her co-worker and also terminated employee of Wally's, Ms. Abdella, on June 12, 2019.

209. In some emails in the employment file given to Ms. Victor by her prior legal counsel in June of 2020, it was stated that Ms. Abdella made her complaint on June 12, 2019, and other emails state that she made her complaint on June 14, 2019 while she was being terminated. Either way a written notice should have been made immediately and given to Ms. Victor so that she could have responded to the charges at a Skelly hearing. Ms. Victor was never informed that she had the right to appeal to the State Personnel Board nor did she have a clue of the State Personnel Board's existence prior to legally representing herself. Ms. Victor was never informed

that she had the right to inspect any and all evidence upon which the employer relied to take the adverse action against her.

210. The most simple minimum due process rights that Ms. Victor should have been granted, including the right to a Skelly hearing, were denied to her. Ms. Victor must have received a notice of proposed discipline from Wally's, however, all she received was a voicemail from Ms. Baker on June 14, 2019. A proper notice needed to identify the specific rule or policy that Ms. Victor had violated that warranted a suspension and an investigation. A proper notice must have had a factual basis for taking disciplinary action. A proper notice must have been served with all documents, including a signed complaint from Ms. Abdella and her accusations against Ms. Victor, that warranted Wally's to take such disciplinary action. A proper notice must have included the effective date of the discipline. And lastly, a proper notice must have provided Ms. Victor with a deadline to any response to their claims. NONE of this was done properly or at all by the Defendants, therefore denying Ms. Victor her rights to defend herself, a repeated pattern that has been continued throughout this entire bias, prejudicial, and unethical litigation.

211. Defendant's cannot provide the Court a substantial motivating reason for any behavior or actions done by Ms. Victor that contributed or led to her being "suspended pending investigation". However, Ms. Victor can clearly prove to the Court and to the Public that such adverse action taken by the Defendants was solely discriminatory and that their decision to suspend Ms. Victor was based on her protected characteristics and the Defendants hate for Ms. Victor for her protected characteristics. "While a complainant need not prove that racial animus was the sole motivation behind the challenged action, he must prove by a preponderance of the

evidence that there was a “casual connection” between the employee’s protected status and the adverse employment decision.’” (Clark v. Claremont University Center (1992) 6 Cal.App.4th 639, 665 [8 Cal.Rptr.2d 151]). “Substantial motivating reasoning has been held to be the appropriate standard under the Fair Employment and Housing Act to address the possibility of both discriminatory and nondiscriminatory motives. (Harris v. City of Santa Monica (2013) 56 Cal.4th 203, 232.)

212. The Defendants all rallied together, and often, to figure out a plan that could be executed successfully, where the end result would be the Plaintiff’s permanent exit from the company. Whether it would be from getting the Plaintiff to quit voluntarily by intentionally and maliciously being persistent in ongoing harassment, hostile bullying, or any other reason they could fabricate a termination.

213. The Defendants and their legal counsel did and continue to make false and malicious statements about the Plaintiff, her work ethics, and her morals, a prime example is when the Defendants told the entire staff why Ms. Victor was terminated, how they were “glad” she is no longer employed at Wally’s, working with her was a “nightmare”, etc. The Defendants had been targeting and retaliating against Ms. Victor for multiple different reasons: The women working in management and other female staff members, for their own personal bias, racism, discrimination, or possible envy. The men working in management and other male staff members for the Plaintiff showing zero interest in sexual advances, sexual derogatory comments, and for complaining and having a voice that became vocal, each and every time Ms. Victor felt uncomfortable in the work environment at Wally’s.

214. CA Labor Code §215 states that "any person, or the agent, manager, super intendant or officer thereof, who violates any provision of section 201.3, 204, 204b, 205, 207, 208, 209, or 212 is guilty of a misdemeanor." The Defendants violated section 204, 204b, and 208, making them guilty of multiple misdemeanors.

215. CA Labor Code §216 states, "in addition to any other penalty imposed by this article, any person, or any agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who… had the ability to pay, willfully refuses to pay wages due and payable after demand has been made." Which was the Defendants on multiple occasions, who, to this day, have refused to pay the wages owed to Ms. Victor.

216. And those who "falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer, or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due." The Defendants along with all co-conspirators and all other known and unknown defendants; helped one another, and each other, to deny, oppress, annoy, harass, and hinder, Ms. Victor from obtaining the debt she is owed. They are also all guilty of bringing fraud upon the court and are all equally guilty of misdemeanors.

217. During Ms. Victor's employment at Wally's she got in trouble multiple times, both verbal complaints and written complaints, for her dress code and in return to these corrective actions, Ms. Victor also filed both written and verbal rebuttal's to management's complaints, especially the ones that violated Wally's own Handbook directly discriminating against her.

218. When Ms. Victor received a copy of her Employee file in 2020 by Mosley & Associates, there were no copies of her written write ups nor her rebuttals, and most importantly no copies of any of her written complaints against several different managers. All of these are required to be placed in any employees official personnel file and yet the Defendants had no copies and a clear lack of care to provide such documents during this entire litigation.

219. Ms. Victor is informed and believes that Mr. Marciano is affiliated and is a manager of a business under the name of PALMA FIDUCIARY, LLC, which begs the question, what fiduciary's are associated with this business and so affiliated with Mr. Marciano, principal of Wally's and a defendant in Ms. Victor's litigation, which would violate CA Labor Code section 226.6.

220. On over a dozen occasions, Ms. Victor, especially when working the closing hostess shift, took her meal breaks after peak busy hours, resulting in her taking such break past the five hour deadline. In the Wally's phone app, where managers could contact employees, Ms. Victor was often told her meal period would be changed to reflect an earlier time for her break to help Wally's avoid any penalties with their HR department, not understanding such request at the time, and in fear of more retaliation and losing her job, Ms. Victor told them every time that such change was fine by her.

221. CA Labor Code Section 246.5, subdivision (b), states, "*an employer shall not require a condition of using paid sick days that the employee search for or find a replacement worker to cover the days during which the employee uses paid sick days.*" Ms. Victor herself, picked up multiple shifts that were the shifts of other hostesses who asked Ms. Victor to work

for them in replacement of themselves in order to use a sick day. The Defendants would not allow their employees to call out without being penalized for such actions unless they could find someone else to cover their shift, in violation of this Section and also against subdivision (c)(1) which states, "*an employer shall not deny an employee the right to use accrued sick days, discharge, threatens to discharge, demote, suspend, or in any manner discriminate against an employee for using accrued sick days, attempting to exercise the right to use accrued sick days, filing a complaint with the department or alleging a violation of this article, or opposing any policy or practice or act this is prohibited by this article.*" Not only did Ms. Victor witness her co-workers being forced to go against this Section, but for years now, Ms. Victor herself has been retaliated against by the Defendants for her repeated attempts to report violations of this Section made by the Defendants. Paragraph (2) of this section further states, "*there shall be a rebuttable presumption of unlawful retaliation if an employer denies an employee the right to use accrued sick days, discharges, threatens to discharge, demotes, suspends, or in any manner discriminates against an employee…*"

222. During Ms. Victor's employment with the Defendants, artist POST MALONE (hereinafter "Mr. Malone") attended the restaurant and had a dinner party in the private dinning area. When his dinner concluded, he left a tip of $60,000 which was advised to be split evenly amongst all employees of the restaurant whom were working that evening, which included Ms. Victor who had been working the host stand. Everyone who had been working that night received their portion of the tip that was given by Mr. Malone, except Ms. Victor, who to this

day, has never received her portion of the tip owed her from that evening, which was obligated to be given within the next regular payday.

223. Ms. Victor, many times, worked, and is owed, compensation for overtime pay, which has still yet to be paid by the Defendants.

234. Almost every single work shift that Ms. Victor had worked at Wally's, she was harassed by management or other employee's about her personal social media accounts or her podcast entitled "Swallow It." In fact, multiple times, management, or Wally's principal, Mr. Navarro, would approach Ms. Victor, pulling up an image of her from her personal social media page(s) to harass Ms. Victor. Mr. Navarro, amongst others, also, would make comments about "stalking" Ms. Victor's social media, while liking all of, what the Defense Counsel referred to as, "Ms. Victor's "half dressed" photos" or "adult content". Mr. Navarro had left comments on Ms. Victor's social media content such as the fire flame emoji or drool face emoji that have an underlying sexual tone.

235. Ms. Victor's social media was a topic of conversation amongst all employees of Wally's and was one of the main reasons management, especially Ms. Baker and Ms. Jones, targeted and retaliated against Ms. Victor in hopes that she would quit her job and they could avoid a wrongful termination lawsuit. Comments made by management and other employees were always in front of other staff and other management and despite Ms. Victor making multiple complaints about her social media becoming an everyday topic at work, nothing was ever done to stop the harassment.

236. Ms. Victor never received a written notice when the Wally's Handbook was changed and amended. Ms. Victor was never given a written notice with Wally's "doing business as" business names, in fact, Ms. Victor did not even know that Wally's went by the legal entity name of *Southwest Wine & Spirits, LLC*; nor did Ms. Victor know that *Southwest Wine & Spirits, LLC* **was a limited liability company doing business under Delaware law**, until she began representing herself and doing her own research. In fact, Ms Victor's prior legal counsel filed her complaint in the Los Angeles Superior Court naming *Southwest Wine & Spirits, LLC, a California limited liability company*, as a defendant, which is false and incorrect information. Technically, right now, Ms. Victor's lawsuit is suing no one. And upon doing her own research Ms. Victor discovered that *Southwest Wine & Spirits, LLC, a Delaware Limited Liability Company* also does business as *Mel-Jen* and *Wally's Auction House, LLC*. Southwest Wine & Spirits, LLC, the location in California, is a foreign branch of the Delaware limited liability company, licensed to do intrastate business in California. All this information was information Ms. Victor discovered only after being forced to represent herself in her own litigation. This was **not** information given to her as an employee from her employer. Wally's is actually a trademark name for Southwest Wine & Spirits, LLC, not a real business name.

237. At the end of April 2021, Ms. Victor moved into Zen Hollywood Apartments (hereinafter "Zen Hollywood") located at 1825 North Las Palmas Avenue, Los Angeles, CA 90028. Ms. Victor signed her lease with CONCORD REAL ESTATE SERVICES, INC. (hereinafter "CONCORD"), 1840 HIGHLAND PARTNERS LLC (hereinafter "1840 Highland"), and JEFF GREENE (hereinafter "Mr. Greene"). At the time Ms. Victor was

unaware of Mr. Marciano and Maurice's affiliation with CONCORD or that she would be sleeping under the roof of the people she was currently suing in the Los Angeles Superior Court. During Ms. Victor's time as a tenant of Zen Hollywood, she was not free from violence, nor threat of violence. JASON FENESCEY (hereinafter "Mr. Fenescey"), the property manager of Zen Hollywood, had attempted to threaten Ms. Victor on three different occasions to have her locked up in a mental facility, attempts which failed for the Defendants. Upon fleeing the property for her safety and back to Massachusetts with her family, Ms. Victor's property was taken and has been held hostage in retaliation by the Defendants and their political affiliations to one another. These actions were another attempt to cause irreparable harm to Ms. Victor and/or to discard of any evidence that could have been in her belongings. Ms. Victor should have been protected from this intimidation and violence despite her position in the labor dispute, however, this labor dispute is the reason why Ms. Victor's civil rights have been ignored and her life was almost taken.

238. As stated above Ms. Victor was denied the right to amend her complaint and therefore denied the opportunity to tell the court of each and every time the Defendants allowed themselves or their customers to make physical invasions and physical intrusions of sexual nature while Ms. Victor was working as a hostess. Ms. Victor was denied the right to tell the court or a jury of her peers about each time she had to tell a customer of Wally's to not touch her bottom or her breasts after the customer was encouraged to do so by management.

239. Throughout this litigation multiple emails and documents have been presented that were made on the basis of fraud. For example, the two fabricated and fraudulent pay stubs

created by the Defendants to argue that Ms. Victor received her last pay check and missing wages, when she indeed never received what she is owed. Multiple decisions made by the Defendants and their counsel were made fraudulently that would intentionally lead to Ms. Victor's complete duress. The stipulation to bind this case to arbitration was not only a mistake but was fraud, amongst many other legal documents, making the Defendants in violation of CA Civil Code §1567.

240. Through the hacking of Ms. Victor's technology devices and through their unlawful surveillance and stalking of Ms. Victor, Ms. Victor has feared for her own safety and the safety of her immediate family.

241. While living on the property of Zen Hollywood, the Defendants had captured, through devices, images, sounds, recordings, physical impressions, or all of the above of Ms. Victor. The Defendants captured such images, sounds, recordings, physical impressions, or all of the above to stalk and stop all of Ms. Victor's efforts to have a fair and unbiased litigation, and to ensure that Ms. Victor was silenced during her self- representation.

242. Upon living in Zen Hollywood, Ms. Victor's French bulldog, Caesar (hereinafter "Caesar") got deathly sick, just like Ms. Victor. Ms Victor took Caesar to Dr. Jeff Werber, who took blood work and stated that his liver enzymes were through the roof which was a result of toxin poisoning. Ms. Victor confronted Mr. Fenescey, the property manager, of this diagnosis where he responded that "he was not a vet or anything but he would need to do more research to see if carbon monoxide poisoning would cause a dogs liver enzymes to rise", something condescending and along those lines. Again, Mr. Fenescey, Mr. Greene, CONCORD, did

nothing to help Ms. Victor or Caesar remain healthy or safe on their property contributing to her unlawful, false imprisonment and attempted murder. Ms. Victor has been unable to take Caesar to the vet as she has no money financially due to this terrible litigation.

243. The night before the Defendants attempted to get Ms. Victor locked up in a mental facility, two fire fighters came to her unit to observe her unit. Ms. Victor had burns all over her body. One of the fire fighters stated "The burns are bad but not that bad." Ms. Victor asked them how she was possibly being burned in her unit which they refused to answer.

244. Ms. Victor attempted to go to the Los Angeles Police Department on multiple occasions. When her computers and phones got hacked by the Defendants, the Los Angeles police department not only refused to file a report but referred to Ms. Victor as the Defendants based on their on racial profiling and discrimination.

245. Upon moving into the Zen Hollywood property, Ms. Victor was required to get a renters insurance policy from Lemonade Insurance. Between September and October of 2021, Ms. Victor had called Lemonade Insurance over ten times asking to be put into hotel as the living conditions on the property of Zen Hollywood were unlivable. Ms. Victor's request were denied each and every time by Lemonade Insurance with the reasoning being that Ms. Victor did not have that coverage on her insurance policy, which is false information as Ms. Victor had eighteen thousand ($18,000) in loss of use coverage and should have been able to use such coverage to rent a hotel room and get to immediate safety from the Defendants.

246. After submitting a fee waiver form to the Los Angeles Superior Court and to Judge Yolanda Orozco, Ms. Victor's Wells Fargo bank account was drained of all its finances. To this

day, Wells Fargo has not offered an explanation or documentation to support their actions or to provide an answer to where Ms. Victor's money has gone. Ms. Victor's accounts are now closed and restricted and Ms. Victor herself cannot look or review her own bank statements. Ms. Victor is informed and believes that such unlawful conduct by Wells Fargo was an unlawful act committed to aid, abet, incite, compel, coerce, or conspire with the Defendants.

247. Upon the movers arriving to Zen Hollywood to move out Ms. Victor, the Defendants had stolen Ms. Victor's keys. Ms. Victor's uncle went to the front desk to get her spare keys to get back into her unit where Mr. Fenescey said "We want what's best for Danielle", admitting that they did indeed attempt to get Ms. Victor illegally obtained and taken to a mental facility in complete violation of California WIC laws.

248. Mr. Fenescey and his assistant gave the movers a hard time coming upstairs. Then weeks after Ms. Victor's move out had the audacity to email Ms. Victor as if she vacated the property and her belongings, refused to give her her security deposit back, and then stopped responding to any and all emails.

249. Ms. Victor had the movers she hired move her out of Zen Hollywood on October 23, 2021. The movers then disappeared for months before the Bureau of Household Goods and Services hunted down Ms. Victor's belongings that have been held hostage in storage units in Victorville and Hesperia. If Ms. Victor's technology wasn't hacked, if she hadn't had to flee Los Angeles for her safety against the Defendants, each of them, Ms. Victor's belongings would not be held hostage. Ms. Victor finds the unlawful conduct and retaliation of the Defendants a direct result of her belongings, everything she has ever owned, being taken.

250. During the continuous of this litigation, Ms. Victor has continued to be denied her guaranteed rights, and will continue to be denied her guaranteed rights until State and Federal agencies step in and end the Defendants disgusting and despicable behavior, and when this case is transferred to the proper court with proper jurisdiction and out of the hands of those aligned and aiding the Defendants.

**VERIFICATION**

I am the Plaintiff in this action. I haver eat the foregoing FIRST AMENDED VERIFIED GENERAL AND FACTUAL ALLEGATIONS and know its contents.

The matters stated in the foregoing FIRST AMENDED VERIFIED GENERAL AND FACTUAL ALLEGATIONS are true of my own knowledge except as to those matters I believe them to be true.

Executed on May 10, 2022, at Methuen, Massachusetts.

I declare under penalty of perjury under the laws of the State of CA that the foregoing is true and correct.

DKV

Danielle K. Victor
Plaintiff in Pro Se

# EXHIBIT 2

Danielle Victor
4 Loring Road
Methuen, MA 01844
978-857-4885
daniellevictorlegal@yahoo.com

Self-Represented

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | | |
|---|---|---|
| DANIELLE VICTOR,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST WINE & SPIRITS, LLC, ET AL,<br><br>Defendant | ) ) ) ) ) ) ) ) ) ) ) | *Los Angeles Superior Court Case #: 20STCV34566*<br><br>*JAMs Arbitration Reference #: 1220071214*<br><br>**FIRST AMENDED VERIFIED LEGAL CLAIMS AND COMPLAINT FOR DAMAGES**<br><br>*Judge Linda L. Miller*<br>*Judge Yolanda Orozco* |

**TO DEFENDANT(S) AND THEIR ATTORNEY'S OF RECORD AS WELL AS THE COURT:**

Danielle Victor (hereinafter "Ms. Victor" or "Plaintiff"), makes the following legal claims and complaint against all named Defendants for damages. This in addition to Ms. Victor 102 page FIRST AMENDED VERIFIED GENERAL AND FACTUAL ALLEGATIONS about the Defendants. Ms. Victor makes such legal claims under penalty of perjury pursuant with the laws of the State of California and the laws of the United States of America. The claims made against the Defendants, and the relief which is sought, in the above-captioned matter are as follows:

**STATUE OF LIMITATIONS**

1. CA Government Code section 19635 allows all of Ms. Victor's claims in this action to be valid, "*adverse action based on fraud, embezzlement, or the falsification of records shall be valid, if notice of the adverse action is served within three years after the discovery of the fraud, embezzlement, or falsification.*" Only after Ms. Victor was forced to represent herself in the Summer of 2021 did she discover that her entire litigation against the Defendants was based on fraud, including falsified records and documents, which was done to help the Defendants not lose their money or  their "reputation", after a jury trial where Ms. Victor would have most definitely won on the merits. Had Ms. Victor's prior legal counsel, Mosley & Associates filed her complaint in July of 2019 like they were suppose to, but intentionally did not, due to fraud, then there would be no argument on statue of limitations by the Defense. Ms. Victor realized the fraud, embezzlement, and falsifications and is amended her complaint and allegations in the valid three year window of time.

**CONTINUING VIOLATIONS DOCTRINE**

2. Any, and all conduct by the Defendants, each of them, constitutes or is part of acts of illegal harassment, discrimination, and/or retaliation, and which predates any applicable statutory period, occurred in such a way as to be subject to the continuing violation doctrine. All Defendants are liable for the entire course of conduct of each Defendant, including those acts that predate any applicable statutory period (if there were any). The conduct occurred within a year of the date that Ms. Victor's prior legal counsel filed a complaint with the DFEH and was

similar or related to the conduct that occurred earlier; the conduct was reasonably frequent; and the conduct had not yet become permanent.

## LEGAL CLAIMS

## FIRST CAUSE OF ACTION
## FAILURE TO PAY ALL WAGES DUE AT THE TIME OF SEPARATION FROM EMPLOYMENT
## (IN VIOLATION OF CA LAB CODE §201 & §203)
## *AGAINST ALL DEFENDANTS*

3. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

4. CA Labor Code §201, violated by the Defendants, promises every employee that an employer is obligated, at the time of discharge, to pay the employee all wages, earned and unpaid, immediately. An employer is also obligated to pay an employee, **immediately**, upon separation of employment, all compensation due, wages the employee is entitled too.

5. The Defendants did not pay Ms. Victor at the time of her "suspension pending investigation" all compensation due immediately, nor was Ms. Victor ever paid such wages. Nor was Ms. Victor paid, immediately, or ever, accumulated vacation time which she was entitled to.

6. Ms. Baker called Ms. Victor on June 14, 2019, explained that she was suspended effective immediately pending an investigation and told Ms. Victor multiple times that she was **NOT** allowed to come to Wally's but rather Ms. Victor would be contacted when an investigation was completed. Ms. Victor was not contacted ever again by the Defendants nor was she given all compensation owed to her immediately, or ever, which is in violation of CA Labor Code section 201.

7. CA Labor Code §203 states:

> *"If an employer willfully fails to pay without abatement or reduction, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced; but wages shall not continue for more than 30 days."*

8. The Defendants willfully and intentionally failed to pay all wages owed to Ms. Victor. The Labor Commissioner, through Deputy Ray, in her full capacity, and Deputy Delacruz, in his full capacity, allowed such actions to willfully take place and the non payment of all wages owed to Ms. Victor has now gone unpaid for over three years.

9. By failing to compensate Ms. Victor and by failing to pay Ms. Victor her earned vacation wages immediately upon discharge, the Defendants have willfully failed to make timely payment of full wages due to their employee who was separated from employment in violation of CA Labor Code section 201.

10. As a consequence of the Defendants willful failure to timely pay all wages due, Ms. Victor is entitled to up to a maximum of thirty (30) days' wages pursuant to CA Labor Code §203. Ms. Victor is also entitled to all available statutory penalties, together with interest thereon, as well as other available remedies.

11. As a direct result of the Defendants unlawful actions and omissions, Ms. Victor has been deprived of compensation in an amount according to proof at the time of trial, and is entitled to the recovery of such amounts, plus interest thereon.

12. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of

causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

13. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

14. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

15. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

16. WHEREFORE, Ms. Victor requests judgement as is further set below.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY WAGES IN A TIMELY MANNER**
**(VIOLATION OF CA LABOR CODE §201, §204, §210, §246, §2926)**
**(VIOLATION OF CA GOVERNMENT CODE §19839 §19840)**
***AGAINST ALL DEFENDANTS***

17. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

18. As stated above, CA Labor Code section 201 requires an employer who discharges an employee to pay all compensation due and owing to the employee immediately upon the employee's discharge from employment.

19. CA Labor Code section 204 promises employees that all wages earned for labor in excess of the normal work period must be paid to the employee, no later than the payday for the next regular payroll period. Employers also need to state on the paystub with such corrections, the inclusive dates of the pay period for which the employer is correcting its initial report of hours worked. Such corrections must not be paid more than seven calendar days following the close of the payroll period.

20. Every single pay check that Ms. Victor received from the Defendants was short hours, therefore short the correct amount of compensation owed to Ms. Victor. Management would ask all employees, not just Ms. Victor, if they could add any missing hours to the next paycheck to help the company avoid penalties. Ms. Victor was never paid by the Defendants for any missing hours and wages, in violation of section 204 of the CA Labor Code.

21. CA Labor Code Section 246, subdivision (a), paragraph (1) states:

> "*An employee who, on or after July 1, 2015, works in California for the same employer for 30 or more days within a year from the commencement of employment is entitled to paid sick days as specified in this section.*"

22. CA Labor Code Section 246, subdivision (b), paragraph (1) states:

> "*An employee shall accrue paid sick days at the rate of not less than one hour every 30 hours worked, beginning at the commencement of employment.*"

23. CA Labor Code Section 246, subdivision (c) states:

> "*An employee shall be entitled to use accrued paid sick days beginning on the 90th day of employment, after which day the employee may use paid sick days as they are accrued.*"

24. Ms. Victor began working for the Defendants on February 15, 2019, making ninety days after the commencement of her employment May 15, 2019, in which she should have been able to use her accrued sick days. Ms. Victor never used a single sick day during her employment with the Defendants and is owed compensation for her accrued sick days.

25. CA Labor Code section 2926 states:

> "*An employee who is not employed for a specific term and who is dismissed by his employer is entitled to compensation for services rendered up to the time of such dismissal.*"

26. CA Government Code section 19839 states:

> "*Upon separation from service without fault of his or her part, a person is entitled to a lump-sum payment as of the time of separation from any unused or accumulated vacation or annual leave or for any time off to which he or she is entitled.*"

27. CA Government Code section 19840, subdivision (a), states:

> *"Any time off to which an employee is entitled by reason of overtime worked prior to June 9, 1948, may be compensated by a lump sum payment in a manner provided in section 19839 at any time prior to the separation of the employee from service or upon such separation. Payment shall be at the rate established for the position as of the date of payment or the date of separation as the case may be.*"

28. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants intentionally, maliciously, and willfully failed to timely pay all compensation and accrued wages owed to Ms. Victor upon her discharge.

29. By failing to compensate Ms. Victor, as required by law, the Defendants have willfully failed to make timely payment of full wages due to its employees who have been discharged.

30. Pursuant to CA Labor Code section 210, the failure to pay wages to employees, as required by law, subjects the employer or person that failed to pay such wages to a civil penalty of one hundred dollars ($100) for each failure to pay each employee for any initial non-willful and non-intentional violation, and a civil penalty for any subsequent violation or any willful or intentional violation of two hundred dollars ($200) for each failure to pay each employee, plus twenty-five percent (25%) of the amount unlawfully withheld from each employee.

31. The Defendants failure to pay the required minimum wages, including but not limited too, rest period premium pay, and overtime wages to Ms. Victor on the pay days for which such wages were due, violated the requirements of this statue, and these violations were willful and intentional, thereby subjecting the Defendants to civil penalties pursuant to section 210 of the CA Labor Code from June 14, 2019 going forward, in the amount of two hundred dollars ($200) for each failure to pay Ms. Victor said wages on the required pay day, plus twenty-five percent (25%) of the amount unlawfully withheld from Ms. Victor.

32. Further, the Defendants violated, and continue to violate CA Labor Code section 2926 by failing to compensate Ms. Victor for services rendered up to the time of dismissal or quitting.

33. In addition, Ms. Victor was not paid all wages owed upon termination of employment. Although CA Labor Code sections 202 and 2927 require an employer to pay an employee within 72 hours all compensation for services rendered up to the time of quitting, Ms. Victor has still not been provided with all or any of her final pay for all wages due and owed, including premium and overtime pay, in an amount according to proof.

34. As a result of the Defendants unlawful actions and omissions, as alleged herein, Ms. Victor has sustained economic damages, including, but not limited to, unpaid wages and lost interest in an amount to be determined at trial.

35. As a result of the Defendants unlawful actions and omissions, as alleged herein, Ms. Victor is entitled to all available statutory penalties, together with interest thereon, as well as other available remedies.

36. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

37. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

38. Lastly, Ms. Victor is entitled to any further equitable relief this Court may deem just and proper.

39. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRD CAUSE OF ACTION**
**FAILURE TO PAY WAGES AT PLACE OF DISCHARGE**
**(VIOLATION OF CA LABOR CODE §208)**
***AGAINST ALL DEFENDANTS***

40. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

41. CA Labor Code section 208 states:

> "*Every employee who is discharged shall be paid at the place of discharge. All payments shall be made in the manner provided by law*."

42. Ms. Victor was not paid at Wally's, by Wally's, or ever. In fact, Ms. Baker told Ms. Victor that she was **not** allowed at Wally's and that they would be in touch with her after an investigation was concluded following her "immediate" suspension. Ms. Victor was not contacted after this pretend investigation. Ms. Victor was never officially terminated nor was she ever paid her owed wages, at Wally's or by Wally's, in violation of section 208 of the CA Labor Code.

43. The Defendants did not make payments to Ms. Victor in the manner provided by law, intentionally and maliciously, in violation of the CA Labor Code mentioned above.

44. The Defendants did not pay Ms. Victor the compensation she was owed, including accrued wages, at Wally's, which would have been the place of discharge, in violation of section 208 of the CA Labor Code.

45. As a result of the Defendants unlawful actions and omissions, as alleged herein, Ms. Victor is entitled to all available statutory penalties, together with interest thereon, as well as other available remedies.

46. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

47. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

48. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

49. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

50. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FOURTH CAUSE OF ACTION**
**FAILURE TO FURNISH WAGE AND HOUR STATEMENTS**
**(VIOLATION OF CA LABOR CODE §226, §226.3, §226.6, §247.5, §558.1 §1198.5, §1174.5, §1175)**
***AGAINST ALL DEFENDANTS***

51. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

52. CA Labor Code section 226, subdivision (a), states:

> "*An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, "copy" includes a duplicate of the itemized statement provided to an employee or a computer generated record that accurately shows all of the information required by this subdivision.*"

53. CA Labor Code section 226, subdivision (b), states that employees, both current or former, are allowed to inspect and receive a copy of their records from an Employer upon a reasonable request.

54. CA Labor Code section 226, subdivision (c), states that an employer, after receiving a written or oral request from a former employee, must comply with such request no later than twenty-one (21) days after the request was made, and a violation of this subdivision is an infraction.

55. CA Labor Code section 226, subdivision (e), paragraph (1) states:

> "*An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.*"

56. CA Labor Code section 226, subdivision (e), paragraph (2) states:

***(A)*** *"An employee is deemed too suffer injury for purposes of this subdivision if the employer fails to provide a wage statement."*
***(B)*** *An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:*
***(i)*** *The amount of the gross wages or net wages paid to the employee during the pay period or any of the information required to be provided on the itemized wage statement…"*
***(ii)*** *Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period.*
***(iii)*** *The name and address of the employer.*

***(iv)*** *The name of the employee and only the last four digits of his social security number or an employee identification number other than a social security number."*

57. CA Labor Code Section 247.5, subdivision (a), requires that an employer keep, for at least three years, all records that documented the hours an employee worked and paid sick days that the employee had accrued or had been used by an employee, which should be made available to the employee. If an employer does not maintain adequate records, pursuant to this section, then the employee is entitled to the maximum number of hours accruable under this article.

58. The Defendants did not keep, nor provide, at any time, accurate, or detailed records of and to Ms. Victor, Ms. Victor thereby is entitled to the maximum number of hours accruable under this article.

59. The Defendants knowingly and maliciously failed to provide Ms. Victor with timely and accurate wage and hour statements showing the inclusive dates of the pay period, gross wages earned, total hours worked, all deductions made, net wages earned, the name and address of the legal entity employing her, all applicable hourly rates in effect during each pay period, and the corresponding numbers of hours worked at each hourly rate. Ms. Victor, in fact, never received accurate wage statements at all.

60. The Defendants did not keep accurate copies or records to give Ms. Victor, and since three years has not yet surpassed, they should still have accurate duplicate copies to provide Ms. Victor or the court, but do not, in violation of this statue.

61. Ms. Victor filed her labor complaint on August 9, 2019, and she did not receive a copy of her employment file until June 8, 2020. The employee file that was given to Ms. Victor's previous legal counsel, and then to Ms. Victor, was incomplete, inaccurate, and sent months after the obligated twenty-one days in violation of this statue.

62. The Defendants systematically failed to accurately itemize the total hours worked by Ms. Victor on a check issued for work performed in accordance with the requirements of CA Labor Code section 226.

63. The Defendants failed to provide an accurate employee file, provided inaccurate wage statements, and made not one, but two falsified and fraudulent printed documents about payments made to Ms. Victor to fraudulently support their denial of not paying Ms. Victor. The Defendants are in violation of this statue and Ms. Victor has suffered unimaginably.

64. CA Labor Code section 226, subdivision (f) states:

> "*A failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth, entitles the current or former employee to recover seven-hundred fifty dollars ($750) penalty from the employer.*"

65. Ms. Victor did not receive nor was she able to inspect a copy of her employment records from the Defendants in the time required by this statue. Ms. Victor is entitled seven-hundred and fifty dollars ($750) as a penalty from the Defendants for violating this subdivision.

66. CA Labor Code section 226.3 states:

> "*Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee for each violation in an initial citation and one thousand dollars ($1000) per employee for each violation in a subsequent citation, for which the employer fails to provide the*

> *employee a wage deduction statement or fails to keep records. The civil penalties provided in this section are in addition to any other penalty provided by law.*"

67. The Defendants are in violation of subdivision (a) of Section 226 of the California Labor Code making them liable to pay the correct civil penalties in compliance with this subdivision, in addition to all other penalties provided by the law.

68. As set forth herein, Ms. Victor was entitled to one additional hour of premium wages at their regular rates of compensation for each day in which the Defendants failed to provide all required off-duty meal periods.

69. The Defendants failed to include premium wages for missed off-duty meal periods in the pay statements provided to Ms. Victor, in violation of CA Labor Code section 226, subdivision (a).

70. Because the Defendants failure to include premium wages in the itemized pay statements provided to Ms. Victor was malicious, intentional, and knowing, the Defendants owe Ms. Victor fifty dollars ($50) for the initial pay period in which there was a violation of CA Labor Code section 226, subdivision (a), and one hundred dollars ($100) for each subsequent pay period in which there was a violation, pursuant to CA Labor Code section 226, subdivision (e).

71. CA Labor Code section 226.6 states:

> "*Any employer who knowingly and intentionally violates the provisions of Section 226, or any officer, agent, employee, fiduciary, or other person who has the control, receipt, custody, or disposal of, or pays, the wages due any employee, and who knowingly and intentionally participates or aids in the violation of any provision of Section 226 is guilty of a misdemeanor and, upon conviction thereof,*

*shall be fined not more than ($1000), or imprisoned not to exceed one year, or both, at the discretion of the court. That fine or imprisonment, or both, shall be in addition to any other penalty provided by law.*"

72. The Defendants knowingly and intentionally violated Section 226 of the CA Labor Code on multiple different occasions. The Defendants are liable to all penalties and fines in compliance with this statue.

73. CA Labor Code section 1198.5 focuses on current and former employees of an employer and their right to their personal records, including any grievances concerning the employee, and the process and time in which the process may take place to receive such records. Subdivision (k), of this section, allows Ms. Victor to recover seven hundred and fifty dollars ($750) from the employer for violating this statue. And subdivision (l) allows a current or former employer to bring an action for injunctive relief to make sure the Employer who has violated this section complies with this section, in addition to reasonable attorney's fees and costs, interest thereon, and costs of suit. Ms. Victor is entitled to such injunctive relief, attorney's fees and costs, interest thereon, and additional costs of suit, including the fine of seven hundred and fifty dollars ($750).

74. CA Labor Code section 1174, also obligates Employers in this state to keep a record, for a minimum of three years, that shows the employee's name and address, payroll records with wages and hours worked, etc. No employer shall prohibit an employee requesting such records, access to such records, and accurate records. The Defendants, each of them, for three years, not only kept inaccurate records that did not show the correct wages and hours worked but they intentionally and maliciously refused to allow Ms. Victor access to such records upon her

request to receive such records. The records given to Ms. Victor, that were given to her in an untimely manner, were and are completely inaccurate. The Defendants are in violation of this statue.

75. CA Labor Code section 1174.1, subdivision (a), states that any employer, person, or entity who may be held liable for a violation of ANY provision of this code shall be prevented from introducing into evidence any books, documents, or records. The Defendants, each of them, can be held liable for multiple violations of the provisions of this code and may the court declare that the Defendants are prohibited from introducing any evidence, books, documents, or records that can add further fraud on the court.

76. Furthermore, CA Labor Code, section 1174.5, states:

> "*Any person employing labor who willfully fails to maintain the records or accurate and complete records, shall be subject to a civil penalty of $500.*"

77. The Defendants are thereby liable for paying Ms. Victor a civil penalty of five hundred dollars ($500) for failure to maintain her records or accurate and complete records.

78. CA Labor Code section 1175, which holds "*any person, or officer, or agent thereof*" who refused to supply proper and accurate records or failed to keep such accurate records, guilty of a misdemeanor. The Defendants refused to supply Ms. Victor proper and accurate records and failed to keep such accurate records, thereby the Defendants are guilty of yet another misdemeanor.

79. CA Labor Code section 558.1, subdivision (a) states:

> "*Any employer or other person acting on behalf of an employer, who violates or causes to be violated, any provision regulating minimum*

> *wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order, sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.*"

80. The Defendants, each of them, can be held liable for violating CA Labor code 226. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors authorized, condoned, and/or ratified the unlawful conduct described above herein. Thereby, such officers, agents, affiliates, partners, etc, may be held liable as the employer for the Defendants violations of CA Labor Code 226.

81**.** Ms. Victor has suffered injuries from the Defendants unlawful actions, as stated above, each paycheck Ms. Victor received was missing hours and had unpaid wages and thus Ms. Victor was unable to determine whether she was paid properly and/ or did not receive pay for all hours current and past worked, and thus suffered monetary damages due to the Defendants actions described herein.

82. Based on the Defendants unlawful conduct alleged herein, Ms. Victor is entitled to statutory damages, in addition to interest, and the expenses and costs of suit.

83. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

84. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame,

humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

85. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

86. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

87. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FIFTH CAUSE OF ACTION**
**FAILURE TO PROVIDE MEAL AND REST PERIODS**
**(VIOLATION OF CA LABOR CODE §226.7, §512, §558.1)**
***AGAINST ALL DEFENDANTS***

88. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

89. At all relevant times mentioned here, the Defendants were aware of and were under the duty to comply with CA Labor code section 226.7.

90. CA Labor Code section 226.7, subdivision (b), states:

> "*An employer shall not require an employee to work during a meal or rest or recovery period.*"

91. CA Labor Code section 226.7, subdivision (c) states:

> "*If an employer fails to provide an employee a meal or rest period in accordance with a State law, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.*"

92. CA Labor Code section 226.7, subdivision (d) states:

> "*A rest or recovery period is mandated pursuant to a State Law, shall be counted as hours worked, for which there shall be no deduction from wages.*"

93. CA Labor Code section 512, subdivision (a), states:

> "*An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of no less than 30 minutes, except if the total work period per day of the employee is no more than 6 hours, the meal period may be waived by mutual consent of both the employer and employee.*"

94. On over a dozen occasions, Ms. Victor, especially when working the closing hostess shift, took her meal breaks after peak busy hours, resulting in her taking such break past the five hour deadline. In the Wally's phone app, where managers could contact employees, Ms. Victor was often told her meal period would be changed to reflect an earlier time for her break to help Wally's avoid any penalties with their HR department. In fear of further retaliation and an even more hostile work environment Ms. Victor allowed the individual Defendants, and supervisors, to change her timesheet.

95. During Ms. Victor's employment the Defendants routinely required Ms. Victor to work at least three and one-half hours without a rest period of at least ten minutes and failed to compensate Ms. Victor for said missed rest periods, as required by CA Labor Code section 226.7.

96. The Defendants routinely required Ms. Victor to work more than six hours without without a second rest period of at least ten minutes and failed to compensate Ms. Victor for said missed rest periods, as required by CA Labor Code section 226.7.

97. The Defendants routinely required Ms. Victor to work more than five hours without a meal period of at least thirty minutes and failed to compensate Ms. Victor for said missed meal periods, as required by CA Labor Code section 226.7.

98. By requiring Ms. Victor to attend business and failing to consistently provide meal breaks within the first five hours of a work shift, provide uninterrupted thirty minute meal periods, and/or authorize and permit ten minute rest periods to Ms. Victor, the Defendants violated CA Labor Code section 226.7.

99. Ms. Victor did not willfully waive, through mutual consent with the Defendants, any such meal and rest periods.

100. The Defendants did not pay premium payments to Ms. Victor for missed meal periods. The Defendants did not pay premium payments to Ms. Victor for missed rest periods.

101. CA Labor Code section 226.7, subdivision (c), requires that an employer who fails to provide a meal period must pay that employee an additional hour of premium pay for each workday that the meal period is not provided.

102. The Defendants did not maintain a policy of providing an off-duty meal period for Ms. Victor who worked between five and six hours per day or of paying premium pay for missed meal periods.

103. As set forth above, Ms. Victor regularly worked between five and six hours per day without being provide a meal period or recovery rest periods.

104. Because the Defendants failed to provide Ms. Victor with off-duty meal periods, which is required under CA Labor Code section 512, subdivision (a), the Defendants are required to pay premium wages to Ms. Victor, pursuant to CA Labor Code section 226.7, subdivision (c).

105. As a result, Ms. Victor is entitled to one additional hour of premium wages at her regular rate of compensation for each day that the Defendants failed to provide all required off-duty meal periods. The Defendants did not provide these premium wages to Ms. Victor.

106. CA Labor Code section 558.1, subdivision (a) states:

> "*Any employer or other person acting on behalf of an employer, who violates or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order, sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.*"

107. The Defendants, each of them, can be held liable for violating CA Labor code 226.7. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors authorized, condoned, and/or ratified the unlawful conduct described above herein.

Thereby, such officers, agents, affiliates, partners, etc, may be held liable as the employer for the Defendants violations of CA Labor Code 226.7.

108. Ms. Victor has been deprived of her rightfully earned compensation for rest periods as a direct result of the Defendants failure and refusal to pay said compensation. Ms. Victor is entitled to recover such amounts pursuant to CA Labor Code section 226.7, plus interest thereon, attorney’s fees, and costs of suit.

109. Ms. Victor has been deprived of her rightfully earned compensation for meal periods as a direct result of the Defendants failure and refusal to pay said compensation. Ms. Victor is entitled to recover such amounts pursuant to CA Labor Code section 226.7, plus interest thereon, attorney’s fees, and costs of suit.

110. As a direct result of the Defendants unlawful actions and omissions, as set forth herein, Ms. Victor has sustained damages, including lost compensation, resulting from missed meal and/or rest periods, in an amount to be determined at trial.

111. As a further direct result of the Defendants unlawful actions and omissions, as set forth herein, Ms. Victor is entitled to recover “waiting time” and other penalties, in an amount to be determined at trial, as well as attorney’s fees and costs, restitution, pursuant to these statues.

112. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor’s damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

113. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

114. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

115. WHEREFORE, Ms. Victor requests judgement as is further set below.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PAY GRATUITIES & UNLAWFUL TAKING OF GRATUITIES**
**(VIOLATION OF CA LABOR CODE §351, §354, §356)**
***AGAINST ALL DEFENDANTS***

116. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

117. CA Labor Code Section 351, focuses on gratuity in an Employer and employee relationship. It states that:

> "*Payment of gratuities made by patrons using credit cards shall be made to the employees no later than the next regular*

> *payday following the date the patron authorized the credit card payment.*"

118. Section 354 of the CA Labor Code states:

> "*Any employer who violates any provision of this article is guilty of a misdemeanor, punishable by a fine exceeding ($1000) or imprisonment of 60 days, or both.*"

119. The Defendants maliciously and intentionally failed to pay Ms. Victor gratuity owed to her from Mr. Malone's visit to Wally's. In fact, Ms. Victor was the only employee who did not receive her gratuity from his tip. Ms. Victor did not receive the tip because the Defendants discriminated against Ms. Victor because of her protected characteristics as well as further retaliation against Ms. Victor to create a hostile work environment for her.

120. CA Labor Code Section 356, states:

> "*The Legislature expressly declares that the purpose of this article is to prevent fraud upon the public in connection with the practice of tipping and declares that this article is passed for a public reason and cannot be contravened by a private agreement. As part of the social public policy of this State, this article is binding upon all departments of the State.*"

121. The Court must find and declare that section 356 is enforced as the Defendants have attempted to use a private arbitration to fraud the public and Ms. Victor from the gratuity she had earned and was denied based solely on the Defendants hate of her protected characteristics. Such statue must be enforced to prevent any further fraud.

122. By taking and keeping the above-described gratuities, the Defendants unlawfully took and kept customer gratuities from Ms. Victor, and thereby violated CA Labor Code section 351.

123. Ms. Victor has been deprived of her rightfully earned gratuity as a direct result of the Defendants failure and refusal to pay said gratuity. Ms. Victor is entitled to recover such amounts pursuant, plus interest thereon, attorney's fees, and costs of suit.

124. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

125. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

126. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

127. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

128. WHEREFORE, Ms. Victor requests judgement as is further set below.

**SEVENTH CAUSE OF ACTION**
**FAILUE TO PAY WAGES**
**(IN VIOLATION OF LABOR CODE §510, §558, §558.1)**
***AGAINST ALL DEFENDANTS***

129. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

130. At all times relevant, CA Labor Code section 510 applied to Ms. Victor's work with the Defendants.

131. CA Labor Code Section 510, subdivision (a), constitutes a work day as 8 hours of labor, and any work in excess of those 8 hours should be compensated. At the rate of no less than one and one-half times the regular rate of pay for an employee.

132. Section 553 of the CA Labor Code states that any person who violates this chapter is guilty of a misdemeanor. The Defendants, each of them, have violated this chapter and thereby are guilty of a misdemeanor.

133. In compliance with CA Labor Code, Section 1194, subdivision (a), Ms.Victor may recover her unpaid balance for all overtime compensation, including interest, and reasonable attorney's fees and costs.

134. Further, CA Labor Code section 1194.3, states:

> "*An employee may recover attorney's fees and costs incurred to enforce a court judgement for unpaid wages due pursuant to this code.*"

135. Thereby Ms. Victor is entitled to recover the attorneys' fees and costs incurred to enforce the court to provide her the judgement of her unpaid wages for overtime compensation, pursuant to these statues.

136. In continuous to above, CA Labor Code section 1194.5 states:

> "*In any case in which a person employing an employee has willfully violated any of the laws, regulations, or orders governing the wages, hours of work, or working conditions of such employee, the division may seek, in a court of competent jurisdiction, and the court may grant, an injunction against any further violations of any such laws, regulations, or orders by such person.*"

137. The court must find and declare injunctive relief, including but not limited to, directing the Defendants, each of them, to take the proper steps to stop any further violations of any such laws and regulations. The Defendants must be prevented from any further violations to any future employees who are being mistreated by the Defendants repeated, intentional, and malicious violations of all laws, regulations, and orders governing Ms. Victor, and all other effected employees, past, present, and future, of their wages, hours worked, and their working conditions while employed for the Defendants.

128. Furthermore, CA Labor Code section 558, subdivision (a), states:

> "*Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industry Welfare Commission shall be subject to a civil penalty as follows: (1) for any initial violation. $50 for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, $100 for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3)*

> *Wages recovered pursuant to this section shall be paid to the affected employee.*"

129. Subdivision (d) of the CA Labor Code, section 558, also states:

> "*The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.*"

130. The Defendants are liable to pay Ms. Victor all civil penalties, pursuant to this statue.

131. CA Labor Code section 558.1, subdivision (a) states:

> "*Any employer or other person acting on behalf of an employer, who violates or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order, sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.*"

132. The Defendants, each of them, can be held liable for violating CA Labor code 1194. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors authorized, condoned, and/or ratified the unlawful conduct alleged herein. Thereby, such officers, agents, affiliates, partners, etc, may be held liable as the employer for the Defendants violations of CA Labor Code 1194.

133. Ms. Victor is informed and believes, and based thereon alleges, that during the relevant time period, the Defendants failed to pay Ms. Victor all wages for hours worked which included overtime wages.

134. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants manipulated employee time sheets and altered the number of hours an employee worked to the

Defendants advantage, including Ms. Victor. Ms. Victor, many times, worked, and is owed, compensation for overtime pay, which has still yet to be paid by the Defendants.

135. Ms. Victor is informed and believes, and based thereon alleges, that during the relevant time period, Ms. Victor was frequently required to work over eight hours per workday and/or forty (40) hours in a work week. The Defendants failed to compensate Ms. Victor at one and one-half times her regular rate of pay for all overtime hours worked.

136. As a direct result of the Defendants unlawful acts and omissions, as set forth herein, Ms. Victor has sustained and continues to sustain damages, including loss of earnings from overtime compensation due, in an amount to be established at trial, plus prejudgement interest pursuant to statue.

137. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

138. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

139. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms.

Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

140. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

141. WHEREFORE, Ms. Victor requests judgement as is further set below.

**EIGHTH CAUSE OF ACTION**
**WRONGFUL TERMINATION**
**(IN VIOLATION OF CA LABOR CODE §6310, §6312)**
***AGAINST ALL DEFENDANTS***

142. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

143. CA Labor Code Section 6310 subdivision (a) states:

> "*No person shall discharge or in any manner discriminate against any employee because the employee has made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety and health, their employer, or their representative.*"

144. The Defendants were prohibited by law to discriminate against Ms. Victor because she had made plans to make oral and/or written complaints to the CA Labor Commissioner's office about the Defendants unlawful actions and omissions but the Defendants did discriminate against Ms. Victor in violation of this statue.

145. The Defendants were prohibited by law to discriminate against Ms. Victor for making oral and/or written complaints to the CA Labor Commissioner's office about the Defendants unlawful actions and omissions but the Defendants have and continue to discriminate against Ms. Victor for Ms. Victor had and is seeking assistance from governmental agencies that have statutory responsibility to help with employee safety and health, including Ms. Victor's safety and health.

146. Further, CA Labor Code section 6312 states:

> "*Any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of section 6310 or 6311 may file a complaint with the Labor Commissioner…*"

147. Ms. Victor attempted to file a complaint with the CA Labor Commissioner's office in August of 2019, such complaint was not investigated by the Labor Commissioner's office and was closed by means of negligence or civil conspiracy by the Labor Commissioner's office through Deputy Commissioner Cathy Ray and/or Deputy Commissioner Francisco DeLaCruz.

148. Since June of 2021, when Ms. Victor began to self-represent herself in her own litigation, the Defendants, each of them, and DOES 1-100, inclusive, have further discriminated against Ms. Victor for making additional oral and/or written complaints about the Defendants unlawful actions and omissions to governmental agencies that are required to assist Ms. Victor.

149. The Defendants malicious and intentionally acts and omissions are prohibited by law and go against the public policy of the State of California.

150. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as alleged herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations alleged herein.

151. Ms. Victor is informed and believes and based thereon alleges that the Defendants including DOES 1-100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged herein.

152. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

153. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer, emotional distress in an amount to be determined at trial.

154. The Defendants, through their officers, managing agents, affiliates, partners, and/or their supervisors; authorized, condoned, and/or ratified the unlawful conduct alleged herein. By reason thereof, Ms. Victor is entitled to an award of punitive damages in an amount to be determined at trial, and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

155. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

156. WHEREFORE, Ms. Victor requests judgement as is further set below.

**NINTH CAUSE OF ACTION**

**UNLAWFUL RETALIATION BASED ON VIOLATIONS OF THE DEFENDANTS USE OF SOCIAL MEDIA**
***AGAINST ALL DEFENDANTS***

157. Ms. Victor re-alleges and incorporates by reference all previous paragraphs of her as though fully set forth herein.

158. CA Labor Code section 980 focuses on the employers use of social media. This section states that an employer cannot require or request any of the following of an employee; to access personal social media in front of, or in the presence of the employer or divulge any personal social media.

159. Subdivision (e) of the CA Labor Code section 980 states:

> "*An employer shall not discharge, discipline, threaten to discharge or discipline, or otherwise retaliate against employee or applicant for not complying with a request or demand by the employer that violates this section.*"

160. Almost every single work shift that Ms. Victor had worked at Wally's, she was harassed by management, supervisors, or other employee's about her personal social media accounts or her podcast entitled "*Swallow It.*" At one point, individual Defendant, Mr. Turner encouraged guests of Wally's to refer to Ms. Victor as "*Ms. Swallow It*".

161. Multiple times, management, or Wally's principal, Mr. Navarro, would approach Ms. Victor, pulling up an image of her from her personal social media page(s) to harass Ms. Victor. Mr. Navarro, amongst others, also, would make comments about "stalking" Ms. Victor's social media, while liking all of, what the Defense Counsel has referred to as, "Ms. Victor's "half dressed" photos", or "adult content". Mr. Navarro often times left comments such as the fire flame emoji or drool face emoji that had an underlying sexual tone on Ms. Victor's

Instagram photos. Such actions by the employer, its management, and staff, is in violation of this statue.

162. Ms. Victor's social media was a topic of conversation amongst all employees of Wally's and was one of the main reasons management, especially Ms. Baker and Ms. Jones, targeted and retaliated against Ms. Victor in hopes that she would quit her job and they could avoid a wrongful termination lawsuit.

163. Comments made by management and other employees were always in front of other staff and other management and despite Ms. Victor making multiple complaints about her social media becoming an everyday topic at work, nothing was ever done to stop the harassment, which is in violation of this statue.

164. Due to the Defendants unlawful acts and omissions, Ms. Victor holds the Defendants liable for an invasion of her privacy and thereby Ms. Victor is entitled to all civil penalties and remedies for such invasion of privacy.

165. Due to the Defendant's unlawful acts and omissions, the Defendants can be held liable for wrongful retaliation and termination for their unlawful use of Ms. Victor's social media and for the Defendants intentional and malicious violations of CA Labor Code 980.

166. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants including DOES 1-100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged herein.

167. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

168. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

169. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

170. The conduct of the Defendants described above herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

171. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

172. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

173. WHEREFORE, Ms. Victor requests judgement as is further set below.

**<u>TENTH CAUSE OF ACTION</u>**
**UNLAWFUL CONTRACTS IN VIOLATION OF PUBLIC POLICY**
***AGAINST ALL DEFENDANTS***

174. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

175. CA LABOR Code Section 432, states:

> "*If an employee or applicant signs any instrument relating to the obtaining or holding of employment, he shall be given a copy of the instrument upon request.*"

176. Ms. Victor requested the Handbook multiple times during her employment with the Defendants, and was not once, not even upon her "suspension pending investigation" given the requested Handbook. The Defendants, each of them, willfully and intentionally, failed to provide Ms. Victor with her Handbook or a copy of any of the documents she had signed, including the employee acknowledgement and arbitration agreement which is in complete violation of this statue.

177. CA Labor Code Section 432.5 states:

> "*No employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law.*"

178. The arbitration agreement that has been submitted to the court on several occasions by the Defense counsel is in fact changed and not the arbitration agreement that Ms. Victor had signed upon her actual employment at Wally's. However, based on the altered arbitration

agreement and employee acknowledgement presented to the court by the Defense counsel, the Defendants prove that they expect employees, including Ms. Victor, to agree, in writing, to terms and/or conditions, to which the Defendants should know or should have reasonably known is prohibited by law.

179. The Defendants arbitration portion of the Handbook tells an employee that they are prohibited from reporting discrimination, sexual harassment, discrimination, and other chargeable offenses when signing such agreement, which is prohibited by law and against public policy of the State of California.

180. The Defendants new arbitration agreement should be null and void, not only for Ms. Victor, but for all current and future employees. The Defendants maliciously, intentionally, and knowingly have and continue to use their arbitration portion of the employee Handbook as a tool of manipulation to ensure past, current, and future employees are unable to report them for chargeable offenses, which is prohibited by law and against public policy of the State of California.

181. CA Labor Code section 432.6 states:

> "*A person shall not, as a condition of employment, continued employment, or the receipt of any employment related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act, or this code, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity of any alleged violation.*"

182. The Defendants amended arbitration portion of their amended Handbook states the following, in all caps lock too:

> "*THE CLAIMS SUBJECT TO THIS PROCEDURE INCLUDE. BUT ARE NOT LIMITED TO, CONTROVERSIES ARISING OUT OF OR RELATING TO; ANY AGREEMENT; ANY POLICY OR PROVISION STATED IN THIS MANUAL; COMPENSATION OR BENEFITS; BREACH OF ANY CONTRACT; TORTS; OR VIOLATION OF ANY FEDERAL, STATE, OR OTHER GOVERNMENTAL LAW, STATUE, REGULATION, OR ORDINANCE, INCLUDING, BUT NOT LIMITED TO, WAGE AND HOUR VIOLATIONS, WRONGFUL TERMINATION, HARASSMENT AND DISCRIMINATION OF ANY TYPE; DISCHARGE IN VIOLATION OF PUBLIC POLICY AND/OR VIOLATION OF ANY STATE AND FEDERAL LAWS, INCLUDING WITHOUT LIMITATION, THE AGE DISCRIMINATION ACT, THE FAIR EMPLOYMENT AND HOUSING ACT, AS AMENDED, THE AMERICANS WITH DISABILITIES ACT, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, THE FAIR LABOR STANDARDS ACTS, AS AMENDED, THE LABOR- MANAGEMENT RELATIONS ACT, AS AMENDED, THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT OF 1988, AS AMENDED, THE REHABILITATION ACT OF 1973, AS AMENDED, THE EQUAL PAY ACT, THE PREGNANCY DISCRIMINATION ACT, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, THE FAMILY MEDICAL LEAVE ACT OF 1993, THE CALIFORNIA FAMILY RIGHTS ACT, AS AMENDED AN THE CALIFORNIA LABOR CODE ("Claim" or "Claims").*"

183. It further states:

> "*By signing the acknowledgement and agreement attached to this handbook, employee and employer agree to waive any substantive or procedural rights that they may have to bring an action on a class basis.*"

184. And the last paragraph states:

> "*Nothing contained herein shall be construed as precluding an employee from filing a charge with the Department of Fair Employment and Housing ("DFEH"), Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), or other federal, state or local agency, seeking administrative assistance in resolving Claims. However, any Claim that is not resolved administratively through such an agency shall be subject to this agreement and final binding arbitration.*"

185. The DFEH, the EEOC, and the CA Labor Commissioner's office all did not investigate Ms. Victor's claims, in pure negligence or in civil conspiracy, with the Defendants, which allows the Defendants to force, or attempt to force, "*any claim that is not resolved administratively through such an agency shall be subject to this agreement and final binding arbitration.*"

186. Subdivision (b) of CA LAB Code Section 432.6 states:

> "*An employer shall not threaten, discriminate, retaliate, or discriminate, or terminate any application for employment or an employee because of the refusal to consent to the waiver of any right, forum, or procedure for a violation of the California Fair Employment and Housing Act of this code, including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity for any alleged violation.*"

187. Ms. Victor has been subjected to retaliation by the Defendants, each of them, for three years now while trying to seek justice for her pain and suffering and damages for such pain and suffering, which is in complete violation of this statue.

188. CA Labor Code section 433 states, that any person violating this article is guilty of a misdemeanor, making the Defendants guilty of yet another misdemeanor that can not be enforced through this arbitration which is exactly what the Defendants wanted, which is prohibited by law and against public policy of the State of California.

189. The Defendants created an arbitration clause and agreement for employees, including Ms. Victor, in violation of public policy. The Defendants retaliated against Ms. Victor because Ms. Victor has protected characteristics and/or engaged in protected activity.

190. CA LAB Code section 923 states the following:

> "*In the interpretation and application of this chapter, the public policy of this State is declared as follows: Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment.Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives for his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in the concerted activities for the purpose of collective bargaining or other mutual aid or protection.*"

191. Ms. Victor, pursuant of section 923 of the CA LAB Code, was guaranteed the protection from any coercion, interference caused by such coercion by the Defendants, each of them.

192. Ms. Victor was denied such protection and mutual aid. The Defendants, each of them, coerced with one another to deny Ms. Victor mutual aid and protection, the right to due process, a trial by jury, and equal protection under the law. These coercions have violated not only Ms. Victor's rights, but the rights of past, current, and future employees who were too denied the chance to be free from interference, restraint, or coercion of the Defendants, and were also denied mutual aid and protection.

193. CA Labor Code Section 2810.5, subdivision (a) states that an employer shall provided to each employee, upon hire, a written notice including multiple things, such as the

name of the employer, including any "doing business as" names that the employer may be using, the employers main or principal office, and it's mailing address if it is different from the place of work. This statue also ensures that if any changes are made to any information on the written notice given to the employee from the employer, then it must be given to the employee in writing within seven calendar days of such changes.

194. Ms. Victor never received a written notice when the Wally's Handbook was amended. Ms. Victor was never given a written notice with Wally's "doing business as" business names, in fact, Ms. Victor did not even know that Wally's went by the legal entity name of *Southwest Wine & Spirits, LLC*; nor did Ms. Victor know that *Southwest Wine & Spirits, LLC* **was a limited liability company doing business under Delaware law**, until she began representing herself and doing her own research in June of 2021.

195. In fact, Ms Victor's prior legal counsel filed her complaint in the Los Angeles Superior Court naming *Southwest Wine & Spirits, LLC, a California limited liability company*, as a defendant, which is false and incorrect information that they filed under the false representation of it being genuine and true. Technically, right now, Ms. Victor's lawsuit is suing no one. And upon doing her own research Ms. Victor discovered that *Southwest Wine & Spirits, LLC, a Delaware Limited Liability Company* also does business as *Mel-Jen* and *Wally's Auction House, LLC*.

196. Southwest Wine & Spirits, LLC, the location in California, is a foreign branch of the Delaware limited liability company, licensed to do intrastate business in California. All this information was information Ms. Victor discovered only after being forced to represent herself

in her own litigation. This was **not** information given to her as an employee from her employer. Wally's is actually a trademark name for Southwest Wine & Spirits, LLC, not a real business name.

197. The Defendants malicious and intentionally acts and omissions are prohibited by law and go against the public policy of the State of California.

198. Provisions of the employment contract, as described above, Ms. Victor was required to sign as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy. Ms. Victor is informed and believes that the Defendants, each of them, knew that such provisions violated California law and public policy.

199. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as alleged herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations alleged herein.

200. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

201. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

202. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct

result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

203. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

204. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

205. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

206. WHEREFORE, Ms. Victor requests judgement as is further set below.

**ELEVENTH CAUSE OF ACTION**
**UNLAWFUL RETALIATION IN VIOLATION OF PUBLIC POLICY**
**(IN VIOLATION OF CA LABOR CODE §232.5, §1102.5, §1102.8, §1104)**
***AGAINST ALL DEFENDANTS***

207. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

208. Under California law, there is a fundamental and well-established public policy against harassment or retaliation based on the fact that the employee has a protected

characteristic or engaged in a protected activity. Said public policy is embodied in the Constitution of the State of California and CA Labor Code section 232.5, due to disclosure of working conditions, and other sections of the Labor Code. Adverse employment actions taken by an employer motivated by the fact that an employee has a protected characteristic are contrary to said public policy and are thus actionable under the common law of this state.

209. CA Labor Code section 232.5 states:

> "*No employer may do any of the following, require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions, require an employee to sign a waiver or other document that purports to deny the employee the right to disclose information about the employer's working conditions, or discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employers working conditions.*"

210. The Defendants use arbitration clauses, acknowledgements and/or agreements as a method to silence Ms. Victor, as well as all other employees who have come forward in separate litigations, to avoid being held accountable for their unlawful actions and omissions. Such clauses, acknowledgements and/or agreements allow the Defendants to continue behaving in a disgusting, unethical, and unlawful manner. A pattern that will continue to repeat with future and/or current employees.

211. CA Labor Code section 1102.5, subdivision (b) states:

> "*An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information… to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance…if the employee has reasonable cause to believe that the*

> *information discloses a violation of state or federal statue, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties*."

212. Under California law, discharge of an employee perceived to have reported an alleged violation of a statue or regulation violates public policy, even if the employee did not actually make the report. Perceived whistleblowers are also protected from retaliatory discharge as are employees who report suspected violations to other employees.

213. Ms. Victor told the Defendants that she planned on making a report. Ms. Victor also told employees of Wally's that she planned on making a report. Ms. Victor was then terminated in retaliation by the Defendants who had believes Ms. Victor had made a report, or planned too, which violates public policy.

214. Ms. Victor was and is a whistleblower and she should have been protected from retaliatory discharge. Ms. Victor was not protected from retaliatory discharge.

215. CA Labor Code section 1102.5, subdivision (f) states:

> "*In addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation.*"

216. CA Labor Code section 1102.8 states:

> "*An employer shall prominently display in lettering larger than size 14 point type a list of employees rights and responsibilities under the whistleblower laws, including the telephone number of the whistleblower hotline described in section 1102.7.*"

217. The Defendants did not display in lettering larger than size 14 point type a list of employees rights and responsibilities under the whistleblower laws, nor did they including a telephone number of the whistleblower hotline in violation of this statue.

218. CA Labor Code section 1104 states:

> "*In all prosecutions under this chapter, the employer is responsible for the acts of his managers, officers, agents, and employees.*"

219. The Defendants terminated Ms. Victor's employment in violation of public policy. The Defendants retaliated against Ms. Victor because Ms. Victor has protected characteristics and/or engaged in protected activity.

220. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as alleged herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations alleged herein.

221. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

222. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

223. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct

result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

224. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

225. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

226. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

227. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWELFTH CAUSE OF ACTION**
**UNLAWFUL RETALIATION AGAINST A WHISTLEBLOWER**
**(IN VIOLATION OF CA LABOR CODE §1102.5)**
***AGAINST ALL DEFENDANTS***

228. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

229. Ms. Victor engaged in protected activity by reporting the Defendants unlawful actions to her employer thus informing the Defendants, each of them, that illegal activities were occurring in the workplace.

230. Ms. Victor, at various times, made such reports to a person with authority over her and to employees who had the authority to investigate, discover, or correct the violations or noncompliance(s). Directly or indirectly the owners, principals, chief executive officers, and/or the chief financial officer were aware of Ms. Victor's reports of unlawful and illegal activity and failed to take action to stop such activity to the detriment of Ms. Victor.

231. Ms. Victor knew, or reasonably believed, that the acts and omissions of the Defendants, each of them, were in violation of laws that required that she be provided a workplace free of sexual harassment, discrimination, and retaliation. The laws violated, included, but were and are not limited to article 1, section 8 of the California Constitution, and multiple CA codes of law.

232. Following Ms. Victor's protected activity, the Defendants retaliated against Ms. Victor as set forth herein, including, but not limited to, making the environment hostile by refusing to take action to stop harassment, discrimination, and retaliation.

233. After Ms. Victor's refusal to quit the Defendants, each of them, were left with no choice but to find and execute a way to wrongfully terminate Ms. Victor.

234. Ms. Victor's protected activity was a motivating reason for the Defendants retaliatory conduct.

235. The Defendants retaliatory conduct was in violation of CA Labor Code 1102.5.

236. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

237. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

238. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

239. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

240. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

241. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

242. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTEENTH CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
***AGAINST ALL DEFENDANTS***

243. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

244. At all relevant times herein, a fundamental policy of the State of California was reflected in Labor Code 1102.5, which prohibits retaliation against an employee who discloses an employers violations or noncompliance with state statues and regulations. This policy was binding on all the Defendants, each of them.

245. A motivating factor in the Defendants in the termination of Ms. Victor's employment, were her complaints relating to sexual harassment and discrimination. The Defendants, each of them, retaliated against Ms. Victor by, for example, sending her home to change constantly despite not breaking dress code while never reprimanding any white hostesses for their dress code violations. Another example is the Defendants denial of accommodations to Ms. Victor on her non-work shifts while such accommodations were not denied to any of the white employees. Another example is the Defendants telling the entire staff, including other hostesses, that Ms. Victor would soon be terminated, resulting in Ms. Victor arriving to work to be greeted with hugs and "We'll miss you" from other employees of Wally's. The Defendants

retaliated against Ms. Victor by failing to adequately investigate her claims of sexual harassment and discrimination and failing to take any remedial action.

246. The Defendants knowingly created the working conditions that violated public policy because the Defendants willfully, knowingly, maliciously, and intentionally retaliated against Ms. Victor.

247. The working conditions caused by the Defendants violations of public policy were intolerable for Ms. Victor. When Ms. Victor refused to quit the Defendants wrongfully terminated her.

248. Ms. Victor was harmed by the Defendants working conditions, and the Defendants working conditions were a substantial factor in causing Ms. Victor harm. As a direct result of the Defendants willful, intentional, and malicious violations of public policy, Ms. Victor has suffered and will continued to suffer. Ms. Victor is therefore entitled to general and compensatory damages to an amount to be determined at trial.

249. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

250. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

251. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame,

humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

252. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

253. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

254. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

255. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FOURTEENTH CAUSE OF ACTION**
**UNLAWFUL CONTINUED VIOLATIONS OF CA LABOR CODES**
***AGAINST ALL DEFENDANTS***

256. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

257. The pattern of the defendants violating CA Labor Code's is a repeated pattern that has occurred on multiple complaints filed within the Los Angeles Superior Court, including Ms. Victor's, a pattern that has not changed. The Defendants unlawful violations of all California Labor Codes will not stop until the Defendants are forced to stop such unlawful violations.

258. Section 6323 of the CA Labor Code states:

> "*If the condition of any employment or place of employment constitutes a serious menace to the lives or safety of persons about it, the division may apply to the Superior Court of the County in which such place of employment is situated for an injunction restraining the use or operation thereof until such condition is corrected.*"

259. The Defendants, each of them had made Wally's a place of employment that constitutes a serious menace to the lives and safety of persons about it. The court must declare and enforce and injunction to restrain the Defendants, each of them, from the operation of the place of employment until all conditions are corrected.

260. CA Labor Code Section 1171.5 states:

> "*The legislature finds and declares the following: all protections, rights, and remedies available under state law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state.*"

261. The Defendants have engaged in a pattern of behavior where they have discriminated, harassed, and retaliated against employees, especially women, on the basis of their protected characteristics. These employees, which include Ms. Victor, did not have the availability to all protections, all rights, and all remedies that should be available to them under state law, which is in violation of this statue.

262. Further, CA Labor Code section 1199, subdivision (c) states that every member, person, acting either individually or as an officer, agent, or employee of another person who violates or refuses to comply with any provision of the CA Labor Codes, is guilty of a misdemeanor. The Defendants, each of them, violated almost every single chapter of the CA Labor Codes making them guilty of yet another misdemeanor.

263. The Defendants acted to aid and abet, and/or conspire with the other to violate all of the CA Labor Codes alleged herein. The Defendants actions were willful, cruel, malicious, and intentional. At all relevant times the Defendants acted with complete disregard of Ms. Victor's rights and feelings. The Defendants acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and humiliation to Ms. Victor.

264. Ms. Victor, as a direct result of the Defendants violating the CA Labor Codes alleged herein, has suffered, and continues to suffer great pain of mind and body, shock, humiliation, embarrassment, emotional distress, physical manifestations, loss of self-esteem, disgrace, loss of enjoyment of life, has developed hypervigilance, loss of professional reputation, loss of future wages, psychological harm, sleeplessness, nervousness, mental anguish, fear, anxiety, constant fear of eminent doom, inconsistent weight loss and gain, and financial turmoil.

265. Ms. Victor constantly has upset stomachs or digestive problems including constipation or constant nausea, low energy, aches, pains, tense muscles, rapid heartbeats, dry mouth and difficulty swallowing, and often grinds her teeth or clenches her jaw when her anxiety is triggered.

266. The Defendants unlawful conduct has affected Ms. Victor's mood leaving her feeling overwhelmed especially with the desire to take control of a bias litigation. Ms. Victor has trouble relaxing and quieting her mind, leaving her to feel the need to avoid others which then results in loneliness, worthlessness, and severe depression.

267. Ms. Victor is constantly worrying and constantly seeing only the negative. The Defendants unlawful conduct has not only made Ms. Victor doubt all of humanity but the entire judicial system which causes her thoughts to race, it also causes both fear and sadness as she has bore witness to the law being broken and corruption covering it up.

268. Ms. Victor has suffered hair loss, bad acne, has developed eczema, struggles to remain focused and motivated, and struggles every day to get through daily activities, all as a direct result of the Defendants unlawful conduct, each of them.

269. Ms. Victor, as a result of the Defendants violations of the CA Labor codes alleged herein, has suffered and continues to suffer; and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings, and/or incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

270. Due to Ms. Victor's suffering from the damages causes by the Defendants unlawful conduct while violating all of the CA Labor Codes alleged herein, Ms. Victor is entitled to general damages, economic and non economic damages, consequential damages, punitive and exemplary damages, special damages, future damages, and injunctive relief.

271. Ms. Victor has incurred, and will continue to incur, attorney fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs in addition to all penalties she is owed for the Defendants violations of the above mentioned CA Labor Codes.

272. Ms. Victor is entitled to move the Court to issue a stop order on all named Defendants, each of them, from conducting business in the State of California until Ms. Victor receives judgement for all violations of the CA Labor Codes alleged herein.

273. Ms. Victor is entitled to move the Court to grant and enforce permanent restraining orders on the Defendants, each of them, as well DOES 1-100, inclusive, who have a personal interest in this case and would seek to cause further harassment, oppression, discrimination, or harm to Ms. Victor in retaliation for filing her complaint for damages.

274. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FIFTEENTH CAUSE OF ACTION
## DEFAMATION, SLANDER, LIBEL, AND FAILURE TO BE PROTECT FROM DEFAMATION
## *AGAINST ALL DEFENDANTS*

275. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

276. CA Civil Code section 43 states:

> "*Every person has…the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations.*"

277. Ms. Victor was harmed by the Defendants, each of them. Ms. Victor has, and continues to be, subjected to personal insult by the Defendants, each of them. Ms. Victor has, and continues to be, defamed by the Defendants, each of them.

278. Ms. Victor as a direct result of the Defendants unlawful actions and omissions has suffered injuries to her personal relations. Thereby Ms. Victor was not protected from bodily restraint or harm, from personal insult, from defamation, or from injury to her personal relations.

279. CA Civil Code section 45 states that:

> "*Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.*"

280. The Defendants, each of them, through their email correspondence with one another violated this statue. The Defendants, each of them, used email correspondence, that was submitted to the Court and given to Ms. Victor by her prior legal counsel, that made false accusations against Ms. Victor. These email correspondence between the Defendants was an intentional, calculated, and malicious tactic used by the Defendants to justify their wrongful termination of Ms. Victor. The Defendants, each of them, put their libel down on "paper" through their electronic transmissions and the Defendants even submitted such libel to the courts.

281. CA Civil Code section 46 describes slander as a false and unprivileged publication, orally uttered that charges any person with a crime, tends to directly to injure the person in respect to their office, profession, trade or business, and/or which causes actual damage.

282. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, discussed Ms. Victor's employment and their reasons for the termination of her

employment to the entire staff of Wally's, uttering such false accusations to an audience that is prohibited by state law.

283. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, have accused Ms. Victor, orally to others, of the solicitation of prostitution and of extortion, which charges Ms. Victor with not one, but two crimes.

284. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, created such outrageous allegations against Ms. Victor intentionally and with malice. The intention of the Defendants was to harm Ms. Victor's reputation as an employee and to drag her moral compass as a human being through the mud.

285. The Defendants, each of them, defamed Ms. Victor to attempt to justify a clear wrongful termination and to avoid legal accountability and costs if a suit should arise.

286. The private statements made by the Defendants, each of them, concerning Ms. Victor were false. There was and there is no factual basis behind the Defendants false statements that accused Ms. Victor of being a prostitute and an extortion artist. These statements themselves are express false statements of fact, and they falsely implied a knowledge of negative facts about Ms. Victor's professionalism and ability to work with others. These false statements of fact also implied that Ms. Victor walked around Wally's showing off her nude body as an attempt to extort VIP customers for sex, these negative facts about Ms. Victor have been presented to the court as knowledge and are indeed one hundred percent false.

287. All statements made by the Defendants, each of them, both through libel and slander, were complete fiction, crafted to seem credible and to cause maximum damage. Ms.

Victor as stated herein, has been on eleven reality tv shows and has a large following on social media. On her social media she has videos dated back prior to her employment at Wally's in which Ms. Victor discusses how she does not masturbate. Yet, the Defendants, each of them, fabricated false statements accusing Ms. Victor of showing masturbation videos to VIP customers as one of their fake reasons for terminating her employment. Ms. Victor's social media alone, demonstrates the falsity of such statements and the Defendants bad faith in making such statements and causing such statements to be made.

288. The Defendants, each of them, made the defamatory statements alleged herein, with actual malice or with knowledge of their falsity, or alternatively, with reckless disregard for their falsity.

289. The Defendants, each of them, made all defamatory statements without privilege or justification.

290. The statements alleged herein concerning Ms. Victor directly injured her by demising her reputation, which had a natural tendency to lessen her profits.

291. The statements described above and herein convey a defamatory meaning. They harm Ms. Victor's reputation as to lower it.

292. It was the Defendants expectation and intent that such defamatory statements would injure Ms. Victor economically, including by lessening her profits.

293. As a result of the Defendants, each of them, slander and libel against Ms. Victor and of the Defendants false and defamatory statements made with actual malice, Ms. Victor has

suffered damages, including but not limited to lost compensation, loss to reputation, and increased costs.

294. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

295. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

296. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

297. The conduct of the Defendants described above herein was outrageous and was executed with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

298. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and

exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

299. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

300. WHEREFORE, Ms. Victor requests judgement as is further set below.

**SIXTEENTH CAUSE OF ACTION**
**VIOLATION OF UNRUH CIVIL RIGHTS ACT**
**(IN VIOLATION OF CA CIVIL CODE §51)**
***AGAINST ALL DEFENDANTS***

301. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

302. Ms. Victor's civil rights were violated by the Defendants through its agents, actors, affiliates, partners, subsidiaries, and employees. Ms. Victor had a right to be free from gender discrimination, abuse, and harassment under the Unruh Civil Rights Act.

303. CA Government Code section 12948 provides that a violation of the Unruh Civil Rights Act, CA Civil Code section 51, is a violation of FEHA.

304. The Unruh Civil Rights Act states:

> "*All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color…ancestry… genetic information…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.*"

305. Southwest Wine & Spirits, LLC, is a "business establishment" operating under the laws of Delaware, but allowed to do intrastate business within the State of California. The

Defendants place of business, where their company policies were established, is located in Beverly Hills, California, or in Los Angeles county of the State of California. The Defendants are obligated to comply with the provision of the Unruh Civil Rights Act.

306. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against female employees and/or customers, including Ms. Victor, which deprived them of "*full and equal*" accommodations, advantages, privileges, and/or services when they were employed or attended Wally's.

307. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against employees and customers based on their race, color, or ancestry, including Ms. Victor, which deprived them of "*full and equal*" accommodations, advantages, privileges, and/or services when they were employed or attended Wally's.

308. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor based on her genetic information which deprived Ms. Victor of "*full and equal*" accommodations, advantages, privileges, and/or services when she was employed at Wally's.

309. Ms. Victor's civil rights were violated by the Defendants through its agents, principals, actors, affiliates, and employees. Ms. Victor had the right to be free from discrimination based off of her protected characteristics.

310. The Defendants, each of them, including DOES 1-100, inclusive, were acting under the color of authority and in the scope of their employment during the instances when Ms. Victor was employed by the Defendants.

311. The Defendants, each of them, denied Ms. Victor full and equal accommodations, advantages, facilities, and privileges because of her sex, race, color, ancestry, and genetic information.

312. The Defendants committing multiple unlawful acts and omissions that were racially and sexually motivated, to then conceal such unlawful acts and omissions denied Ms. Victor the right to know the Defendants were not only sexual predators but racists.

313. By concealing the Defendants behavior and all reports and/or complaints made against the Defendants, the Defendants allowed Ms. Victor and other female or ethnic employees to work in an environment that subjected her to multiple forms of abuse. The Defendants employment of Ms. Victor essentially denied Ms. Victor the full and equal access to a safe work environment based on her sex, race, color, ancestry, and genetic information.

314. At all times relevant to this complaint, the Defendants systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor and other female employees or customers and other employees and customers of color, violated Ms. Victor's right to be free from discrimination guaranteed by CA Civil Code, section 51, and constitutes intentional and morally offensive conduct.

315. The Defendants, each of them, aided and abetted, incited, and/or encouraged, each other into violating the Unruh Civil Rights Act. By refusing to prevent and/or stop each

Defendants unlawful conduct and requiring Ms. Victor to do her job without complaint or she'd face consequences, the Defendants, each of them, incited one another, aided and abetted one another, and/or encouraged one another to violate the Unruh Civil Rights Act.

316. Whoever denies, aids and abets, or incites any discrimination contrary to the Unruh Civil Rights Act, CA Civil Code section 51, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a Court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000), and any attorney's fees in addition thereto.

317. Consequently, Ms. Victor is entitled to injunctive relief to remedy the Defendants discrimination, as well as damages for past harm, attorney's fees and costs.

318. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

319. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

320. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

321. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

322. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

323. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

324. WHEREFORE, Ms. Victor requests judgement as is further set below.

**SEVENTEENTH CAUSE OF ACTION**
**(IN VIOLATION OF CA CIVIL CODE §51.5)**
***AGAINST ALL DEFENDANTS***

325. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

326. CA Civil Code section 51.5, subdivision (a), states:

> "*No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed in Section 51… because the person is perceived to have one or more of those characteristics, or because the person is associated with a*

*person who has, or is perceived to have, any of those characteristics.*"

327. CA Government code section 12948 provides that a violation of CA Civil Code section 51.5 is a violation of FEHA.

328. Southwest Wine & Spirits, LLC, is a "business establishment" operating under the laws of Delaware, but allowed to do intrastate business within the State of California. The Defendants place of business, where their company policies were established, is located in Beverly Hills, California, or in Los Angeles county of the State of California.

329. Ms. Victor was discriminated against by the Defendants, each of them, who have, and continue to, discriminate against, boycott, and blacklist Ms. Victor based on her protected characteristics. Ms. Victor's civil rights were violated by the Defendants through its agents, principals, actors, affiliates, and employees.

330. Ms. Victor had the right to be free from discrimination based off of her protected characteristics.

331. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against female employees and/or customers, including Ms. Victor, because of her sex, a protected characteristic as defined in CA Civil Code section 51.

332. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against employees and customers, including Ms. Victor, on the basis of their race, color, or ancestry, which are protected characteristics as defined in CA Civil Code section 51.

333. At all times relevant to this complaint, the Defendants, each of them, engaged in systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor based on her genetic information which is a protected characteristic as defined in CA Civil Code section 51.

334. At all times relevant to this complaint, the Defendants systemic, purposeful, willful, intentional, and malicious discrimination against Ms. Victor and other female employees or customers and other employees and customers of color, violated Ms. Victor's right to be free from discrimination guaranteed by CA Civil Code section 51.5, and constitutes intentional and morally offensive conduct.

335. The Defendants, each of them, aided and abetted, incited, and/or encouraged, each other into violating CA Civil Code section 51.5. By refusing to prevent and/or stop each Defendants unlawful conduct and requiring Ms. Victor to do her job without complaint or she'd face consequences, the Defendants, each of them, incited one another, aided and abetted one another, and/or encouraged one another to violate CA Civil Code section 51.5.

336. The conduct of the Defendants, each of them, as alleged herein, was oppressive, fraudulent, intentional, and malicious, and taken in conscious disregard of the health, safety, economic condition, and rights of Ms. Victor, a victim of discrimination, in that the Defendants, each of them, intentionally, willfully, and maliciously deprived Ms. Victor of her civil rights under the laws of the State of California.

337. Without the issuance of appropriate injunctive relief and other equitable relief, the Defendants, each of them, will continue to discriminate based on the protected characteristics

protected by the Unruh Civil Rights Act and will continue to discriminate against female employees and customers and/or employees and customers of color.

338. Consequently, Ms. Victor is entitled to damages for past harm.

339. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

340. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

341. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

342. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

343. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in

order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

344. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

345. WHEREFORE, Ms. Victor requests judgement as is further set below.

**EIGHTEENTH CAUSE OF ACTION**
**VIOLATION OF THE RALPH CIVIL RIGHTS ACT**
**(IN VIOLATION OF CA CIVIL CODE §51.7 & §52(b))**
***AGAINST ALL DEFENDANTS***

346. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

347. CA Civil Code section 51.7 is known, and referred to as the Ralph Civil Rights Act of 1976. Subdivision (b) of this section states:

> "*All persons within this jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed in… Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics.*"

348. At all times mentioned herein, Ms. Victor had the right to be free from any violence, intimidation by threat of violence, committed against her on account of her sex, race, color, ancestry, or genetic information.

349. As alleged herein, each Defendant subjected Ms. Victor to violence, and/or intimidation by threats of violence, against her person, on account of her protected

characteristics, and/or acted to aid and abet, incite, and/or conspire with the other Defendants to deny Ms. Victor her right to be free from any violence, or intimidation by threat of violence, committed against her person on the account of her protected characteristics.

350. In doing so, each Defendant violated the civil rights of Ms. Victor, as set forth in the Ralph Civil Rights Act, which is codified in CA Civil Code section 51.7.

351. CA Civil Code section 52, subdivision (b), provides that any person who denies another person the rights guaranteed under CA Civil Code section 51.7, or who aids, incites, or conspires in that denial, shall be liable for damages, including, but not limited to punitive damages, attorney's fees and costs, and a civil penalty of twenty-five thousand dollars ($25,000).

352. Additionally, CA Civil Code section 52, established liability for those who aid and abet, incite, and/or conspire to deny Ms. Victor her rights guaranteed by CA Civil Code section 51.7, in that they knew or should have known that all Defendants were continuing to engage in physical and/or verbal sexual harassment, battery, sexual assault, intimidation, discrimination, and retaliation of Ms. Victor and other women and people of color employed at Wally's or customers of Wally's. By failing to take any prompt effective action to halt these violations, the Defendants, each of them, aided the continued violation of Ms. Victor's civil rights.

353. Ms. Victor was subjected to violence and the intimidation by threat of violence both at Wally's and on the property of Zen Hollywood by the Defendants, each of them.

The unlawful acts and omissions done by the Defendants, each of them, including DOES 1-100, inclusive, was another attempt to cause irreparable harm to Ms. Victor and such unlawful

conduct was intentional, malicious, and done with a conscious disregard to Ms. Victor's rights and feelings.

354. Ms. Victor should have been protected from this intimidation and violence despite her position in this labor dispute, however, this labor dispute is the reason why Ms. Victor's civil rights have been ignored and her life was almost taken.

355. Therefore, Ms. Victor is informed and believes that the Defendants, each of them, aided and abetted, incited, and/or conspired with all of their known and unknown affiliates in performing the acts described herein and holds them legally liable. Ms. Victor is informed and believes that the Defendants, and their co-conspirators, intended to cause fear, pain, suffering, and/or physical injury to Ms. Victor.

356. As a direct result of these acts, omissions, and ratifications, Ms. Victor has suffered and will continue to suffer pain and suffering, including, but not limited too, emotional and mental anguish, distress, and discomfort. Ms. Victor is thereby entitled to general and compensatory damages in an amount to be determined at trial. Ms. Victor is also entitled to damages for economic harm and other consequential damages.

357. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

358. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame,

humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

359. Ms. Victor is entitled to receive and hereby seeks statutory damages pursuant to CA Civil Code section 52, subdivision (b), including actual and exemplary damages.

360. The Defendants conduct was malicious, oppressive, fraudulent, and outrageous towards Ms. Victor and done with a conscious disregard of Ms. Victor's rights and feelings, and with the intention of causing, and/or willfully disregarding the probability of causing, unjust and cruel hardship to Ms. Victor. In so acting, the Defendants, each of them, intended to and did vex, injure, and annoy Ms. Victor. Therefore, an assessment of punitive damages should be made against the Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future discriminatory and/or retaliatory conduct.

361. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

362. WHEREFORE, Ms. Victor requests judgement as is further set below.

## NINETEENTH CAUSE OF ACTION
## VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT
## (IN VIOLATION OF CA CIVIL CODE §52.1)
## *AGAINST ALL DEFENDANTS*

363. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

364. CA Civil Code section 52.1 is known as the Tom Bane Civil Rights Act.

365. CA Civil Code section 52.1, subdivision (b) provides that any individual whose enjoyment of rights secured by the US Constitution or laws of the United States, or of the rights secured by the CA Constitution or laws of the State of California, has been interfered with, or attempted to be interfered with, by threat, intimidation, or coercion, or attempts thereby, may prosecute a civil action in his own name, and obtain injunctive relief, recover damages, and obtain attorney's fees and costs.

366. As alleged herein, the Defendants have denied Ms. Victor her enjoyment of rights secured to her by the US Constitution or laws of the United States, or of the rights secured to her by the CA Constitution or laws of the State of California, through threat, intimidation, and coercion.

367. The Defendants actions as alleged herein, have and will continue too, interfere with Ms. Victor's right to be free from gender, sex, and race discrimination, sexual harassment, and retaliation. Ms. Victor had a right to have the proper agencies and supervisors immediately investigate her sexual harassment, abuse, retaliation, and discrimination claims made against the Defendants.

368. The Defendants engaged in oppressive and unlawful tactics in ignoring, concealing, and ultimately suppressing Ms. Victor's complaints. Ms. Victor was threatened and intimidated for reporting the Defendants conduct. Conspiratorial silence and inaction. These intentional acts of concealment of the Defendants abusive behavior violated Ms. Victor's rights to be free from discrimination of the basis of her sex, race, color, ancestry, and/or genetic information.

369. Ms. Victor was deprived of due process of law, when various complaints to management or supervisors failed to trigger any report, investigation, or other action by Wally's and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

370. Furthermore, Ms. Victor was deprived of due process of law, when various complaints to the Labor Commissioner's office failed to trigger any report, investigation, or other action by the Labor Commissioner's office and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

371. Furthermore, Ms. Victor was deprived of due process of law, when various complaints to the DFEH failed to trigger any report, investigation, or other action by the DFEH and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

372. Furthermore, Ms. Victor was deprived of due process of law, when various complaints to the EEOC failed to trigger any report, investigation, or other action by the EEOC and its managing agents, who were required to do so, both under their own policies and procedures, as well as under federal mandate by Title IX and the 14th Amendment.

373. In addition, these actions were contrary to Ms. Victor's civil rights guaranteed under the Constitution of the State of California.

374. The Defendants wrongful conduct was intended to, and did successfully interfere with Ms. Victor's constitutional rights to be free from discrimination, harassment, violence,

intimidation, and retaliation, as well as interfered with her rights of due process under the United States Constitution, specifically the fifth and fourteenth amendments.

375. The Defendants unlawfully and wrongfully used, or employed others to wrongfully use threats, intimidation, harassment, violence, and coercion over Ms. Victor's person, to which Ms. Victor has no relief except to submit to the Defendants wrongful threats, intimidation, harassment, violence, coercion, which rendered Ms. Victors submission involuntary.

376. The Defendants above noted actions were the legal and proximate cause of physical, psychological, emotional, and economic damages. The actions of the Defendants have resulted in Ms. Victor incurring, and will require her to incur into the future, expenses for medical and psychological treatment, therapy, and/or counseling.

377. In subjecting Ms. Victor to the wrongful treatment described herein, the Defendants acted intentionally, willfully, and maliciously with intent to harm Ms. Victor, and in conscious disregard of Ms. Victor's rights, entitling Ms. Victor to compensatory damages, emotional distress damages, punitive and exemplary damages, attorney's fees, and injunctive relief ordering the Defendants to retain from the conduct or activities as alleged herein.

378. In addition to, Ms. Victor is entitled to receive and hereby seeks statutory damages pursuant to CA Civil Code section 52, subdivision (b), including actual and exemplary damages.

379. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTIETH CAUSE OF ACTION**

**SEXUAL HARASSMENT**

**(IN VIOLATION OF CA CIVIL CODE §51.9)**

***AGAINST ALL DEFENDANTS***

380. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

381. CA Civil Code section 51.9, subdivision (a) states:

> "*A person is liable in a cause of action for sexual harassment under this section when the plaintiff proves all of the following: (2) The defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the Plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe. (3) The plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result off the conduct described in paragraph (2).*"

382. During Ms. Victor's employment, the Defendants intentionally, recklessly, and with cruelty made sexual advances and commentary of a hostile nature based on Ms. Victor's gender that were unwelcome and severe. This includes, but is not limited to, management allowing their customers to discuss Ms. Victor's body before touching her body. Such disgusting behavior was encouraged and enjoyed by the Defendants. All incidents occurred under the supervision of the Defendants, who were acting in the course and scope of their employment with all Defendants, each of them.

383. The incidents of abuse outlined herein took place while Ms. Victor was employed by the Defendants; and the Defendants, including DOES 1-100, inclusive, in their full capacity, were acting specifically on behalf of the Defendants.

384. During Ms. Victor's employment, the Defendants intentionally, recklessly, and with cruelty engaged in acts or commentary that resulted in harmful and offensive contact with Ms. Victor. Multiple principals, managers, and supervisors employed with the Defendants abused

their position of authority to force Ms. Victor to engage in unwelcome conversations about her social media, body, and sex life.

385. Ms. Victor was subjected to severe, pervasive, and unwanted harassing conduct by the Defendants, each of them, in part because she is a woman.

386. Ms. Victor reported individual Defendants and their sexually harassing conduct. Ms. Victor took all reasonable steps to file her reports so that she could avoid a hostile and uncomfortable work environment.

387. Reasonable women, in Ms. Victor's circumstances, would have considered the work environment hostile and abusive. Ms. Victor is a reasonable women and she considered her work environment hostile and abusive.

388. Ms. Victor is informed and believes that the Defendants, each of them, knew or should have known of the Defendants unlawful sexually harassing conduct, yet failed to take immediate and appropriate corrective action. In fact, the Defendants took no appropriate corrective actions.

389. The Defendants failure to take immediate and appropriate corrective action was a substantial factor in causing Ms. Victor harm.

390. Even though the Defendants knew or should have known of the activities and unlawful behavior by individual Defendants, the Defendants did nothing to investigate, supervise, or prevent the Defendants from engaging further in their unlawful behavior. The Defendants did absolutely nothing to ensure Ms. Victor's safety.

391. A corporation is a "person" within the meaning of CA Civil Code section 51.9, which subjects persons or liability for sexual harassment within a business, service, or professional relationship, and such entity Defendant may be held liable, under this statue, for the acts of its employees.

392. The Defendants conduct and the conduct of their agents, affiliates, partners, managers, subsidiaries, etc., was a breach of their duty to Ms. Victor.

393. As a direct result of the Defendants sexual harassment and the conduct described herein, Ms. Victor has suffered, and will continue to suffer, great pain of mind and body, emotional distress, shock, humiliation, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, and loss of the enjoyment of life; Ms. Victor has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling.

394. Ms. Victor is entitled to emotional damages in an amount to be determined at trial.

395. Ms. Victor is entitled to general and compensatory damages in an amount to be determined at trial.

396. The Defendants, each of them, had knowledge that the Defendants were likely to inflict injury on Ms. Victor but continued to employ such Defendants with conscious disregard for the rights, health, or safety of Ms. Victor and of others, justifying an award of punitive and

exemplary damages, in a sum appropriate to punish and make an example of the Defendants, each of them.

397. Subdivision (b) of section 52 of the CA Civil Code states:

> "Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied the right."

398. The Defendants, each of them, are liable to pay a civil penalty of twenty-five thousand dollars ($25,000).

399. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

400. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY FIRST CAUSE OF ACTION**
**GENDER VIOLENCE**
**(IN VIOLATION OF CA CIVIL CODE §52.4 )**
***AGAINST ALL DEFENDANTS***

401. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

402. CA Civil Code section 52.4 defines "gender violence" as a form of sex discrimination consisting of either: one or more acts that would constitute a criminal offense under state law that has an element of use, or attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim; or, a physical intrusion or physical invasion of a sexual nature under coercive conditions.

403. By engaging in the conduct as alleged herein, the Defendants, each of them, including DOES 1-100, inclusive, committed “gender violence” within the meaning of the above statue.

404. Ms. Victor alleges that the Defendants violated CA Civil Code section 52.4 in that one or more acts the Defendants inflicted on Ms. Victor constituted a criminal offense under State law that has an element of use, attempted use, or threatened use of physical force against her person, committed at least in part based on Ms. Victor’s gender, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

405. Ms. Victor alleges that the Defendants and their customers, with permission from the Defendants, violated this statue in that the Defendants and their customers, with permission from the Defendants, engaged in a physical intrusion or physical invasion of a sexual nature under coercive conditions, even if those acts have not resulted in criminal complaints, charges, prosecution, or conviction.

406. The Defendants committed acts of gender violence upon Ms. Victor through the use, or threatened use of physical force against her person, committed at least in part based on Ms. Victor’s gender.

407. The Defendants, each of them, acted to aid and abet, incite, and/or conspire with the other to violate CA Civil Code section 52.4.

408. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has sustained injuries to her mind and body, shock, humiliation, embarrassment, disgrace, injury to her person including physical injuries and emotional distress and mental anguish, all of which

said injuries have caused, and continue to cause, Ms. Victor to suffer damages including, but not limited to, the loss of quality of life, the inability to complete or perform daily activities, the loss of enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling, in an amount to be determined at trial.

409. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has suffered economic harm, in an amount to be determined at trial.

410. The Defendants conduct was malicious, intentional, oppressive, and fraudulent, and was done in conscious disregard of Ms. Victor's rights and feelings. Such conduct was done with the intent to cause Ms. Victor harm or the disregard of the probability that such conduct would cause Ms. Victor harm as well others. The Defendants conduct was so outrageous and despicable that such conduct would be looked down upon and despised by decent people. Therefore, Ms. Victor is entitled to recover exemplary damages in an amount to be determined at trial.

411. Ms. Victor is entitled to compensatory damages in an amount to be determined at trial.

412. The Defendants, each of them, had knowledge that the Defendants were likely to inflict injury and violence on Ms. Victor but continued to employ such Defendants with conscious disregard for the rights, health, or safety of Ms. Victor and of others, justifying an

award of punitive damages, in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

413. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

414. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY SECOND CAUSE OF ACTION**
**SEXUAL BATTERY**
**(IN VIOLATION OF CA CIVIL CODE §1708.5)**
***AGAINST ALL DEFENDANTS***

415. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

416. CA Civil Code section 1708.5, subdivision (a) provides that a person commits a sexual battery who does any of the following: (1) acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results. (2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results. (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

417. CA Civil Code section 1708.5, subdivision (d) defines "intimate part" as the sexual organ, anus, groin, or buttocks of any person, or the breast of a female.

418. CA Civil Code section 1708.5, subdivision (f) defines "offensive conduct" to mean conduct that offends a reasonable sense of personal dignity.

419. Ms. Victor alleges that the Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, committed the act of civil sexual battery in violation of CA Civil Code 1708.5. The Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, willfully, maliciously, intentionally, and without Ms. Victor's consent, subjected her to the forceful, harmful, and offensive touching of Ms. Victor's "intimate parts".

420. The Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, did, in fact, bring themselves into offensive and unwelcome contact with Ms. Victor as described herein above.

421. At all relevant times, Ms. Victor found the contact by the Defendants to be offensive to her person and dignity. At no time did Ms. Victor knowingly consent to any of the acts by the Defendants alleged herein above. As a result of the Defendants acts as herein above alleged, Ms. Victor was physically harmed and/or experienced offensive contact with her person.

422. As alleged herein, each Defendant aided, abetted and/or conspired to sexually batter Ms. Victor.

423. In performing the acts described herein, the Defendants acted with the intent to make harmful and offensive contact with Ms. Victor's person.

424. Pursuant to the above conspiracy, the Defendants, each of them, acted to aid and abet the other Defendants, in fact, the Defendants did bring themselves into offensive and unwelcome contact with Ms. Victor as described herein.

425. As described herein, the Defendants, each of them, subjected Ms. Victor to un-consented and intentional invasions of her right to be free from offensive and harmful physical contact.

426. The Defendants, each of them, abused and betrayed their relationship of trust and confidence with Ms. Victor.

427. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has sustained injuries to her mind and body, shock, humiliation, embarrassment, disgrace, injury to her person including physical injuries and emotional distress and mental anguish, all of which said injuries have caused, and continue to cause, Ms. Victor to suffer damages including, but not limited to, the loss of quality of life, the inability to complete or perform daily activities, the loss of enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling, in an amount to be determined at trial.

428. The aforementioned conduct by the Defendants was cruel, willful, and malicious. At all relevant times the Defendants, each of them, acted with complete disregard of Ms. Victor's rights and feelings. The Defendants, each of them, acted with the knowledge of, or with reckless disregard for the fact that their conduct was certain to cause injury and humiliation to Ms. Victor. Ms. Victor is informed and believes that the Defendants, each of them, intended to cause fear, physical injury, pain, and suffering to Ms. Victor. Ms. Victor is entitled to recover punitive

and exemplary damages from the Defendants, in a sum appropriate to punish and make an example of the Defendants, each of them.

429. Ms. Victor alleges that pursuant to the above conspiracy, the Defendants, and customers of Wally's who were encouraged or given permission from the Defendants, each committed acts of civil sexual battery in violation of CA Civil Code section 1708.5.

430. Each Defendant, including DOES 1-100, inclusive, each willfully, maliciously, intentionally, and without Ms. Victor's consent, subjected Ms. Victor to the forceful, harmful, and/or offensive touching of Ms. Victor's buttocks and breasts despite her expressed objection.

431. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has suffered economic harm, in an amount to be determined at trial.

432. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

433. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY THIRD CAUSE OF ACTION**
**BATTERY**
***AGAINST ALL DEFENDANTS***

434. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

435. In performing the acts described herein, the Defendants acted with the intent to make a harmful and offensive contact with Ms. Victor.

436. The Defendants, each of them, and/ or the customers of Wally's who were encouraged or given permission from the Defendants, did, in fact, bring themselves into offensive and unwelcome contact with Ms. Victor as described herein.

437. At all relevant times, Ms. Victor found the contact by the Defendants to be offensive to her person and dignity. At no time did Ms. Victor knowingly consent to any of the acts by the Defendants, each of them, and/ or the customers of Wally's who were encouraged or given permission from the Defendants, alleged herein.

438. As a result of the Defendants acts as alleged herein, Ms. Victor was physically harmed and/or experienced offensive contact with her person.

439. As alleged herein, each Defendant aided, abetted, and/or conspired to batter Ms. Victor. In performing the acts described herein, the Defendants acted with the intent to make a harmful and offensive contact with Ms. Victor's person.

440. In doing the acts described herein, the Defendants, each of them, did in fact make physical contact with Ms. Victor with the intent to harm or offend her.

441. As described herein, the Defendants, each of them subjected Ms. Victor to un-consented and intentional violations of her interests in freedom from intentional, unlawful, harmful, and offensive physical contact.

442. A reasonable person in Ms. Victor's position would have been offended by the physical contact that the Defendants subjected Ms. Victor too. Ms. Victor is a reasonable person and was, and is, offended by the physical contact that the Defendants subjected her too.

443. Pursuant to the above conspiracy, the Defendants, each of them, acted to aid and abet the other Defendants, in fact, such individual Defendants did bring themselves into offensive and unwelcome contact with Ms. Victor as described herein and above.

444. The Defendants, each of them, abused and betrayed their relationship of trust and confidence with Ms. Victor.

445. As a direct result of the Defendants unlawful conduct as alleged herein, Ms. Victor has sustained injuries to her mind and body, shock, humiliation, embarrassment, disgrace, injury to her person including physical injuries and emotional distress and mental anguish, all of which said injuries have caused, and continue to cause, Ms. Victor to suffer damages including, but not limited to, the loss of quality of life, the inability to complete or perform daily activities, the loss of enjoyment of life; Ms. Victor has sustained and will continue to sustain loss of earnings and other employment benefits and opportunities; Ms. Victor has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling, in an amount to be determined at trial.

446. The aforementioned conduct by the Defendants was cruel, willful, and malicious. At all relevant times the Defendants, each of them, acted with complete disregard of Ms. Victor's rights and feelings. The Defendants, each of them, acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and humiliation to Ms. Victor. Ms. Victor is informed and believes that the Defendants, each of them, intended to cause fear, physical injury, pain, and suffering to Ms. Victor. Ms. Victor is entitled to recover punitive

and exemplary damages from the Defendants, in a sum appropriate to punish and make an example of the Defendants, each of them.

447. The above referenced acts of the Defendants were authorized, ratified, and encouraged by each Defendant who were officers, principals, supervisors, or managing agents of the Defendants. The Defendants, each of them, are thus liable for the above mentioned battery of Ms. Victor and responsible for damages caused by said conduct under the principals of vicarious liability.

448. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

449. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY FOURTH CAUSE OF ACTION**
**ASSAULT**
***AGAINST ALL DEFENDANTS***

450. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

451. As alleged herein, each Defendant conspired and/or aided and abetted the other to assault Ms. Victor.

452. The Defendants conspired and/or aided and abetted to intimidate Ms. Victor.

453. The Defendants intended to cause Ms. Victor apprehension or an imminent harmful and offensive contact with her person.

454. Ms. Victor reasonably believed that she was about to be harmed in a physical or offensive manner by the Defendants.

455. As a result of the Defendants conduct, Ms. Victor was, in fact, placed in great apprehension of imminent harmful and offensive contact with her person.

456. In performing the acts alleged herein, the Defendants acted with the intent of making contact with Ms. Victor's person.

457. At no time did Ms. Victor consent to any of the conduct by the Defendants as alleged herein.

458. The Defendants conduct as alleged herein, caused Ms. Victor to be apprehensive that the Defendants would subject her to further intentional invasions of her right to be free from offensive and harmful contact and demonstrated that at all times material herein, the Defendants had a present ability to subject her to intentional offensive and harmful contact.

459. Ms. Victor was harmed as a result of the Defendants conduct.

460. The Defendants conduct was a substantial factor in causing Ms. Victor harm.

461. As a direct result of the Defendants conduct, Ms. Victor was physically and psychologically damaged.

462. Without consent, the Defendants intentionally assaulted Ms. Victor with the intent to harm Ms. Victor as described herein. Such conduct was extreme, outrageous, and done with malice, and would be deemed highly offensive to a reasonable person. Ms. Victor is a reasonable person and found the Defendants conduct to be highly offensive.

463. Ms. Victor is informed and believes that the Defendants intended to cause fear, physical injury, and/or pain and suffering to Ms. Victor. In committing the acts alleged, the Defendants, each of them, are guilty of fraud, oppression, and malice and therefore Ms. Victor is

entitled to an award of punitive and exemplary damages in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

464. As a direct result of the Defendants conduct, each of them, Ms. Victor has suffered and will continue to suffer harm and economic damages. Ms. Victor will incur and will continue to incur damages in the future for the cost of future care, in an amount to be determined at trial.

465. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

466. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY FIFTH CAUSE OF ACTION**
**STALKING**
**(IN VIOLATION OF CA CIVIL CODE 1708.7 AND CA PENAL CODE 646.9)**
***AGAINST ALL DEFENDANTS***

467. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

468. CA Civil Code section 1708.7 holds a person liable for stalking if the Defendant or Defendant(s) engaged in a pattern of behavior with the intent to follow, alarm, place under surveillance, or harass the Plaintiff and as a result of such behavior the Plaintiff reasonably feared for their safety or the safety of their family.

469. The Defendants, each of them, had and continue to stalk Ms. Victor.

470. The Defendants have engaged in a repeated pattern of behavior with the intention to alarm Ms. Victor, place Ms. Victor under surveillance, and to harass Ms. Victor, this includes, but is not limited too, the Defendants hacking Ms. Victor's devices and/or having her and her family followed and put under surveillance.

471. As a direct result of the Defendants conduct, Ms. Victor reasonable feared for her safety and for the safety of her immediate family.

472. Without consent, the Defendants intentionally stalked Ms. Victor with the intent to harm Ms. Victor or intimidate Ms. Victor as described herein.

473. Such conduct was dangerous, extreme, outrageous, and done with malice, and would be deemed highly offensive to a reasonable person. Such pattern of conduct would cause a reasonable person to suffer substantial emotional distress. Ms. Victor is a reasonable person and has suffered and will continue to suffer substantial emotional distress.

474. CA Penal Code section 646.9 defines the crime of stalking as following, harassing, and/or threatening someone to the point that the person fears for his or her safety. Committing such crime has a penalty to up to five years in prison.

475. The Defendants, each of them, including DOES 1-100, inclusive, are guilty of the crime of stalking as they have followed, harassed, and intimidated Ms. Victor to the point she was in fear for her safety and the safety of her family.

476. Ms. Victor attempted to file five different emergency briefs including one to the Los Angeles Attorney General's office to demand the Defendants, each of them, stop engaging in their dangerous and intimidating pattern of behavior. Ms. Victor has also directly told the Defense counsel to tell the Defendants to immediately stop their dangerous and intimidating pattern of behavior. All such requests have been, and continue to be, ignored by the Defendants as they continue to engage in their dangerous and intimidating conduct of behavior.

477. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants willfully committed their conduct, willingly, and on purpose.

478. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants maliciously and intentionally committed such wrongful acts with the unlawful intent to disturb, annoy, intimidate, or injure her or her family.

479. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, harassed her and continue to harass her with the intention to annoy, alarm, torment, or terrorize her

480. Pursuant to CA Civil Code section 3294, the Defendants are liable to reward Ms. Victor for damages, including, but not limited to, general damages, special damages, and punitive damages in an amount to be determined at trial.

481. Ms. Victor is entitled to compensatory damages in an amount to be determined at trial.

482. In addition to, Ms. Victor demands the court grant her equitable relief, including but not limited to, an injunction to stop the Defendants behavior immediately.

483. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

484. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY SIXTH CAUSE OF ACTION**
**CONSTRUCTIVE INVASION OF PRIVACY**
**(IN VIOLATION OF CA CIVIL CODE 1708.8)**
***AGAINST ALL DEFENDANTS***

485. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

486. CA Civil Code section 1708.8, subdivision (b) states:

> "*A person is liable for constructive invasion of privacy when the person attempts to capture, in a manner that is offensive to a reasonable person, any type of visual image, sound recording, or other physical impression of the plaintiff engaging in a private, personal, or familial activity, through the use of any device, regardless of whether there is a physical trespass, if this image, sound recording, or other physical impression could not have been achieved without a trespass unless the device was used.*"

487. The Defendants, on the property of Zen Hollywood, as well as off of the property of Zen Hollywood have used devices to capture Ms. Victor's private phone calls, emails, and any and all personal information and data to intentionally interfere with her litigation and civil rights.

488. Ms. Victor found a recording device in her bedroom smoke detector on the property of Zen Hollywood, which she imagines has been destroyed or disposed of since her flee back to Massachusetts.

489. Often times Ms. Victor would have a conversation with someone on the phone about her case and then moments later the Defense counsel via Ms. Riccomini would email her about what she had discussed on the phone.

490. The Defendants have and continue to invade Ms. Victor's privacy through her technology devices, a pattern that began at the start of Ms. Victor's self-representation and has not stopped.

491. Subdivision (d) of this statute states that a person who violates subdivision (b) of this statue is:

> "*Liable for up to three times the amount of any general and special damages that are proximately caused by the violation of this section. This person may also be liable for punitive damages…A person who comes within the description of this subdivision is also subject to a civil fine of not less than five thousand dollars ($5,000) and not more than fifty thousand dollars ($50,000).*"

492. The Defendants, each of them, are liable to up to three times the amount of any general and special damages caused by their violation(s) of subdivision (b) of this statue and Ms. Victor is entitled and demands such damages.

493. Ms. Victor also demands the court order the Defendants pay the fifty thousand dollar ($50,000) civil penalty pursuant to subdivision (d), of this statue.

494. Subdivision (e) of this statue states:

> "*A person who directs, solicits, actually induces, or actually causes another person, regardless of whether there is an employer- employee relationship, to violate any provision of subdivision (a), (b), or (c) is liable for any general, special, and consequential damages resulting from said violation. In addition, the person that directs, solicits, actually induces, or actually causes another person, regardless of whether there is an employer- employee relationship, to violate this section shall be liable for punitive damages to the extent an employer would be subject to punitive damages. A person who comes within this description of this subdivision is also subject to a civil fine of not less than five thousand dollars ($5,000) and not more than fifty thousand dollars ($50,000).*"

495. The Defendants, each of them, including DOES 1-100, inclusive, conspired and/or aided and abetted the other to violate subdivision (b) of this statue and are liable for all general,

special, and consequential damages for directing and actually inducing one another's conduct and violation(s) of this statue, in an amount to be determined at trial. Ms. Victor is also entitled to punitive damages in an amount to be determined at trial. Ms. Victor also demands the court order the Defendants, each of them, to be held liable for the civil fine of fifty thousand dollars ($50,000).

496. In addition to, Ms. Victor demands the court grant her equitable relief, including but not limited to, an injunction to stop the Defendants behavior immediately.

497. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

498. WHEREFORE, Ms. Victor requests judgement as is further set below.

## TWENTY SEVENTH CAUSE OF ACTION
## WRONGFUL INJURIES TO AN ANIMAL
## (IN VIOLATION OF CA CIVIL CODE 3340 AND 3341)
## *AGAINST ALL DEFENDANTS*

499. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

500. CA Civil Code section 3340 states:

> "*For wrongful injuries to animals being subjects of property, committed willfully or by gross negligence, in disregard of humanity, exemplary damages may be given.*"

501. CA Civil Code section 3341 states:

> "*The owner, possessor, or harborer of any dog or other animal, that shall, on the premises of any person than the owner, possessor or harborer of such dog or other animal, kill, worry, or wound any bovine animal…shall be liable to*

*the owner of the same for the damages and costs of suit, to be recovered in any court of competent jurisdiction.*"

502. The Defendants, each of them, had no regard to humanity or for Ms. Victor's dog Caesars health or life. Ms. Victor holds them accountable for all damages done, whether damage is permanent or not, that has resulted due to their gross negligence.

503. The Defendants, each of them, are liable to pay exemplary damages, damages that will cover all or any medical needs now or in the future that Caesar may need due to the Defendants malicious and wrongful injuries and for the Defendants complete disregard to his life and to humanity.

504. The Defendants wounded Caesar and are liable to Caesar's owner (Ms. Victor), the damages and costs of suit, and Ms. Victor demands relief from the Defendants for their violation of this statue.

505. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY EIGTH CAUSE OF ACTION**
**UNLAWFUL CONTINUED VIOLATIONS OF CA CIVIL CODE'S INCLUDING THE PLAINTIFF'S CIVIL RIGHTS**
***AGAINST ALL DEFENDANTS***

506. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

507. The pattern of the defendants violating CA Civil Code's is a repeated pattern that has occurred on multiple complaints filed within the Los Angeles Superior Court, including Ms. Victor's, a pattern that has not changed. The Defendants unlawful violations of all California Civil Codes will not stop until the Defendants are forced to stop such unlawful conduct.

508. The Defendants, each of them, had made Wally's a place of employment that constitutes a serious menace to the lives and safety of persons about it. The court must declare and enforce and injunction to restrain the Defendants, each of them, from the operation of the place of employment until all conditions are corrected and stopped indefinitely.

509. The Defendants have engaged in a pattern of behavior where they have discriminated, harassed, and retaliated against employees, especially women, on the basis of their protected characteristics.

510. The Defendants have engaged in a pattern of behavior where they have sexually harassed, sexually battered, and assaulted employees, especially women, in part on the basis of their sex. These employees, which include Ms. Victor, did not have the availability to all protections, all rights, and all remedies that should be available to them under state law. These women, which includes Ms. Victor, had their civil rights stolen from them by the Defendants, each of them.

511. The Defendants acted to aid and abet, and/or conspire with the other to violate all of the CA Civil Codes mentioned herein. The Defendants actions were willful, cruel, malicious, and intentional. At all relevant times the Defendants acted with complete disregard of Ms. Victor's rights and feelings. The Defendants acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury and humiliation to Ms. Victor.

512. Ms. Victor, as a direct result of the Defendants violating the CA Civil Codes mentioned herein, has suffered, and continues to suffer great pain of mind and body, shock,

humiliation, embarrassment, emotional distress, physical manifestations, loss of self-esteem, disgrace, loss of enjoyment of life, has developed hypervigilance, loss of professional reputation, loss of future wages, psychological harm, sleeplessness, nervousness, mental anguish, fear, anxiety, constant fear of eminent doom, inconsistent weight loss and gain, and financial turmoil.

513. Ms. Victor constantly has upset stomachs or digestive problems including constipation or constant nausea, low energy, aches, pains, tense muscles, rapid heartbeats, dry mouth and difficulty swallowing, and often grinds her teeth or clenches her jaw when her anxiety is triggered.

514. The Defendants unlawful conduct has affected Ms. Victor's mood leaving her feeling overwhelmed especially with the desire to take control of a bias litigation. Ms. Victor has trouble relaxing and quieting her mind, leaving her to feel the need to avoid others which then results in loneliness, worthlessness, and severe depression.

515. Ms. Victor is constantly worrying and constantly seeing only the negative. The Defendants unlawful conduct has not only made Ms. Victor doubt all of humanity but the entire judicial system which causes her thoughts to race, it also causes both fear and sadness as she has bore witness to the law being broken and corruption covering it up.

516. Ms. Victor has suffered hair loss, bad acne, has developed eczema, struggles to remain focused and motivated, and struggles every day to get through daily activities, all as a direct result of the Defendants, each of them, unlawful conduct.

517. Ms. Victor, as a result of the Defendants continued violations of the CA Civil codes mentioned above, has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings, and/or incurred and will continue to incur expenses for medical and psychological treatment, therapy, and/or counseling.

518. Due to Ms. Victor's suffering from the damages causes by the Defendants unlawful conduct while violating all of the CA Civil Codes mentioned herein continuously, Ms. Victor is entitled to general damages, economic and non economic damages, consequential damages, punitive and exemplary damages, special damages, future damages, interest, and injunctive relief.

519. Ms. Victor has incurred, and will continue to incur, attorney fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs in addition to all penalties she is owed for the Defendants violations of the above mentioned CA Civil Codes.

520. Ms. Victor is entitled to move the Court to grant and enforce permanent restraining orders on the Defendants, each of them, as well DOES 1-100, inclusive, who have a personal interest in this case and would seek to cause further harassment, oppression, discrimination, and/or harm Ms. Victor in retaliation for filing her complaint for damages.

521. WHEREFORE, Ms. Victor requests judgement as is further set below.

**TWENTY NINTH CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF RACE**
**(IN VIOLATION OF CA GOVERNMENT CODE 8315)**
***AGAINST ALL DEFENDANTS***

522**.** Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

523. The Defendants, each of them, have discriminated against Ms. Victor, and other employees and customers, on the basis of their race on a variety of occasions. The Defendants racial discrimination is continuous and has yet to be stopped.

524. This statue defines racial discrimination as:

> "*Any distinction, exclusion, restriction or preference based on race, color, descent, or national or ethnic origin which has the purpose or effect of nullifying or impairing recognition, enjoyment or exercise, on an equal footing, of human rights and fundamental freedoms in the political, economic, social, cultural, or any other field of public life.*"

525. The Defendants, each of them, discriminated against Ms. Victor on the basis of her race, color, descent, and/or her ethnic origin. The Defendants, each of them, have discriminated against other employees and customers on the basis of their race, color, descent, and/or their ethnic origin. The Defendants engaged in such conduct maliciously and intentionally to ensure Ms. Victor, and other people of color, could not enjoy their equal human rights and fundamental freedoms in every field of public life.

526. The Defendants intentionally racially discriminated against Ms. Victor with the intent to harm Ms. Victor as described herein. Such conduct was extreme, outrageous, and done with malice, and would be deemed highly offensive to a reasonable person. Ms. Victor is a reasonable person and found the Defendants conduct to be highly offensive.

527. Ms. Victor is informed and believes that the Defendants intended to cause fear, physical injury, and/or pain and suffering to Ms. Victor. Ms. Victor is informed and believes that

the Defendants took enjoyment and found pleasure in racially discriminating her. In committing the acts alleged, the Defendants, each of them, are guilty of fraud, oppression, and malice and therefore Ms. Victor is entitled to an award of punitive and exemplary damages in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

528. As a direct result of the Defendants conduct, each of them, Ms. Victor has suffered and will continue to suffer harm and economic damages. Ms. Victor will incur and will continue to incur damages in the future for the cost of future care, in an amount to be determined at trial.

529. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

530. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTIETH CAUSE OF ACTION**
**FAILURE TO COMBAT DISCRIMINATION IN VIOLATION OF STATE POLICY**
***AGAINST ALL DEFENDANTS***

531. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

532. CA Government Code section 11139.8, subdivision (a), states:

> "*The Legislature finds and declares all of the following: (1) California is a leader in protecting civil rights and preventing discrimination, (2) California's robust nondiscrimination laws include protections on the basis of sexual orientation, gender identity, and gender expression, among other characteristics, (6) it is the policy of the State of California to promote fairness and equality and to combat discrimination.*"

533. The Defendants, each of them, have discriminated against Ms. Victor, and other employees and customers, on the basis of their race, ethnic origin, ancestry, sex, and genetic information on a variety of occasions. The Defendants discrimination is continuous and has yet to be stopped.

534. All of Ms. Victor's civil rights were denied and/or violated during her employment with the Defendants and through the legal process of suing the Defendants for their unlawful conduct. Ms. Victor was discriminated against, and continues to be discriminated against, by the Defendants, each of them, for her specific protected characteristics.

535. Not once during Ms. Victor's employment did the Defendants promote fairness or equality towards Ms. Victor.

536. Not once during this three year litigation did the Defendants or their legal counsel promote fairness and equality.

537. Not once during Ms. Victor's employment with the Defendants or during this three year litigation was discrimination combatted, in fact, it escalated, in violation of this statue and against the policies of the State of California.

538. The Defendants intentionally discriminated against Ms. Victor with the intent to harm Ms. Victor as described herein. Such conduct was extreme, outrageous, and done with malice, and would be deemed highly offensive to a reasonable person. Ms. Victor is a reasonable person and found the Defendants conduct to be highly offensive.

539. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants intended to cause fear, physical injury, and/or pain and suffering to Ms. Victor.

540. Ms. Victor is informed and believes that the Defendants took enjoyment and found pleasure in discriminating her for her protected characteristics.

541. In committing the acts alleged, the Defendants, each of them, are guilty of fraud, oppression, and malice and therefore Ms. Victor is entitled to an award of punitive and exemplary damages in an amount to be determined at trial, in a sum appropriate to punish and make an example of the Defendants, each of them.

542. As a direct result of the Defendants conduct, each of them, Ms. Victor has suffered and will continue to suffer harm and economic damages. Ms. Victor will incur and will continue to incur damages in the future for the cost of future care, in an amount to be determined at trial.

543. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

544. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTY FIRST CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

545. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

546. At all times relevant herein, the FEHA was in full force and effect and was binding on the Defendants, each of them.

547. This statue requires the Defendants to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under FEHA, including

complaining of discrimination or harassment on the basis of sex, race, color, national origin, ancestry, or genetic information.

548. The Defendants, each of them, aided and abetted, conspired, and/or encouraged one another to take actions or make comments to and/or about Ms. Victor that exhibited discriminatory, harassing, and retaliatory motivations, intentions, and consciousness.

549. As alleged herein, during Ms. Victor's employment with the Defendants, the Defendants intentionally engaged in discrimination and harassment, about which Ms. Victor complained to the Defendants about being retaliated against, discriminated against, and harassed for her protected characteristics.

550. Ms. Victor reported each individual Defendant to the appropriate supervisors. Ms. Victor reported the Defendants sexual harassment, sexual battery, assault, battery, discrimination, bullying, and retaliation.

551. In response to Ms. Victor's multiple complaints, the Defendants, each of them, subjected Ms. Victor to a torturous work environment and banned her from enjoying accommodations other employees were allowed to enjoy.

552. The Defendants actions and omissions were adverse employment actions because they materially and adversely affected the terms, conditions, or privileges of Ms. Victor's employment and were likely to impair Ms. Victor's job performance.

553. Ms. Victor was subjected to a change in her work schedule, instead of being scheduled for busy evening shifts, she got the less desired shifts where less tips would be made by Ms. Victor. Ms. Victor was threatened verbally multiple times of her future termination,

including, but not limited to, the warnings manager Ms. Jimenez gave Ms. Victor of the other managers goal to fire her, and, the times Ms. Victor would show up to work and other hostesses would hug her and say “goodbye” stating they’ll miss her, prior to Ms. Victor’s actual wrongful termination.

554. Ms. Victor’s multiple complaints against individual Defendants was a substantial motivating reason for the Defendants decision to take adverse actions against Ms. Victor.

555. The decision to terminate Ms. Victor’s employment was in retaliation for Ms. Victor engaging in protected activity, including her complaints described herein.

556. By reason of the continuous nature of the Defendants unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

557. Ms. Victor was harmed by the Defendants actions, and the Defendants actions were a substantial factor in causing Ms. Victor pain and suffering. As a direct result of the Defendants willful, knowing, malicious, and intentional retaliation against Ms. Victor, she has suffered and will continue to suffer pain, extreme and severe mental anguish and emotional distress. Ms. Victor has incurred and will continue to incur medical expenses and other incidental expenses. Ms. Victor has suffered a loss of earnings and other employment benefits and job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be proven at trial.

558. Ms. Victor is informed and believes that the Defendants outrageous conduct described herein was done with malice, oppression, and fraud and in reckless disregard of Ms. Victor’s rights under FEHA.

559. The Defendants, each of them, authorized, condoned, ratified, aided and abetted, and/or conspired with one another or for each other the outrageous and despicable conduct alleged herein, justifying an award of exemplary and punitive damages owed to Ms. Victor, in a sum appropriate to punish and make an example of the Defendants, each of them.

560. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

561. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTY SECOND CAUSE OF ACTION**
**EMPLOYMENT DISCRIMINATION IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

562. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

563. At all times relevant herein, the FEHA was in full force and effect and was binding on the Defendants, each of them.

564. This statue requires the Defendants to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under FEHA.

565. CA Government Code section 12940, subdivision (a) states that it is an unlawful employment practice for an employer to discriminate against the person in compensation or in terms, conditions, or privileges of employment because of that persons race, color, ancestry, genetic information, or sex.

566. At all times relevant herein, Ms. Victor was a member of a protected class.

567. During Ms. Victor's employment with the Defendants, Ms. Victor performed her work competently and in a satisfactory manner.

568. During Ms. Victor's employment with the Defendants, the Defendants, each of them, engaged in an ongoing pattern of discrimination.

569. The Defendants intentionally and maliciously discriminated against Ms. Victor for her protected characteristics. The Defendants, each of them, intentionally and maliciously discriminated against other employees based on their sex, race, color, ancestry, and/or genetic information in violation of FEHA.

570. The Defendants have discriminated against Ms. Victor and continue to discriminate against Ms. Victor based on her protected characteristics in violation of the FEHA.

571. As a result of the Defendants unlawful employment practices, Ms. Victor has suffered and continues to suffer harm, including, but not limited to, loss of earnings, loss of future benefits, and other financial losses as well as non-economic damages. Ms. Victor claims such amounts as damages together with prejudgement interest pursuant to CA Civil Code sections 3287 and/or 3288 and/or any other provisions of law providing for prejudgement interest.

572. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered and will continue to suffer mental anguish and emotional distress and has incurred and will continue to incur medical expenses as a result. Ms. Victor is informed and believes that she will experience mental anguish and emotional distress, as well as pain and suffering, for a period in the future that she cannot presently ascertain, all in an amount to be determined at trial.

573. The Defendants actions demonstrated that they will continue to engage in the pattern or practice of unlawful employment discrimination prohibited by FEHA unless they are enjoined pursuant to the police power granted by CA Government Code sections 12920 and 12920.5, from failing or refusing to comply with the mandates of FEHA.

574. The Defendants actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure female employees and employees of color, including Ms. Victor, in conscious disregard of her rights.

575. Unless the Defendants, each of them, are enjoined, pursuant to CA Government Code section 12965, subdivision (c), from failing or refusing to comply with the mandates of FEHA, female employees and employees of color right to seek or hold employment free of unlawful discrimination will continue to be violated.

576. By reason of the continuous nature of the Defendants unlawful conduct, the continuing violations doctrine is applicable to all violations alleged herein.

577. Ms. Victor is informed and believes that the Defendants outrageous conduct described herein was done with malice, oppression, and fraud and in reckless disregard of Ms. Victor's rights under FEHA. The Defendants, each of them, authorized, condoned, ratified, aided and abetted, and/or conspired with one another or for each other's outrageous and despicable conduct alleged herein, justifying an award of exemplary and punitive damages owed to Ms. Victor, in a sum appropriate to punish and make an example of the Defendants, each of them.

578. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

579. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTY THIRD CAUSE OF ACTION**
**QUID PRO QUO SEXUAL HARASSMENT IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

580. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

581. At all times relevant herein, the FEHA was in full force and effect and was binding on the Defendants, each of them.

582. This statue requires the Defendants to refrain from retaliating against any employee for opposing practices forbidden by the FEHA or who asserts rights under FEHA.

583. The Defendants, each of them, and customers encouraged by the Defendants, made unwanted sexual advances to Ms. Victor and engaged in physical conduct of a sexual nature.

584. During the five months Ms. Victor worked for Wally's, the Defendants made constant unwelcome sexual advances towards Ms. Victor. The Defendants allowed customers, especially their "VIP" customers, to make constant unwelcome sexual advances towards Ms. Victor.

585. After Ms. Victor denied the Defendants, each of them, sexual advances and after denying the Defendants "VIP" customers sexual advances, Ms. Victor attempted to report multiple complaints to the supervisors at Wally's. Ms. Victor expected that such complaints would be given to the HR department directly and immediately, however, the Defendants, each

of them, aided and abetted, coerced, and/or conspired with one another to ensure Ms. Victor's complaints never reached HR. In retaliation for denying the Defendants sexual advances and in retaliation for reporting such sexual advances, the Defendants wrongfully terminated Ms. Victor.

586. The terms of Ms. Victor's employment and favorable working conditions were made contingent, by words and conduct, and Ms. Victor's acceptance of the Defendants sexual advances and conduct and Ms. Victor's acceptance of the sexual advances and conduct of the Defendants "VIP" customers.

587. The Defendants, each of them, committed their tortious and wrongful acts in the course and scope of their employment or in their full capacity, and at the time of the Defendants conduct, each of them, each Defendant was employed with Wally's, and most Defendants were in supervisor roles.

588. The Defendants created, fostered, tolerated, and condoned a work environment that would be considered severely hostile to a reasonable person. Ms. Victor is a reasonable person and is informed and believes that the Defendants intentionally created, fostered, tolerated, and condoned a severely hostile work environment.

589. The Defendants, each of them, participated in, assisted, or encouraged, the harassing conduct of one another.

590. The Defendants ratified the conduct of one another in failing to take immediate and appropriate corrective action.

591. The Defendants are liable and responsible for the acts of their managers, agents, supervisors, and employees under CA Government Code section 12940, subdivision (j) because

the Defendants knew of or had knowledge of said conduct and failed to take timely and appropriate corrective action by failing and refusing to remedy the hostile work environment and by failing and refusing to take all reasonable steps to prevent harassment from occurring by permitting all Defendants and customers to continuously harass Ms. Victor.

592. Ms. Victor was harmed as a result of the Defendants unlawful and disgraceful conduct.

593. The Defendants conduct, each of them, was a substantial factor in causing Ms. Victor harm.

594. The Defendants, each of them, are also liable for the harassment of Ms. Victor under principals of vicarious liability and are responsible for damages caused by such conduct.

595. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

596. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

597. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

598. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTY FOURTH CAUSE OF ACTION**
**UNLAWFUL COERCION IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

600. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

601. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

602. CA Government Code section 12940, subdivision (i) makes it unlawful for any person to compel or coerce the doing of any of the acts forbidden under this part, or an attempt to do such.

603. CA Government Code section 12948 provides that a violation of CA Civil Code section 51 or 51.5, is a violation of FEHA. The Defendants, each of them, violated both CA Civil Code section 51 and 51.5, which is a violation of FEHA.

604. The Defendants, each of them, having been informed by Ms. Victor and other employees that its treatment of female employees and employees of color was in violation of the laws of the State of California, knowingly compelled and coerced its employees to engage in practices that violated FEHA, the Unruh Civil Rights Act, and CA Civil Code 51.5.

605. The Defendants, each of them, ignored all complaints by Ms. Victor and other employees that their differential treatment of female employees and employees of color was unlawful. Even after Ms. Victor's objections the Defendants continued to engage in discriminatory conduct and coerced other staff members to do the same.

606. Without the issuance of appropriate injunctive relief and other equitable relief, the Defendants will continue to compel and coerce it's employees to discriminate against employees and customers for their protected characteristics which is protected by the Unruh Civil Rights Act.

607. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

608. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

609. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

610. WHEREFORE, Ms. Victor requests judgement as is further set below.

## THIRTY FIFTH CAUSE OF ACTION

**HOSTILE WORK ENVIRONMENT - SEXUAL HARASSMENT IN VIOLATION OF FEHA**

**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**

***AGAINST ALL DEFENDANTS***

611. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

612. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

613. Ms. Victor is an “applicant” and a “person providing services pursuant to a contract” under CA Government Code section 12940, subdivision (j).

614. The Defendants are “employers” and each individual Defendant is a “person” under CA Government Code section 12940, subdivision (j).

615. Ms. Victor was subjected to unwanted harassing conduct on the basis of her gender in violation of the FEHA.

616. The Defendants, each of them, participated in, assisted or encouraged the harassing conduct. And each individual Defendant is also personally liable for such harassment under the FEHA.

617. The unlawful conduct of the Defendants, each of them, as alleged herein, was so severe, widespread, or persistent to alter the terms and conditions of employment and was sufficiently severe and/or pervasive such that it created a hostile and abusive work environment.

618. The Defendants created, fostered, tolerated, and condoned a work environment that would be considered severely hostile and abusive to a reasonable person. Ms. Victor is a

reasonable person and is informed and believes, and based thereon alleges, that the Defendants intentionally created, fostered, tolerated, and condoned a severely hostile and abusive work environment.

619. The Defendants, each of them, participated in, assisted, or encouraged, the harassing conduct of one another creating a hostile and abusive work environment.

620. The Defendants ratified the conduct of one another in failing to take immediate and appropriate corrective action, to prevent a hostile and abusive work environment.

621. The Defendants are liable and responsible for the acts of their managers, agents, supervisors, and employees under CA Government Code section 12940, subdivision (j) because the Defendants knew of or had knowledge of said conduct and failed to take timely and appropriate corrective action by failing and refusing to remedy the hostile work environment and by failing and refusing to take all reasonable steps to prevent harassment from occurring by permitting all Defendants and customers to continuously harass Ms. Victor.

622. Ms. Victor was harmed as a result of the Defendants unlawful and disgraceful conduct.

623. The Defendants, each of them, unlawful conduct was a substantial factor in causing Ms. Victor harm.

624. The Defendants, each of them, are also liable for the harassment of Ms. Victor and for a hostile and dangerous work environment, under principals of vicarious liability and are responsible for damages caused by such conduct.

625. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

626. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

627. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

628. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTY SIXTH CAUSE OF ACTION**
**SEXUAL FAVORITISM IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

629. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

630. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

631. There was a widespread sexual favoritism in the work environment during Ms. Victor's time as an employee at Wally's.

632. As alleged herein, Mr. Navarro had a sexual relationship with other employees who did not deny his sexual advances and, as a result, they were not denied work opportunities and were not retaliated against.

633. By contrast, when Ms. Victor denied sexual advances from all of the Defendants and the Defendants customers, and by reporting them to the appropriate managers and supervisors, Ms. Victor got less work shifts, and less busy work shifts, until she was wrongfully terminated in retaliation by the Defendants.

634. The sexual favoritism was severe and pervasive.

635. A reasonable person in Ms. Victor's circumstances would have considered the work environment to be hostile or abusive because of the widespread sexual favoritism. Ms. Victor is a reasonable person and considered the work environment to be hostile or abusive because of the widespread sexual favoritism.

636. The Defendants, each of them, participated in, assisted, or encouraged, the sexual favoritism.

637. The Defendants ratified the conduct of one another in failing to take immediate and appropriate corrective action, to prevent a hostile and abusive work environment because of the sexual favoritism.

638. The Defendants are liable and responsible for the acts of their managers, agents, supervisors, and employees under CA Government Code section 12940, subdivision (j) because the Defendants knew of or had knowledge of said conduct and failed to take timely and appropriate corrective action by failing and refusing to remedy the hostile work environment

and by failing and refusing to take all reasonable steps to prevent sexual favoritism from occurring.

639. Ms. Victor was harmed as a result of the Defendants unlawful and disgraceful conduct.

640. The Defendants unlawful conduct, each of them, was a substantial factor in causing Ms. Victor harm.

641. As a direct result of the Defendants actions and inactions alleged herein, Ms. Victor has suffered and continues to suffer extreme physical and emotional distress, financial hardship, wage losses, humiliation, embarrassment, shock, mental and physical pain, psychological damage, emotional distress, and other damages in an amount to be proven at trial.

642. The above referenced acts of the Defendants were authorized, condoned, ratified, and encouraged by each Defendant whom were officers, supervisors, or managing agents of all Defendants, and were done intentionally, with malice and cruelty, entitling Ms. Victor to an award of punitive and exemplary damages in an amount appropriate to punish the Defendants and make an example of all Defendants, each of them.

643. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

644. WHEREFORE, Ms. Victor requests judgement as is further set below.

**<u>THIRTY SEVENTH CAUSE OF ACTION</u>**

**FAILURE TO PREVENT DISCRIMINATION IN VIOLATION OF FEHA**

**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**

***AGAINST ALL DEFENDANTS***

645. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

646. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

647. FEHA requires the Defendants, among other things, "*to take all reasonable steps necessary to prevent discrimination and harassment from occurring*."

648. In perpetrating the above described acts and failures to act, the Defendants, each of them, violated these provisions by failing to take all reasonable steps necessary to prevent such discrimination based on race, color, ancestry, genetic information, and/or sex. These acts and failures to act include, but are not limited to: failing to implement policies, practices, and procedures and/or having ineffective policies, practices, and procedures regarding the Defendants obligations to refrain from discrimination; failing to implement policies, practices, and procedures regarding the handling of complaints of discrimination; failing to investigate when discrimination was reported, despite there being such reports; failing to provide any/or adequate education, training, or information to their personnel, and most particularly to management and supervisory personnel with regard to policies and procedures regarding preventing discrimination; failing to appoint a qualified neutral third party to investigate an employees allegations; and failing to take permanent remedial steps reasonably calculated to end the discrimination and deter future discrimination.

649. The Defendants failed to express strong disapproval of discrimination, inform and explain to Ms. Victor its policies against discrimination and what procedures were available to

report discrimination to the Defendants and/or about Ms. Victor's legal rights to a discrimination free workplace, or develop appropriate sanctions for those who commit discrimination.

650. The Defendants knew and/or should have known of the discrimination by such individual Defendants, was informed of the discriminatory conduct of such individual Defendants and ratified, approved, and authorized the conduct. The Defendants failed to take preventative actions to avoid that conduct, and subsequently failed to stop and/or further prevent the same conduct. The Defendants failed to take preventative and corrective steps reasonably calculated to prevent Ms. Victor's discrimination. Such discrimination by the Defendants, each of them, was condoned, encouraged, tolerated, and ratified.

651. Prior to the incidents alleged herein and during all relevant times herein, the Defendants failed to provide to its supervisory employees effective training, education, or information regarding discrimination; the prohibition against the prevention and correction of discrimination; and the remedies available to victims of discrimination; all in violation of its duties as an employer under CA Government Code 12950.1.

652. During all relevant times alleged herein, the Defendants failed to take reasonable steps to prevent discrimination from being inflicted against Ms. Victor. The Defendants failure to take all reasonable steps to prevent discrimination was a substantial factor in causing Ms. Victor harm.

653. As a direct result of the Defendants unlawful actions, Ms. Victor has suffered and will continue to suffer psychological injuries, extreme and severe mental anguish, and emotional distress. Ms. Victor has incurred and will continue to incur medical expenses and other

incidental medical expenses. Ms. Victor has suffered and will continue to suffer loss of earnings and other employment benefits or job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

654. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

655. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

656. WHEREFORE, Ms. Victor requests judgement as is further set below.

**THIRTY EIGHTH CAUSE OF ACTION**
**FAILURE TO PREVENT SEXUAL HARASSMENT IN VIOLATION OF FEHA**
**(IN VIOLATION OF CA GOVERNMENT CODE 12940, ET SEQ.)**
***AGAINST ALL DEFENDANTS***

657. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

658. At all relevant times herein, the FEHA was in full force and effect binding on the Defendants, each of them.

659. FEHA requires the Defendants, among other things, "*to take all reasonable steps necessary to prevent discrimination and harassment from occurring.*"

660. In perpetrating the above described acts and failures to act, the Defendants, each of them, violated these provisions by failing to take all reasonable steps necessary to prevent such harassment. These acts and failures to act include, but are not limited to: failing to implement policies, practices, and procedures and/or having ineffective policies, practices, and procedures regarding the Defendants obligations to refrain from harassment; failing to implement policies, practices, and procedures regarding the handling of complaints of harassment; failing to investigate when harassment was reported, despite there being such reports; failing to provide any/or adequate education, training, or information to their personnel, and most particularly to management and supervisory personnel with regard to policies and procedures regarding preventing harassment; failing to appoint a qualified neutral third party to investigate an employees allegations; and failing to take permanent remedial steps reasonably calculated to end the harassment and deter future harassment.

661. The Defendants failed to express strong disapproval of harassment, inform and explain to Ms. Victor its policies against harassment and what procedures were available to report harassment to the Defendants and/or about Ms. Victor's legal rights to a harassment free workplace, or develop appropriate sanctions for those who commit harassment.

662. The Defendants knew and/or should have known of the harassment by such individual Defendants, was informed of the harassing conduct of such individual Defendants and ratified, approved, and authorized the conduct. The Defendants failed to take preventative

actions to avoid that conduct, and subsequently failed to stop and/or further prevent the same conduct. The Defendants failed to take preventative and corrective steps reasonably calculated to prevent Ms. Victor's harassment. Such discrimination by the Defendants, each of them, was condoned, encouraged, tolerated, and ratified.

663. Prior to the incidents alleged herein, and during all relevant times herein, the Defendants failed to provide to its supervisory employees effective training, education, or information regarding harassment and retaliation, the prohibition against the prevention and correction of harassment, and the remedies available to victims of harassment; all in violation of its duties as an employer under CA Government Code 12950.1.

664. During all relevant times herein, the Defendants failed to take reasonable steps to prevent harassment from being inflicted against Ms. Victor. The Defendants failure to take all reasonable steps to prevent harassment was a substantial factor in causing Ms. Victor harm.

665. As a direct result of the Defendants unlawful actions, Ms. Victor has suffered and will continue to suffer psychological injuries, extreme and severe mental anguish, and emotional distress. Ms. Victor has incurred and will continue to incur medical expenses and other incidental medical expenses, in an amount to be determined at trial.

666. Ms. Victor has suffered and will continue to suffer loss of earnings and other employment benefits or job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

667. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms.

Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

668. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

669. WHEREFORE, Ms. Victor requests judgement as is further set below.

## THIRTY NINTH CAUSE OF ACTION
## NEGLIGENT HIRING AND RETENTION
***AGAINST ALL DEFENDANTS***

670. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

671. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants and its agents, affiliates, subsidiaries, partners, officers, etc., learned that the Defendants, each of them, had been sexually assaulting and harassing female employees and customers; in addition to learning that the Defendants, each of them, had been discriminating against employees and customers because of their race, sex, color, ancestry, and/or genetic information; and failed to take appropriate and corrective action.

672. Ms. Victor is informed and believes, and based thereon alleges, that had the Defendants, the HR department, or any other responsible agents taken prompt and corrective

action against the Defendants, that Ms. Victor, and any other Plaintiff who has suffered, would not have been sexually harassed, abused, retaliated against, or discriminated against.

673. The Defendants, each of them, owed Ms. Victor a duty of care to act in a reasonable and ordinary manner so as not to cause Ms. Victor foreseeable harm.

674. The Defendants, each of them, failed to use ordinary and reasonable care in order to avoid injury to Ms. Victor. This includes, but is not limited to, the Defendants failure to exercise a duty of care to avoid the Defendants harassment, retaliation, and discrimination of female or ethnic employees, including Ms. Victor, causing multiple injuries.

675. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants knew or should have known that Ms. Victor was being subjected to sexual harassment, discrimination, among other things because the Defendants had been reported against prior to Ms. Victor's complaint.

676. Ms. Victor is informed and believes, and based thereon alleges that despite being informed of the Defendants unlawful conduct, the Defendants, and each of them, failed to discipline the Defendants and kept them in their employ, thereby ratifying said unlawful conduct.

677. The unlawful conduct of the Defendants constitutes negligence and is actionable under the laws of the State of California.

678. As a direct result of the acts of the Defendants, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. Ms. Victor has incurred and

will continue to incur medical expenses and other incidental medical expenses, in an amount to be determined at trial.

679. Ms. Victor has suffered and will continue to suffer loss of earnings and other employment benefits or job opportunities. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

680. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

681. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

682. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTIETH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
***AGAINST ALL DEFENDANTS***

683. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

684. A person intentionally inflicts emotional distress when he/she engages in extreme and outrageous conduct with either an intent to cause emotional distress or reckless disregard of the probability of causing emotional distress.

685. The Defendants, each of them, owed Ms. Victor a duty of care not to cause Ms. Victor emotional distress.

686. As alleged herein, the Defendants knowingly harassed Ms. Victor, causing her severe emotional distress.

687. The Defendants further caused Ms. Victor severe emotional distress by conspiring against Ms. Victor and terminating her employment for discriminatory and retaliatory reasons.

688. The Defendants were aware that treating Ms. Victor in the manner alleged herein, including depriving Ms. Victor of her livelihood, would devastate Ms. Victor and cause her extreme hardship.

689. The Defendants breached their duty to Ms. Victor by way of their own conduct, as alleged herein.

690. By engaging in the above described unlawful conduct, the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing emotional distress, and actually did cause severe emotional distress.

691. The Defendants knowing disregard for the safety of Ms. Victor and deliberate failure to monitor or control their behavior caused Ms. Victor to be repeatedly harassed, discriminated against, abused, and retaliated against.

692. As alleged above, the Defendants engaged in extreme and outrageous conduct, including, but not limited to, intentionally, maliciously, and recklessly sexually harassing, sexually assaulting, and discriminating against Ms. Victor; retaliating against Ms. Victor for reporting sexual harassment, sexual assault, sexual battery, and discrimination; conducting flawed and inadequate investigations into Ms. Victor's claims of sexual harassment, sexual assault, sexual battery, and discrimination; prejudicing such investigations by prematurely and incorrectly closing such investigations or never beginning such investigations; refused to discipline the harassers and/or assaulters and instead allowing them to maintain supervisory roles at the company and/or allowed them to continue to dine at Wally's and continue to interact with Ms. Victor and harass her and others; failing to provide resources and adequate lawful procedures for receiving and processing complaints of sexual harassment, sexual assault, sexual battery, and discrimination; failing to provide sexual harassment training for employees that could have mitigated or even prevented the sexual harassment; and creating and perpetuating a hostile work environment in which Ms. Victor did not feel safe.

693. The Defendants knew or should have known that Ms. Victor did not want to engage in any unlawful conduct with them. Each Defendant conspired and/or aided and abetted the other to harass, abuse, discriminate, and retaliate against Ms. Victor, amongst other things, displaying intimidation in order to harass, abuse, discriminate, and retaliate against Ms. Victor.

694. As a direct result of the acts of the Defendants, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the

Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

695. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

696. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

697. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTY FIRST CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
***AGAINST ALL DEFENDANTS***

698. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

699. The Defendants, each of them, owed Ms. Victor a duty of care not to cause Ms. Victor emotional distress, including the duty to take all reasonable steps to prevent any discrimination or any harassment.

700. As alleged herein, the Defendants, each of them, engaged in discriminatory, harassing, and retaliatory actions against Ms. Victor with intention and malice and reckless disregard of the probability of causing Ms. Victor to suffer extreme emotional distress.

701. The Defendants breached their duty to Ms. Victor by way of their own conduct, as alleged herein.

702. As alleged herein, the Defendants knowingly harassed Ms. Victor based on her race, sex, color, ancestry, and genetic information, causing her severe emotional distress.

703. The Defendants further caused Ms. Victor emotional distress by conspiring against Ms. Victor and terminating her employment for discriminatory and retaliatory reasons.

704. Such conduct was done in a careless or negligent manner, without consideration for the effect of such conduct upon Ms. Victor's well being.

` 705. The Defendants knew, or should have known, that treating Ms. Victor in the manner alleged herein, including depriving Ms. Victor of her livelihood, would devastate Ms. Victor and cause Ms. Victor extreme hardship.

706. As a direct result of the Defendants negligent conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

707. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms.

Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

708. As a direct result of the Defendants conduct as alleged herein, Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore is entitled to such reasonable attorney's fees and costs.

709. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTY SECOND CAUSE OF ACTION**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(IN VIOLATION OF GOVERNMENT CODE §12920 & §12920.5, 12921, 12923, 19574, 19574.1, 19574.5, 11440.40)**
***AGAINST ALL DEFENDANTS***

710. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

711. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 12920, which states:

> "*It is here by declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry… genetic information…Further, the practice of discrimination because of race, color…sex, gender…national origin, ancestry… or genetic information in housing accommodations is declared to be against public policy…This part shall be deemed an exercise of the police power of the*

> *state for the protection of the welfare, health, and peace of the people of this state.*"

712. A motivating factor in the termination of Ms. Victor's employment was the Defendants discriminatory behavior towards Ms. Victor for her protected characteristics.

713. Ms. Victor was discriminated against by the Defendants, each of them, for her race, color, ancestry, and genetic information, not only during her employment at Wally's but also during her lease while living at Zen Hollywood, and throughout this entire three year litigation, which is against the public policy of the State of California.

714. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 12920.5 which states:

> "*In order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons. To that end, this part shall be deemed an exercise of the Legislature's authority pursuant to Section 1, Article XIV of the California Constitution.*"

715. Discrimination has not been eliminated from Wally's nor throughout this labor and employment litigation. Nothing has been done by the Defendants nor the State to prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons, including Ms. Victor. This is in violation of the California Constitution and against public policy of the State of California.

716. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government code section 12921, subdivision (a), which states:

> "*The opportunity to seek, obtain, and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or veteran military status is hereby recognized as and declared to be a civil right.*"

717. Ms. Victor did not obtain and hold employment without discrimination, which is a declared civil right.

718. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 12923, subdivision (a), which states:

> "*The Legislature hereby declares that harassment creates a hostile, offensive, or intimating work environment and deprives victims of their statutory right to work in a place free of discrimination when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well being.*"

719. Every shift Ms. Victor had worked during her employment with the Defendants, Ms. Victor was offended, humiliated, harassed, discriminated against, and always put into a heightened state of distress.

720. As alleged herein, Ms. Victor's employment at Wally's was so hostile that it disrupted her emotional tranquility in the workplace and the Defendants completely undermined Ms. Victor's personal sense of well being. The Defendants harassment was in complete violation of this statue and of the public policy of the State of California.

721. The Defendants retaliated against Ms. Victor by failing to adequately investigate her claims of discrimination and failing to take any remedial action.

722. The Defendants knowingly created the working conditions that violated public policy because the Defendants willfully, knowingly, maliciously, and intentionally discriminated against Ms. Victor.

723. The working conditions caused by the Defendants violations of public policy were intolerable for Ms. Victor. When Ms. Victor refused to quit the Defendants wrongfully terminated her.

724. CA Government Code section 19574, subdivision (a), states:

> "*The appointing power, or its authorized representative, may take adverse action against an employee for one or more causes for discipline. Adverse action is only valid if a written notice shall be served upon the employee either personally or by mail and shall include: (1) a statement of the nature of the adverse action; (2) the effective date of the action; (3) a statement of the reasons therefor in ordinary language; (4) a statement advising the employee of the right to answer the notice orally or in writing; and (5) a statement advising the employee of the time within which an appeal must be filed. The notice shall be filed with the board not later than 15 calendar days after the effective date of the adverse action.*"

725. The Defendants did not do a single thing they were obligated to do to ensure the adverse action against Ms. Victor was valid, only solidifying the truth, which is that Ms. Victor was absolutely, one hundred and ten percent wrongfully terminated.

726. Pursuant to CA Government Code section 19574.1, Ms. Victor should have had the legal right to inspect any documents the Defendants had in their possession at the time of her suspension that would have been considered "relevant evidence" supporting their right to

suspend Ms. Victor, but she was not given any documents to review. Ms. Victor should have had the legal right to interview other employees, especially the other employees the Defendants and their counsel have alleged seen Ms. Victor in a "pornographic" state, yet Ms. Victor was also denied this right.

727. The Defendants have accused Ms. Victor, through their legal counsel, of immorality, acts that would constitute a felony (prostitution and extortion amongst other things).

728. If the Defendants abided by CA Government Code section 19574.5 then Ms. Victor's "suspension" would have not exceeded fifteen days. The Defendants did not follow the law to properly take adverse action against Ms. Victor, thereby Ms. Victor is entitled to compensation for the fifteen days she would have been given, with pay, during a proper investigation, in addition to all other damages and penalties applicable by law.

729. The Defendants entire argument that they have been attempting to use to justify Ms. Victor's wrongful termination violates CA Government Code section 11440.40, subdivision (b), which states:

> "*Evidence of specific instances of a complainant's sexual conduct with individuals other than the alleged perpetrator is presumed inadmissible absent an offer of proof establishing its relevance and reliability and that its probative value is not substantially outweighed by the probability that is admission will create substantial danger of undue prejudice or confuse the issue.*"

730. The Defendants, and their counsels, defamation against Ms. Victor is entirely untrue, making their lies, that have had zero evidentiary support, a danger to subject Ms. Victor to further prejudice.

731. The defamation the Defense, and their counsel, have used in this litigation is a tactic used to confuse the issue at hand, which is the Defendants vile, disgusting, and unlawful conduct during Ms. Victor's employment and during this litigation.

732. Ms. Victor was harmed by the Defendants working conditions, and the Defendants working conditions were a substantial factor in causing Ms. Victor harm.

733. As a direct result of the Defendants willful, intentional, and malicious violations of public policy, Ms. Victor has suffered and will continued to suffer. Ms. Victor is therefore entitled to general and compensatory damages in an amount to be determined at trial.

734. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

735. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

736. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

737. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTY THIRD CAUSE OF ACTION**
**RETALIATION AGAINST A WHISTLEBLOWER- VIOLATION OF CA WHISTLEBLOWER PROTECTION**
**(IN VIOLATION OF GOVERNMENT CODE §8547 & §8547.1, 8547.8, 8547.13)**
***AGAINST ALL DEFENDANTS***

738. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

739. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 8547.1 which states:

> "*The legislature finds and declares that state employees should be free to report, waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution. The legislature finds and declares that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business.*"

740. Ms. Victor engaged in protected activity by reporting the Defendants unlawful actions to her employer thus informing the Defendants, each of them, that illegal activities were occurring in the workplace.

741. Ms. Victor, at various times, made such reports to a person with authority over her and to employees who had the authority to investigate, discover, or correct the violations or noncompliance(s). Directly or indirectly the owners, principals, chief executive officers, and/or

the chief financial officer were made aware of Ms. Victor's reports of unlawful and illegal activity and failed to take action to stop such activity to the detriment of Ms. Victor.

742. Ms. Victor knew, or reasonably believed, that the acts and omissions of the Defendants, each of them, were in violation of laws that required that she be provided a workplace free of sexual harassment, discrimination, and retaliation. The laws violated, included, but were, and are not limited to article 1, section 8 of the California Constitution, and multiple CA codes of law.

743. Following Ms. Victor's protected activity, the Defendants retaliated against Ms. Victor as alleged herein, including, but not limited to, making the environment hostile by refusing to take action to stop harassment, discrimination, and retaliation.

744. After Ms. Victor's refusal to quit the Defendants, each of them, were left with no choice but to find and execute a way to wrongfully terminate Ms. Victor.

745. After Ms. Victor's wrongful termination Ms. Victor attempted to report the Defendants unlawful conduct to the CA Labor Commissioner's office, the DFEH, and the EEOC, which caused the Defendants to retaliate further.

746. In violation of the laws of the State of California, a state that provides protection for whistleblowers, Ms. Victor was not free to report fraud, abuse of authority, violation of law, or threat to public health without fear or retribution. In fact, Ms. Victor has been living in fear ever since she has attempted to whistleblow about the Defendants fraud, abuse of authority, violation of laws, and threats they made to her health and safety; as well as the threat the Defendants make to the health and safety of the public while their unlawful conduct continues.

747. Ms. Victor's protected activity was a motivating reason for the Defendants retaliatory conduct.

748. The Defendants retaliatory conduct was in violation of CA Government Code 8547.1.

749. As a direct result of the Defendants unlawful actions and omissions, Ms. Victor has suffered damages as alleged herein.

750. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 8547.8, subdivision (b), which states:

> "*Any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee… for having made a protected disclosure, is subject to a fine not to exceed ten thousand dollars ($10,000) and imprisonment in the county jail for a period not to exceed one year.*"

751. At all relevant times herein, a fundamental policy of the State of California was reflected in CA Government Code section 8547.13, subdivision (d), which states:

> "*A person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against an employee or applicant for employment for having made a protected disclosure, is subject to a fine not to exceed ten thousand dollars ($10,000) and imprisonment in a county jail for up to one year.*"

752. Subdivision (e) of section 8547.13 of the CA Government Code states:

> "*In addition to all other penalties provided by law… a person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against an employee or applicant for employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the*

> *injured party. Punitive damages may be awarded by the court if the acts of the offending party are proven to be malicious. If liability is established, the injured party also shall be entitled to reasonable attorney's fees as provided by law.*"

753. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

754. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered damages in the form of past and future wage loss, other pecuniary losses, mental anguish, and emotional distress in an amount to be determined at trial.

755. Ms. Victor moves the court to order the Defendants, each of them, to pay all statutory and/or civil penalties applicable by State law for each violation they made that went against the public policy of the State of California and for their malicious intention to violate the CA Whistleblower Protection laws.

756. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

757. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTY FOURTH CAUSE OF ACTION**
**UNLAWFUL EMPLOYMENT CONDITIONS IN VIOLATION OF PUBLIC POLICY**
**(IN VIOLATION OF GOVERNMENT CODE §12964.5)**
***AGAINST ALL DEFENDANTS***

758. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

759. CA Government code section 12964.5, subdivision (a), states that it is an unlawful employment practice for an employer, in exchange for a raise or bonus, or as a condition of employment or continued employment, for an employer to require an employee to sign a release of a claim or right.

760. The "release of claim or right" is defined in paragraph (B) of this section, which includes:

> "*Requiring an individual to execute a statement that he or she does not possess any claim or injury against the employer or other covered entity, and includes the release of a right to file and pursue a civil action or complaint with, or otherwise notify, a state agency, other public prosecutor, law enforcement agency, or any court or other governmental entity.*"

761. As alleged herein, the Defendants have added a clause in their arbitration agreement that forces an employee, as a condition of employment, to give up their right to file a claim against the Defendants and denies any and all employees their guaranteed rights and equal protection, in complete violation of this statue.

762. Paragraph (2)(A) of this section describes the following actions as unlawful:

> "*For an employer to require an employee to sign a non-disparagement agreement or other document that purports to deny the employee the right to disclose information about unlawful acts in the workplace, including, but not limited to, information pertaining to sexual harassment.*"

763. The Defendants, each of them, are also in violation of this statue. The Defendants force new employees to sign an agreement and/or acknowledgement that denies the employee the right to disclose information about unlawful acts in the workplace, including sexual harassment, discrimination, retaliation, or civil rights violations.

764. Subdivision (b) of this section states:

> "*Any agreement or document in violation of this section is contrary to public policy and shall be unenforceable.*"

765. The arbitration agreement, despite the Defense counsel never filing a motion to compel arbitration, was and is unenforceable as it goes against public policy of the State of California. There is a reason steps were skipped in order to throw this case into arbitration, steps that are in violation of the laws of the State of California.

766. Based on the altered arbitration agreement and employee acknowledgement presented to the court by the Defense counsel, the Defendants prove that they expect employees, including Ms. Victor to agree, in writing, to terms and/or conditions, to which the Defendants should know or should have reasonably known is prohibited by law.

767. The Defendants arbitration portion of the Handbook tells an employee that they are prohibited from reporting discrimination, sexual harassment, discrimination, and other

chargeable offenses when signing such agreement, which is prohibited by law and against the public policy of the State of California.

768. The Defendants new arbitration agreement should be null and void, not only for Ms. Victor, but for all current and future employees. The Defendants maliciously, intentionally, and knowingly have and continue to use their arbitration portion of the employee Handbook as a tool of manipulation to ensure that past, current, and future employees are unable to report them for chargeable offenses, which is prohibited by law and against the public policy of the State of California.

769. The Defendants created an arbitration clause and agreement for employees, including Ms. Victor, in violation of public policy.

770. The Defendants malicious and intentional acts and omissions are prohibited by law and go against the public policy of the State of California.

771. Provisions of the employment contract, as described herein, that Ms. Victor was required to sign, as a condition of employment, explicitly and unquestionably, violate several provisions of California law and public policy.

772. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, knew that such provisions violated California law and public policy.

773. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants unlawful conduct, as described herein, was substantially motivated by Ms. Victor's opposition to and/or reporting of the actual and/or perceived violations described herein.

774. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

775. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

776. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

777. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

778. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTY FIFTH CAUSE OF ACTION
## INVASION OF PRIVACY
## *AGAINST ALL DEFENDANTS*

779. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

780. CA Business and Professions Code section 22947.2 states:

> "*A person or entity that is not an authorized user, shall not, with actual knowledge, with conscious avoidance of actual knowledge, or willfully, cause computer software to be copied onto the computer of a consumer in this state and use the software to do any of the following: (a) modify, through intentionally deceptive means, any of the following settings related to the computers access to, or use of, the Internet: (1) The page that appears when an authorized user launches an Internet browser or similar software program used to access and navigate the internet. (2) The default provider or Web proxy the authorized user uses to access or search the internet, and (3) The authorized user's list of bookmarks used to access Web pages, (b) Collect, through intentionally deceptive means, personally identifiable information that meets any of the following criteria: (1) It is collected through the use of keystroke-logging function that records all keystrokes made by an authorized user who uses the computer and transfers that information from the computer to another person, (2) It includes all or substantially all of the Web sites visited by an authorized user, other than Web sites of the provider of the software, if the computer software was installed in a manner designed to conceal from all authorized users of the computer the fact that the software is being installed, (c) Prevent, without the authorization of an authorized user, through intentionally deceptive means, an authorized user's reasonable efforts to block the installation of, or to disable, software, by causing the software that the authorized user has properly removed or disabled to automatically reinstall or reactivate on the computer without the authorization of an authorized user, (d) Intentionally misrepresent that software will be uninstalled or disabled by an authorized user's action, with knowledge that the software will not be so uninstalled or disabled, and (e) through intentionally deceptive means, remove, disable, or render inoperative security, anti spyware, or antivirus software installed on the computer.*"

781. CA Business and Professions Code Section 22947.3 states:

> "*A person or entity that is not an authorized user, shall not, with actual knowledge, with conscious avoidance of actual knowledge, or willfully, cause computer software to be copied onto the computer of a consumer in this state and use the software to do any of the*

> *following: (a) Take control of the consumers computer by doing any of the following: (1) Transmitting or relaying commercial electronic mail or a computer virus from the consumer's computer, where the transmission or relaying is initiated by a person other than the authorized user and without the authorization of an authorized user, (2) Accessing or using the consumer's modem or Internet service for the purpose of causing damage to the consumer's computer or of causing an authorized user to incur financial charges for a service that is not authorized by an authorize user (b) Modify any of the following settings related to the computer's access to, or use of, the Internet: (1) An authorized user's security or other settings that protect information about the authorized user for the purpose of stealing personal information of an authorized user, (2) The security settings of the computer for the purpose of causing damage to one or more computers."*

782. CA Business and Professions Code section 22947.4, subdivision (a), states:

> "*A person or entity, who is not an authorized user shall not do any of the following with regard to the computer or consumer in this state: (1) Induce an authorized user to install a software component onto the computer by intentionally misrepresenting that installing software is necessary for security or privacy reasons or in order to open, view, or play a particular type of content, (2) Deceptively causing the copying and execution on the computer of a computer software component with the intent of causing an authorized user to use the component in a way that violates any other provision of this section.*"

783. CA Penal Code Section 631, subdivision (a) states:

> "*Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully without the consent of all parties to the communication, or in any authorized manner, reads, or attempts to read, or to learn the*

> *contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts of things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year.*"

784. CA Penal Code Section 632, subdivision (a) states:

> "*Any person who, intentionally and without consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both fine and imprisonment. If the person has previously been convicted of a violation of this section or section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) per violation, by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.*"

785. During August of 2021, during Ms. Victor's self-representation, her computer and phone devices began to be tampered with as a way for the Defendants to intimidate Ms. Victor, erase or discard of any documents or evidence that she had produced against them, to stalk her, and to ensure that she had little to no way to exercise her civil rights which included reaching out for help to the appropriate Federal and state agencies.

786. At all relevant times alleged herein, Ms. Victor had the right of freedom and privacy and at all relevant times alleged herein, the Defendants, each of them invaded Ms. Victor's freedom and right to privacy. They intentionally and with malice invaded her privacy.

787. Ms. Victor is informed and believes that the invasion of her privacy would constitute a criminal offense under State law, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

788. Ms. Victor is entitled a civil penalty of two thousand five hundred dollars ($2,500) for each violation by each person of CA Penal Code 631.

789. Ms. Victor is entitled to a civil penalty in the amount of ten thousand dollars ($10,000) per each violation by each person for their violations of CA Penal Code 631; and any other penalties applicable by law, in addition to.

790. The Defendants acted to aid and abet, and/or conspire with the other to violate all of the CA Business and Profession Codes mentioned above.

791. The Defendants acted to aid and abet, and/or conspire with the other to violate all of the CA Penal Codes mentioned above.

792. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

793. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

794. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

795. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

796. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

797. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs and restitution.

798. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTY SIXTH CAUSE OF ACTION**

**FRAUD, DECEIT, & PERJURY IN VIOLATION OF CA PENAL CODES**

***AGAINST ALL DEFENDANTS***

799. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

800. CA Penal Code section 27, subdivision (a) states:

> "*The following persons are liable to punishment under the laws of this state: (1) all persons who commit, in part, any crime within this state; (3) all who, being without this state, cause or did, advise or encourage, another person to commit a crime within this state, and are afterwards found therein.*"

801. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, including DOES 1-100, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this complaint. The Defendants each of them have committed crimes within the State of California and, those, without being in the State of California, also advised, encouraged, caused, or did commit a crime within the State of California.

802. CA Penal code section 115, subdivision (a) states:

> "*Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.*"

803. Subdivision (b) of section 115 states that each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section.

804. Every document that has been filed in this litigation was false and filed as genuine within the Stanley Mosk Courthouse and within this arbitration. Each document filed falsely is a separate violation making the Defendants guilty of multiple felonies.

805. CA Penal Code section 133 states:

> "*Every person who practices any fraud or deceit, or knowingly makes or exhibits any false statement, representation, token, or writing, to any witness or person about to be called as a witness upon any trial, proceeding, inquiry, or investigation, whatever, authorized by law, with intent to affect the testimony of such witness, is guilty of a misdemeanor.*"

806. As alleged herein, the Defendants, each of them coerced other employees of Wally's to say that Ms. Victor walked around the restaurant showing nude photos and videos. The text messages which prove the Defendants coercion, was received and lost, intentionally and maliciously, by Mosley & Associates, Ms. Victor's previous legal counsel. The Defendants counsel and Ms. Victor's prior counsel have all submitted documents to the court, under the penalty of perjury, as real and true, which made false statements and false representations.

807. CA Penal Code section 118, subdivision (a) states:

> "*Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilt of perjury.*"

808. The Defendants through their counsel have signed under penalty of perjury multiple pleadings and or documents that they knew, or should have known, to be false, therefore, making the Defendants liable for perjury.

809. Perjury is punishable by imprisonment, to up to four years, pursuant to CA Penal Code section 124.

810. CA Penal Code section 127 states:

> "*Every person who willfully procures another person to commit perjury is guilty of subornation of perjury, and is punishable in the same manner as he would be if personally guilty of the perjury so procured.*"

811. The Defense counsel has committed perjury on behalf of the Defendants, the Defendants, willfully, allowed their counsel to commit such perjury making the Defendants guilty of subornation of perjury.

812. CA Penal Code section 132 states:

> "*Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any book, paper, document, record, or other instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of a felony.*"

813. As alleged herein the Defendants produced fraudulent documents to deceive the court and to conceal the fact that they had not paid Ms. Victor what she is owed in compensation, in violation of this statue. The Defendants violating this section makes them guilty of a yet another felony.

814. Further, the Defendants violated CA Penal Code section 134, which states:

> "*Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to product it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of a felony.*"

815. As alleged herein, the Defendants produced fraudulent documents to deceive the court and to conceal the fact that they had not paid Ms. Victor what she was owed in compensation; to hide the fact that they discriminated against Ms. Victor; to hide the fact that they had sexually harassed and assaulted Ms. Victor; to hide the fact that they had retaliated against Ms. Victor, amongst other things. The Defendants violating this statue makes them guilty of another felony.

816. The Defendants, each of them, are guilty of a public offense and can and should be punished by imprisonment, pursuant to CA Penal Code section 136.1. Any person who "*knowingly and maliciously prevents or dissuades any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law*" or any person who "*knowingly and maliciously attempts to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law*" is guilty of a public offense.

817. Subdivision (d) of CA Penal Code section 136.1 states:

> "*Every person attempting the commission of any act described in subdivisions (a), (b), and (c) is guilty of the offense attempted without regard to success or failure of the attempt. The fact that no person was injured physically, or in*

> *fact intimidated, shall be no defense against any prosecution under this section.*"

818. The Defendants, each of them, including DOES 1-100, inclusive, have spent the past three years ensuring, with malice and intent, that Ms. Victor was prevented from giving testimony at any trial, proceeding, or inquiry authorized by law. Pursuant to subdivision (c) of CA Penal Code section 136.1, the Defendants are guilty of a felony and should face up to four years in prison because the acts committed by the Defendants were in the furtherance of a conspiracy and such acts were committed for the Defendants own pecuniary gain.

819. CA Penal Code section 153, states that a person who has the knowledge of the actual commission of a crime, or takes money or property of another, or any gratuity or reward, upon agreement to conceal that crime or to abstain from prosecution of such crime is punishable by imprisonment.

820. The Defendants, each of them, including DOES 1-100 inclusive, and the Defense counsel knew, or should have known, of all the crimes that the Defendants have engaged in and thereby worked collectively to conceal the Defendants crimes and to ensure the Defendants avoided prosecution for such crimes.

821. The Defendants, during Ms. Victor's employment, termination, and this litigation conspired together and violated CA Penal Code section 182. If two or more people conspire to commit any crime, falsely to move or maintain any suit, action, or proceeding, or to commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws, they are guilty of a felony and could be punished by imprisonment in

jail and a fine of ten thousand dollars ($10,000) or a fine of up to twenty-five thousand dollars ($25,000).

822. The Defendants conspired with one another to commit multiple crimes against Ms. Victor during her employment. The Defendants conspired with one another to falsely move this case into arbitration and maintain this suit in their favor. And the Defendants have committed multiple crimes against multiple Plaintiff's/ victims, including Ms. Victor, making such conspiracy injurious to the public health and to public morals. The Defendants lastly, conspired with one another to obstruct justice. The Defendants did all this malice, oppression, and intention. Thereby, Ms. Victor is entitled to the civil penalty of twenty-five thousand dollars ($25,000) in addition to.

823. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, knew or should have known that they were engaging in fraud, deceit, and perjury and they intentionally and maliciously made false statements and representations to conceal their crimes and to confuse the court.

824. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

825. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

826. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

827. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

828. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

829. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTY SEVENTH CAUSE OF ACTION
## AGGRAVATED MAYHEM
## *AGAINST ALL DEFENDANTS*

830. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

831. CA Penal Code section 205 states:

> "*A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme*

> *indifference to the physical or psychological well-being of another person…For purposes of this section, it is not necessary to prove an intent to kill.*"

832. Aggravated mayhem is a felony punishable my imprisonment.

833. The Defendants unlawfully caused circumstances including manifesting extreme indifference to the physical and psychological well being of Ms. Victor while she was living on the property of Zen Hollywood.

834. The Defendants began their aggravated mayhem in late August, early September of 2021. The Defendants ensured Ms. Victor leased an apartment that was secluded from the rest of the building with no apartment units below, beside, or beneath it. They wanted Ms. Victor secluded so they can mess with her air waves via Wi-Fi and her technology. They planned and hoped their aggravated Mayhem would make Ms. Victor have a psychological break. The Defendants hoped Ms. Victor would be locked up in a psych ward which they attempted to illegally orchestrate, so that Ms. Victor would not be credible in a court of law. The Defendants attempts failed and Ms. Victor escaped and survived their dangerous mayhem.

835. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants knew, or should have known, that their unlawful conduct and the extreme circumstances that they were subjecting Ms. Victor too would result in physical or psychological harm to Ms. Victor.

836. The Defendants unlawful conduct was a substantial factor in causing Ms. Victor harm as well as long lasting post traumatic stress.

837. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants, each of them, including DOES 1-100, inclusive, had the intent to kill her.

838. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

839. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

840. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

841. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

842. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and

exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

843. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

844. WHEREFORE, Ms. Victor requests judgement as is further set below.

## FORTY EIGHTH CAUSE OF ACTION
## HATE CRIME
## *AGAINST ALL DEFENDANTS*

845. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

846. CA Penal Code Section 422.6, subdivision (a), states:

> "*No person, whether or not acting under color of law, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, or threaten any other person in the free exercise or enjoyment of any right or privilege secured to him or her by the Constitution or laws of this states or by the Constitution or laws of the United States in whole or in part because of one or more of the actual or perceived characteristics of the victim listed in subdivision (a) of Section 422.55.*"

847. Further CA Penal Code section 422.55, subdivision (a) defines "hate crime" as a criminal act committed, in whole or in part, because of one or more of the victims actual or perceived characteristics.

848. The Defendants, as stated herein and above, have committed criminal acts, acts committed wholly or partially because of Ms. Victor's race, ethnicity, gender, and/or nationality. Making the Defendants in violation of both CA Penal Code sections 422.6 and 422.55.

849. At all times mentioned herein, Ms. Victor had the right to be free from any threat of force, willful injury, intimidation, oppression, or threats, committed against her on account of her race, ethnicity, gender, and/or nationality.

850. As alleged herein, the Defendants, each of them, including DOES 1-100, inclusive, subjected Ms. Victor to threats of force, willful injuries, intimidation, oppression, and threats, against her person on account of her race, ethnicity, gender, and/or nationality, and/or acted to aid, incite, and/or conspire with other Defendants to deny Ms. Victor her right to be free from any threats of force, willful injuries, intimidation, oppression, and threats, committed against her person on the account of her race, ethnicity, gender, and/or nationality. In doing so, the Defendants committed multiple hate crimes against Ms. Victor, which is codified in CA Penal Codes 422.6 and 422.55.

851. Any person who violates CA Penal Code 422.6 would be facing up to a year in prison for each offense.

852. Pursuant to CA Penal Code section 422.85, the court shall make an order protecting the victim and the victim's family from any further acts of violence, threats, stalking, or harassment by the Defendant.

853. The court must grant Ms. Victor, pursuant to this statue, a an order of protection against the Defendants, each of them. This request should be non-negotiable.

854. CA Penal Code section 31 states:

> "*All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised*

> *and encouraged its commission…or who, by fraud, contrivance, or force… or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed.*"

855. The Defendants, each of them, including DOES 1-100, inclusive, are principals of each and every crime committed as alleged herein.

856. Further, CA Penal Code section 32 states:

> "*Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction, or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony.*"

857. The Defendants have committed multiple felonies and misdemeanors as alleged herein, and their Defense counsel, and DOES 1-100, inclusive, have aided the Defendants to conceal such felonies and misdemeanors with the intent that the Defendants would avoid arrest, trial, conviction, or punishment, making the Defense counsel and all other co-conspirators, including DOES 1-100, inclusive, accessories to the Defendants felonies.

858. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

859. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

860. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

861. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

862. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

863. In addition to, Ms. Victor is entitled to all and any civil or statutory penalties applicable by law.

864.Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

865. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FORTY NINTH CAUSE OF ACTION**

**VIOLATIONS OF THE UNITED STATES AND CALIFORNIA CONSTITUTIONS**

***AGAINST ALL DEFENDANTS***

866. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

867. At all times alleged herein, Ms. Victor possessed certain rights protected by the United States Constitution and the CA Constitution.

868. Section 1 of the CA Constitution states:

> "*All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.*"

869. The CA Constitution, article 1, section 2, subdivision (a), states:

> "*Every person may freely speak, write, and publish his or her sentiments on all subjects…*"

870. Amendment I of the United States Constitution states:

> "*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; of abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.*"

871. The CA Constitution, article 1, section 3, subdivision (a) states:

> "*The people have the right to instruct their representatives, petition the government for redress of grievances, and assemble freely to consult for the common good." Subdivision (b) paragraph (1) further states, "the people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies*

> *and the writings of public officials and agencies shall be open to public scrutiny.*"

872. The Defendants, each of them, including DOES 1-100, inclusive, have violated the US Constitution Amendment V (fifth amendment) which states that no person shall "*be deprived of life, liberty, or property, without due process of law*…" The Defendants have equally violated article 1, section 7 of the CA Constitution, which too states, "*a person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws*".

873. Amendment VII (seventh amendment) of the US Constitution, guarantees the right of a jury trial, "*the right to a jury trial shall be preserved.*" The CA Constitution, article 1, section 16, which also states, "*trial by jury is an inviolate right and shall be secured to all.*"

874. Amendment VIII (eighth amendment) of the US Constitution states "*excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted.*" And the CA Constitution, article 1, section 17 states, "*cruel or unusual punishment may not be inflicted or excessive fines imposed.*"

875. Amendment XIII (thirteenth amendment) of the US Constitution states, "*neither slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.*" And the CA Constitution, article 1, section 6, states, "*slavery is prohibited. Involuntary servitude is prohibited except to punish crime.*"

876. Amendment XIV (fourteenth amendment) of the US Constitution states:

> "*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the states wherein they reside.*

> *No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*"

877. The Defendants have also violated the CA Constitution, article 1, section 8, which states:

> "*A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin.*"

878. The Defendants have ensured, and with malice, that Ms. Victor did not and does not enjoy life or liberty. The Defendants have ensured that Ms. Victor, at all relevant times alleged herein, was unable to obtain safety, happiness, and privacy.

879. As alleged herein, the Defendants, each of them, violated section 2 of the CA Constitution, they also violated Amendment I of the US Constitution. The Defendants, their counsel, and Judge Yolanda Orozco herself, attempted to take away Ms. Victor's guaranteed first amendment rights to get her to stop using her social media platforms to exercise her first amendment rights at three separate legal hearings held directly in the Stanley Mosk Courthouse. The Defendants and their counsel are still, to this day, attempting to take away Ms. Victor's first amendment rights, with intention, malice, and cruelty.

880. The Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired one another to stop Ms. Victor's freedom of speech or of the press, to conceal the Defendants unlawful criminal behavior as well as their own; the Defendants also wanted to

ensure that Ms. Victor was unable to petition the government for a redress of grievances. The Defendants wanted to take away Ms. Victor's guaranteed rights, and have engaged in such unlawful conduct with pleasure.

881. Ms. Victor attempted to use her social media to discuss her case and the corruption throughout, which is indeed the conduct of the people's business. Ms. Victor had the right to discuss the writings and meetings surrounding her litigation as public officials and agencies are and can be open to public scrutiny. But the Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired, several times, to take this right away from Ms. Victor.

882. Ms. Victor has been denied, from the beginning of this litigation, and even worse so during her self-representation, the right to due process of law which has deprived her of her life, liberty, and property, such is a direct result of the Defendants the unlawful conduct, each of them.

883. Ms. Victor was denied all equal privileges both during her employment at Wally's and during this litigation by the Defendants, their counsel, and the court. Ms. Victor has been and continues to be deprived of her life, liberty, and property, and has not once, not a single time, throughout this litigation had the equal opportunity for due process of law. The one constant within this entire litigation, **the one thing that has not changed,** is Ms. Victor's denied right for equal protection of the laws.

884. It has been the duty and goal of the Defendants, each of them, and their legal counsel to ensure Ms. Victor is denied her right to a jury trial, a guaranteed right she has pursuant both the CA Constitution and the US Constitution. The Defendants, each of them, and

their legal counsel knew, or should have known that if this case went to a jury trial Ms. Victor would win on the merits. Knowing such information to be true, the Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired one another to do what needed to be done, even if such actions were illegal and against the public policy of the State of California, to ensure that Ms. Victor does not get a jury trial which is what she has demanded since day one.

885. Ms. Victor's employment at Wally's, her short lease at Zen Hollywood, and this entire litigation has been cruel and unusual punishment for Ms. Victor. Ms. Victor was harassed, assaulted, abused, discriminated against, and retaliated against during her employment at Wally's. Ms. Victor was harassed, assaulted, stalked, had her privacy invaded, was abused, discriminated against, retaliated against, and became a victim of aggravated mayhem and/or attempted murder on the property of Zen Hollywood. And this litigation has been dragged on for three years now which has made the Defendants cruel and unusual punishment drag out for three years of non-stop cruelty and punishment.

886. Ms. Victor has been a slave in this entire litigation, which is prohibited by law, making the Defendants in violation of both these statues. Ms. Victor also holds the Defendants, each of them, responsible for her involuntary servitude on the property of Zen Hollywood, which was and is prohibited by the laws of the State of California and by the laws of the United States Constitution.

887. Ms. Victor, at all relevant times alleged herein, has been and continues to be discriminated against. Ms. Victor's employment at Wally's was terminated due to her sex, race, color, ethnic origin, and/or her genetic information.

888. At all relevant times, the Defendants, each of them, implemented and enforced customs and practices, and such customs and practices were enforced with deliberate indifference to the constitutional rights of potential victims, including Ms. Victor.

889. The Defendants, each of them, aided, abetted, incited, compelled, coerced, or conspired one another to interfere with Ms. Victor's protection and rights guaranteed to her under the laws of the US Constitution and the CA Constitution.

890. As alleged herein, the Defendants intentionally interfered with or attempted to interfere with Ms. Victor's clearly established rights guaranteed under the United States Constitution and the CA Constitution, including, but not limited to Ms. Victor's right of protection from battery, assault, false imprisonment, gender violence, threats, intimidation, and coercion.

891. Ms. Victor is informed and believes that the Defendants, each of them, know, or should have known, that their unlawful conduct would violate multiple federal and state laws and engaged in such unlawful conduct anyway.

892. The Defendants unlawful conduct was a substantial factor in causing Ms. Victor harm, thereby, Ms. Victor is entitled to compensatory damages against all Defendants for their violations of federal and state laws.

893. Ms. Victor is also entitled to an award of prejudgement interest on any award of damages to the extent permitted by law.

894. Ms. Victor moves the court to issue declaratory and injunctive relief, immediately, against, the City of Los Angeles for the above violations of federal and state laws.

895. Ms. Victor moves the court to issue injunctive relief against the Defendants for the above violations of federal and state laws.

896. The Defendants conspired, aided, or incited each other to threaten and intimidate Ms. Victor while coercing co-conspirators and/or potential witnesses to lie under penalty of perjury to conceal the unlawful conduct of the Defendants and to undermine Ms. Victor's allegations and truth.

897. Ms. Victor, because of the Defendants interference of her civil rights, has suffered economic harm and other consequential damages.

898. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

899. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

900. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

901. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

902. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

903. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

904. In addition to, Ms. Victor is entitled to any statutory or civil penalties applicable by law for the Defendants violations of federal and state laws.

905. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FIFTIETH CAUSE OF ACTION**
**NEGLIGENCE**
***AGAINST ALL DEFENDANTS***

906. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

907. To prove a claim of negligence, a Plaintiff must show that the Defendants acted negligently with respect to a duty imposed on the Defendant by law and that the Plaintiff has suffered damages and the negligence of the Defendants caused the damages.

908. As alleged herein, the Defendants, each of them, failed to provide Ms. Victor a work environment free of harassment and discrimination.

909. Further, the Defendants failed to take all, or any reasonable steps necessary to prevent a work environment free of discrimination and harassment, in fact such discrimination and harassment was condoned, encouraged, tolerated, or ratified by each Defendant. The Defendants, each of them, therefore breached their duty to Ms. Victor to keep her safe while employed at Wally’s.

910. The Defendants, each of them, owed Ms. Victor a duty of care to act in a reasonable and ordinary manner so as not to cause Ms. Victor foreseeable harm.

911. The Defendants and each of them, failed to use ordinary and reasonable care in order to avoid injury to Ms. Victor. This includes, but is not limited to, the Defendants failure to exercise a duty of care to avoid the Defendants sexual harassment, retaliation, and discrimination of female and/or ethnic employees and/or customers, including Ms. Victor, causing her multiple injuries.

912. Ms. Victor is informed and believes and thereon alleges that the Defendants knew or should have known that Ms. Victor was being subjected to sexual harassment, retaliation, discrimination, among other things because the Defendants had been reported against by other victims prior to Ms. Victor’s complaint.

913. Ms. Victor is informed and believes, and based thereon alleges, that despite being informed of the Defendants unlawful conduct, the Defendants, each of them, failed to discipline the Defendants and kept them in their employ, thereby ratifying said unlawful conduct.

914. The conduct of the Defendants constitutes negligence and is actionable under the laws of the State of California.

915. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

916. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

917. As a direct result of the Defendants negligent conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered emotional distress in an amount to be determined at trial.

918. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

919. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms.

Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

920. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

921. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FIFTY FIRST CAUSE OF ACTION**
**FALSE IMPRISONMENT**
***AGAINST ALL DEFENDANTS***

922. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

923. During the course of this litigation, the Defendants, each of them, intentionally deprived Ms. Victor of her freedom by use of unreasonable duress by financially and physically forcing Ms. Victor to remain on the property of Zen Hollywood.

924. During the course of this litigation, the Defendants, each of them, intentionally deprived Ms. Victor of her freedom by use of unreasonable duress by using their financial, political, and social affiliations and connections to ensure Ms. Victor is denied her right to due process and equal protection under the laws of the State of CA and of the United States.

925. Between September and October of 2021, Ms. Victor called the Los Angeles Fire Department over five times to report a problem in her apartment unit, whether it be a gas leak,

carbon monoxide, EMF, or any other toxic substance. The Los Angeles Fire Department refused to provide any answers, help, or aid. Ms. Victor is informed and believes, and based thereon alleges, that the refusal to offer help or aid was an unlawful act committed to aid, abet, incite, compel, coerce, or conspire with the Defendants, each of them.

926. Ms. Victor attempted to go to the Los Angeles Police Department on multiple occasions. When her computers and phones got hacked by the Defendants, the Los Angeles police department not only refused to file a report but referred to Ms. Victor as the "Defendant" based on the police officers own racial profiling and discrimination. Ms. Victor also attempted to go to the Police Department, the night before the Defendants attempted to get her locked up in a mental facility, to file a report, they too failed to provide answers, help, or aid. Ms. Victor is informed and believes, and based thereon alleges, that the refusal to offer help or aid was an unlawful act committed to aid, abet, incite, compel, coerce, or conspire with the Defendants.

927. Upon moving into the Zen Hollywood property, Ms. Victor was required to get a renters insurance policy from Lemonade Insurance. Between September and October of 2021, Ms. Victor had called Lemonade Insurance over ten times asking to be put into hotel as the living conditions on the property of Zen Hollywood were unlivable. Ms. Victor's request was denied each and every time by Lemonade Insurance with the reasoning being that Ms. Victor did not have "that" coverage on her insurance policy, which is false information as Ms. Victor had eighteen thousand dollars ($18,000) in loss of use coverage and should have been able to use such coverage to rent a hotel room and get to immediate safety away from the Defendants. Ms.

Victor is informed and believes, and based thereon alleges, that such denial of insurance was an unlawful act committed to aid, abet, incite, compel, coerce, or conspire with the Defendants.

928. After submitting a fee waiver form to the Los Angeles Superior Court and to Judge Yolanda Orozco, Ms. Victor's Wells Fargo bank account was drained of all its finances. To this day, Wells Fargo has not offered an explanation or documentation to support their actions or to provide an answer to where Ms. Victor's money has gone. Ms. Victor's accounts are now closed and restricted and Ms. Victor herself cannot look or review her own bank statements. Ms. Victor is informed and believes, and based thereon alleges, that such unlawful conduct by Wells Fargo was an unlawful act committed to aid, abet, incite, compel, coerce, or conspire with the Defendants.

929. Ms. Victor did not knowingly or voluntarily consent to remaining on the property of Zen Hollywood for the period of time between September and October of 2021. The Defendants, each of them, ensured that Ms. Victor would be trapped financially and physically to the property.

930. Ms. Victor did not knowingly or voluntarily consent to her case being put into arbitration and has demanded and been under the belief that her case would have a jury trial. The Defendants, each of them, including DOES 1-100, inclusive, ensured that Ms. Victor would be trapped in a litigation that would only benefit the Defendants and deny Ms. Victor her rights as an American citizen.

931. As a result of the Defendants, each of them, physically forcing Ms. Victor to remain on the property of Zen Hollywood without her consent, Ms. Victor was actually harmed.

932. As a result of the Defendants, each of them, forcing Ms. Victor to remain in an arbitration and litigation where corruption flowed frequently throughout, without her consent, Ms. Victor was actually harmed.

933. The Defendants conduct, each of them, was a substantial factor in causing Ms. Victor harm, including general and special damages in an amount to be determined at trial.

934. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

935. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

936. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

937. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

938. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms.

Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

939. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

940. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FIFTY SECOND CAUSE OF ACTION**
**FRAUDULENT AND NEGLIGENT MISREPRESENTATION**
***AGAINST ALL DEFENDANTS***

941. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

942. The Defendants, each of them, represented to Ms. Victor that she was being employed at an environment free from harassment, abuse, discrimination, and retaliation, and environment where Ms. Victor was paid.

943. The Defendants representation was false.

944. The Defendants knew, or should have known, that their representation was false when made and without regard for its truth.

945. The Defendants intended that Ms. Victor rely on their representation; and Ms. Victor reasonably relied on the Defendants representation.

946. The Defendants misrepresented to Ms. Victor, and other employees, that they would be employed at a work environment free of harassment, discrimination, retaliation, or abuse, without reasonable ground for believing it to be true and with the intent to induce Ms. Victor's reliance.

947. The Defendants, each of them, represented to Ms. Victor that she was safe in her work environment, when in truth she was being harassed sexually and non-sexually, assaulted, abused, discriminated against, and retaliated against by the Defendants.

948. The Defendants also misrepresented that Ms. Victor would be working in an environment that paid wages on time and without fraud.

949. The Defendants made such negligent misrepresentations without reasonable ground for believing it to be true and with the intent to induce Ms. Victor's reliance.

950. The Defendants fraudulent misrepresentation has caused Ms. Victor pain and suffering; and Ms. Victors reliance on the Defendants representation was a substantial factor in causing Ms. Victor harm.

951. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

952. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct

result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

953.The Defendants knew or should have known that Ms. Victor did not want to engage in any unlawful behavior with them. Each Defendants conspired and/or aided and abetted the other to harass, retaliate, and discriminate Ms. Victor, amongst other things, displaying intimidation in order to continue to harass, retaliate, and discriminate against Ms. Victor. The Defendants knowing disregard for the safety of Ms. Victor and deliberate failure to monitor or control their behavior caused Ms. Victor to be repeatedly harassed, retaliated against, and discriminated against.

954. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

955. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

956. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

957. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FIFTY THIRD CAUSE OF ACTION**
**NEGLIGENT PREMISES LIABILITY**
***AGAINST ALL DEFENDANTS***

958. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

959. Ms. Victor alleges that the Defendants, each of them, were negligent in their use and/or maintenance of the Zen Hollywood property as alleged herein.

960. Defendant Mr. Marciano, Maurice, CONCORD, Mr. Greene, and 1840 Highland, owned or controlled the property on which Ms. Victor was harmed.

961. As the owner or occupier of the property, the Defendants were under a duty to manage and act reasonably to control their property, guests, and tenants and to prevent any type of injury, among other things.

962. Based on information and belief, Ms. Victor alleges that the Defendants, each of them, have a history of violent unlawful activity/conduct.

963. The Defendants were aware or should have been aware of the risk of Ms. Victor being harmed, happening on the Zen Hollywood property.

964. The Defendants also created the risk that Ms. Victor would be assaulted, harmed, and/or injured by them or others by creating an intimidating and dangerous environment on their property.

965. The Defendants, intentionally, with malice, and with cruelty, interfered with Ms. Victor's ability of leaving the property with their false imprisonment and involuntary servitude of Ms. Victor in apartment 224.

966. By virtue of the information, the Defendants and their co-conspirators knew or should have known as alleged herein, the Defendants owed Ms. Victor a duty to prevent any harm, intimidation, or threats, and had a duty to prevent the kinds of injuries Ms. Victor had sustained.

967. The Defendants breached their duty of care by way of their own conduct as alleged herein. The Defendants failed to take reasonable steps to protect Ms. Victor. Among other things, the Defendants failed to behave appropriately and took enjoyment watching Ms. Victor be unable to leave the Zen Hollywood property.

968. The Defendants, each of them, failed to control their own aggressive behavior.

969. The Defendants failed to provide security to Ms. Victor, despite having security on the property, thereby breaching their duty to ensure the safety of tenants on the premises, such as Ms. Victor, who was injured as a result of the Defendants breach of duty.

970. As a direct result of the Defendants wrongful acts, Ms. Victor has suffered and continues to suffer, substantial losses; and has suffered, and continues to suffer.

971. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

972. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

973. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

974. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in a oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

975. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

976. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FIFTY FOURTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

***AGAINST ALL DEFENDANTS***

977. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

978. A contract existed between the Defendants and Ms. Victor. Inherent, in contractual relationships is a covenant of good faith and fair dealing, which implies a promise that each party will refrain from doing anything to injure the others right to receive the benefits of the agreement and which protects the parties reasonable expectations from that agreement.

979. The Defendants breached the covenant of good faith and fair dealing in their contractual arrangements with Ms. Victor by discriminating, harassing, abusing, and retaliating against her and because of all the grounds alleged above.

980. The Defendants breach of covenant of good faith and fair dealing was a substantial factor in causing Ms. Victor harm.

981. By engaging in the above described conduct the Defendants engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress. Ms. Victor's damages were the actual and proximate causation of the emotional distress caused by the Defendants outrageous conduct.

982. As a direct result of the Defendants unlawful conduct, Ms. Victor has suffered emotional distress, fear, embarrassment, nervousness, nausea, anxiety, worry, shame, humiliation, mental anguish, shock, sleeplessness, and other physical manifestations. As a direct result of the Defendants despicable conduct, Ms. Victor has suffered mental anguish and emotional distress in an amount to be determined at trial.

983. The conduct of the Defendants alleged herein was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Ms. Victor's rights, and further, with the intent, design and purpose of injuring Ms. Victor.

984. The Defendants actions were oppressive, malicious, and done with extreme cruelty and with conscious disregard to Ms. Victor's rights and feelings. The acts taken toward Ms. Victor were carried out by and/or ratified by the Defendants and/or managing agent employees of Wally's acting in an oppressive, fraudulent, malicious, despicable, and inexcusable manner in order to injure and damage Ms. Victor, thereby justifying an award to her of punitive and exemplary damages in a sum appropriate to punish and make an example of the Defendants, each of them.

985. Ms. Victor has incurred, and will continue to incur, attorney's fees in the prosecution of this action and therefore demands such reasonable attorney's fees and costs.

986. WHEREFORE, Ms. Victor requests judgement as is further set below.

**FIFTY FIFTH CAUSE OF ACTION**
**UNFAIR COMPETITION**
***AGAINST ALL DEFENDANTS***

987. Ms. Victor re-alleges and incorporates by reference all previous paragraphs as though fully set forth herein.

988. The Defendants have engaged in and continue to engage in the following unlawful, unfair, and/or fraudulent business practices in violation of section 17200 of the CA Business and Professions code: failure to pay all wages at the time of separation from employment; failure to pay wages in a timely manner; failure to pay wages at the place of discharge; failure to furnish

wage and hour statements; failure to provide meal and rest periods; failure to pay gratuities and unlawful taking of gratuities; failure to pay wages; wrongful termination; unlawful retaliation based on violations of the Defendants social media; unlawful contracts in violation of public policy; unlawful retaliation against a whistleblower; wrongful termination in violation of public policy; defamation; violation of the Unruh Civil Rights Act; violation of the CA Civil Code section 51.5; violation of the Tom Bane Civil Rights Act; sexual harassment in violation of CA Civil Code section 51.9; gender violence; sexual battery; battery; assault; stalking; constructive invasion of privacy; wrongful injuries to an animal; unlawful continued violations of CA Civil Codes; unlawful continued violations of CA Labor Codes; sex based discrimination; race based discrimination; color based discrimination; ancestry based discrimination; genetic information based discrimination; genetic information based discrimination; ancestry based discrimination; sexual harassment, failure to combat discrimination in violation of state policy; failure to combat harassment in violation of state policy; retaliation in violation of FEHA; employment discrimination in violation of FEHA; quid pro quo sexual harassment in violation of FEHA; unlawful coercion in violation of FEHA; hostile work environment and sexual harassment in violation of FEHA; sexual favoritism in violation of FEHA; failure to prevent sexual harassment in violation of FEHA; negligent hiring and retention; intentional infliction of emotional distress; negligent infliction of emotional distress; violations of the CA Whistleblower Protection laws; unlawful employment conditions in violation of public policy; invasion of privacy; fraud; deceit; perjury; aggravated mayhem; hate crime; violations of the US Constitution and the CA Constitution; negligence; false imprisonment; fraudulent and negligent misrepresentation;

negligent premises liability; breach of implied covenant of good faith and fair dealing; and stalking.

989. The Defendants knowing conduct, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in CA Business and Professions Code sections 17200-17208. Specifically, the Defendants conducted business activities while failing to comply with the legal mandates cited herein.

990. As a result of the Defendants unfair business practices, the Defendants have reaped unfair benefits at Ms. Victor's expense.

991. By engaging in the acts and practices described above. The Defendants committed one or more acts of unfair competition within the meaning of the Business and Profession Code section 17200, which includes unlawful, unfair, or fraudulent business acts or practices.

992. The Defendants, each of them, committed unlawful business acts or practices by, among other things, engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Ms. Victor and engaging in conduct that is immoral, unethical, oppressive, or substantially injurious to Ms. Victor.

993. The Defendants committed fraudulent business acts or practices by, among other things, engaging in conduct that the Defendants know or should have know were likely to and did deceive the public, including Ms. Victor.

994. As a direct and foreseeable result of the Defendants unlawful conduct as alleged herein, the Defendants business acts or practices have caused injury to Ms. Victor and the public. Ms. Victor is entitled to relief, including full restitution and/or disgorgement of all

revenues, earnings, profits, compensation, and benefits that may have been obtained by the Defendants as a result of such business acts or practices.

995. Ms. Victor is informed and believes, and based thereon alleges, that the Defendants illegal acts as described herein are a serious and continuing threat to Ms. Victor and the public.

996. If the Defendants are allowed to continue their unfair and unlawful acts, Ms. Victor and the public will suffer further immediate and irreparable injury, loss, and damage.

997. Ms. Victor is further informed and believes, and based thereon alleges, that in the absence of a temporary restraining order and preliminary and permanent injunctions as prayed below, the Defendants, each of them, will continue to unfairly and unlawfully compete.

998. Ms. Victor has lost money and/or property and has suffered injury as a direct result of the Defendants unlawful business acts and practices as well as severe emotional distress over safety issues.

999. Ms. Victor seeks restitution, declaratory, and injunctive relief, and any other relief allowable under the CA Business and Professions Code section 17200, et seq.

1000. WHEREFORE, Ms. Victor requests judgement as is further set below.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFF DANIELLE VICTOR respectfully prays for judgement and relief against the DEFENDANTS, each of them, and DOES 1-100, inclusive, and each of them, as follows:

1. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code sections 201-203, and award Ms. Victor in the amount of thirty days' (30) wages as a waiting time penalty, pursuant to CA Labor Code section 256;

2. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 210, an award Ms. Victor all civil penalties applicable by law, in an addition to twenty-five percent (25%) of the amount withheld from Ms.Victor;

3. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 226, and to penalize the Defendants with an infraction for such violation;

4. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 226, and award Ms. Victor four thousand dollars ($4,000) as the Defendants penalty for their violations;

5. That the court find and declare, that the Defendants, each of them, has violated CA Labor Code section 204, an award penalties for each violation, in the amount of one hundred dollars ($100) and two hundred dollars ($200) for each subsequent violation;

6. That the court award Ms. Victor penalties, pursuant to CA Labor Code section 226.3, of two hundred and fifty dollars ($250) for each violation of CA Labor Code section 226, subdivision (a), and one thousand dollars ($1,000) for each subsequent violation; and any and all other civil penalties available pursuant to CA Labor Code section 226.3;

7. That the court award Ms. Victor the penalty of seven hundred and fifty dollars ($750), pursuant to CA Labor Code section 226 subdivision (f);

8. That the court award Ms. Victor the maximum number of hours accruable pursuant to CA Labor Code section 247.5;

9. That the court award Ms. Victor payment of all premium wages for each day the Defendants failed to provide all required off-duty meal periods;

10. That the court find and declare that the Defendants, each of them, guilty of a misdemeanor pursuant to CA Labor Code section 226.6, and may the court award Ms. Victor any civil penalties applicable by law in addition to, including any other penalty provided by law;

11. That the court award the penalty of seven hundred and fifty dollars ($750) as well as injunctive relief, and any additional interest thereon, pursuant to CA Labor Code section 1198.5;

12. That the court prohibit the Defendants from introducing any evidence, books, documents, or records that can add further fraud on the court, pursuant to CA Labor Code section 1174.1;

13. That the court award the civil penalty of five hundred dollars ($500) to Ms. Victor, pursuant to CA Labor Code section 1174.5;

14. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code 1175;

15. That the court award Ms. Victor compensation of one additional hour of pay for every meal or rest or recovery period that the Defendants did not provide to Ms. Victor, pursuant to CA Labor Code 226.7, subdivision (c);

16. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code section 351 and 354; and award Ms. Victor a civil penalty of a minimum of one thousand dollars ($1,000);

17. Pursuant to CA Labor Code section 356, every department of the State of California is bound, as part of the social public policy of the State of California, to prevent fraud upon the public in connection with the practice of tipping. The Defendants have attempted to use a private arbitration to fraud the public and Ms. Victor from gratuity she has earned and was denied. Ms. Victor moves the court to enforce such public policy and prevent the Defendants from further fraud on the court and upon the public;

18. That the court award Ms. Victor compensation for all said gratuity, plus interest thereon;

19. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to both CA Labor Code section 510 and CA Labor Code section 553;

20. That the court award Ms. Victor all unpaid compensation for overtime, including interest, plus prejudgement interest, and further all attorney's fees and costs for enforcing a court order for such compensation, pursuant to CA Labor Code section 1194, subdivision (a) and CA Labor Code section 1194.3;

21. That the court order an injunction against the Defendants, each of them, to stop any further violations of any such laws, regulations, or orders by the Defendants, pursuant to CA Labor Code section 1194.5;

22. That the court award Ms. Victor all civil penalties available pursuant to CA Labor Code section 558, subdivisions (a) and (c); in addition to any other civil or criminal penalties provided by law;

23. That the court award Ms. Victor all compensation owed, plus interest thereon, including prejudgement interest to the extent of the law;

24. The the court award Ms. Victor all civil penalties applicable by law for each separate invasion of her privacy by the Defendants, each of them; in addition to any other civil and criminal penalties applicable by law;

25. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each separate violation, pursuant to CA Labor Code section 1102.5, subdivision (f);

26. That the court enforce an injunction restraining the Defendants, each of them, from the use or operation thereof until their working conditions are no longer a serious menace to the life and safety of Ms. Victor and the lives and safety of the public;

27. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor, pursuant to CA Labor Code section 1199;

28. That the court award Ms. Victor three times the maximum amount of actual damages for the Defendants violations of the Unruh Civil Rights Act, CA Civil Code section 51;

29. That the court order injunctive relief for the Defendants, each of them, discrimination and violations of the Unruh Civil Rights Act; in addition to damages for past harm;

30. That the court award Ms. Victor a civil penalty of twenty-five thousand dollars ($25,000) at all times applicable, pursuant to CA Civil Code section 52; in an amount no less than seventy-five thousand dollars ($75,000);

31. That the court grant Ms. Victor all statutory damages, including actual and exemplary damages pursuant to CA Civil Code section 52; in an amount no less than one million dollars ($1,000,000);

32. That the court find and declare that the Defendants, each of them, are guilty of the crime of stalking, pursuant to the CA Penal Code section 646.9;

33. That the court award Ms. Victor all general, special, and punitive damages available under each cause of action, pursuant to CA Civil Code section 3294; in an amount no less than one million dollars ($1,000,000);

34. That the court award Ms. Victor three times the amount of any general and special damages; in addition to a civil penalty of fifty thousand dollars ($50,000) for each responsible person, pursuant to CA Civil Code section 1708.8, subdivision (e); in an amount no less than six million dollars ($6,000,000);

35. That the court award Ms. Victor all exemplary damages applicable by law, pursuant to CA Civil Code section 3340;

36. That the court award Ms. Victor all damages applicable by law plus prejudgement interest, pursuant to CA Civil Code sections 3287 and 3288; and any other provisions of law providing for prejudgement interest;

37. That the court order the Defendants, each of them, enjoined, pursuant to the police power granted by CA Government Code sections 12920 and 12920.5 for failing and refusing to comply with the mandates of FEHA;

38. That the court order the Defendants, each of them, enjoined, pursuant to CA Government Code, section 12965, subdivision (c), for failing and refusing to comply with the mandates of FEHA;

39. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each person who intentionally engaged in acts of reprisal, retaliation, threats, coercion, or similar acts against Ms. Victor for making protected disclosures, pursuant to CA Government Code section 8547.8, subdivision (b); in an amount no less than one million, two hundred thousand dollars ($1,200,000);

40. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each person who intentionally engaged in acts of reprisal, retaliation, threats, coercion, or similar acts against Ms. Victor for making protected disclosures, pursuant to CA Government Code section 8547.13, subdivision (d); in an amount no less than one million, two hundred thousand dollars ($1,200,000);

41. That the court award Ms. Victor a civil penalty of two thousand five hundred dollars ($2,500), pursuant to CA Penal Code 631;

42. That the court award Ms. Victor a civil penalty of ten thousand dollars ($10,000) for each violation, for each person that violated CA Penal Code section 631, pursuant to CA Penal

Code section 632; in an amount no less than one million two hundred thousand dollars ($1,200,000);

43. That the court find and declare that the Defendants, each of them, are guilty of a felony, for each separate violation, pursuant to CA Penal Code section 115, subdivision (a);

44. That the court find and declare that the Defendants, each of them, are guilty of a misdemeanor pursuant to CA Penal Code section 133;

45. That the court find and declare that the Defendants, each of them, are guilty of perjury pursuant to CA Penal Code section 118;

46. That the court find and declare that the Defendants, each of them, are guilty of subornation of perjury pursuant to CA Penal Code section 127;

47. That the court find and declare that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 132;

48. That the court find and declare that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 134;

49. That the court find and declare that the Defendants, each of them, are guilty of a public offense pursuant to CA Penal Code section 136.1;

50. That the court find and declares that the Defendants, each of them, are guilty of a felony pursuant to CA Penal Code section 182;

51. That the court award Ms. Victor a civil penalty of twenty-five thousand dollars ($25,000) pursuant to CA Penal Code section 182;

52. That the court enforce an order protecting Ms. Victor and her family from any further acts of violence, threats, stalking, or harassment by each Defendant, including DOES 1-100, inclusive, pursuant to CA Penal Code section 422.85;

53. That the court issue declaratory and injunctive relief, immediately, against the City of Los Angeles for the above violations of federal and state laws;

54. That the court issue injunctive relief, immediately, against the Defendants for the above violations of federal and state laws;

55. That the court award Ms. Victor all loss of earnings; in an amount no less than one million dollars ($1,000,000);

56. That the court award Ms. Victor all future loss of earnings; in an amount no less than one million dollars ($1,000,000);

57. That the court award Ms. Victor all economic and non-economic damages; in an amount no less than one million dollars ($1,000,000);

58. That the court award Ms. Victor all past and future medical and related expenses; in an amount no less than one million dollars ($1,000,000);

59. That the court award Ms. Victor all monetary damages; in an amount no less than one million dollars ($1,000,000);

60. That the court award Ms. Victor all punitive and exemplary damages, in a sum appropriate to pushes the Defendants, each of them, including DOES 1-100, inclusive, and set an example for others; in an amount no less than four million dollars ($4,000,000);

61. That the court award Ms. Victor all special damages, in an amount no less than one million dollars ($1,000,000);

62. That the court award Ms. Victor all general damages, in an amount no less than one million dollars ($1,000,000);

63. That the court issue an order imposing all statutory and/or civil penalties provided by law, together with interest on these amounts; in an amount no less than one million dollars ($1,000,000);

64. That the court issue a declaratory judgement that the Defendants, each of them, have violated the CA Labor laws and public policy as alleged herein;

65. That the court issue a declaratory judgment that the Defendants, each of them, have violated CA Civil laws and public policy as alleged herein;

66. That the court issue a declaratory judgement that the Defendants, each of them, have violated CA Government laws and public policy as alleged herein;

67. That the court issue a declaratory judgement that the Defendants, each of them, have violated the laws of the State of California and of the CA Constitution as alleged herein;

68. That the court issue a declaratory judgement that the Defendants, each of them, have violated the laws of the United States and of the United States Constitution as alleged herein;

69. That the court issue a declaratory judgement that the Defendants, each of them, have violated CA Penal laws and public policy as alleged herein;

70. That the court order the Defendants, each of them, enjoined and to cease and desist from unlawful and/or unfair business activities in violation of CA Business and Professions Code section 17200, pursuant to CA Business and Professions Code section 17203;

71. That the court award Ms. Victor restitution of the funds improperly obtained by the Defendants, each of them.

72. That the court award Ms. Victor restitution of all monies due to Ms. Victor from the unlawful business practices of the Defendants, each of them;

73. That the court award Ms. Victor all consequential damages applicable by law; in an amount no less than one million dollars ($1,000,000);

74. That the court award Ms. Victor for all prejudgement interest, available by law, at the prevailing legal rate;

75. That the court award Ms. Victor for all post judgement interest, available by law, at the prevailing legal rate;

76. That the court award Ms. Victor any further equitable relief that the court may deem just and proper;

77. That the court award Ms. Victor any further available statutory penalties, together with interest, that the court may deem just and proper;

78. That the court award of such other and further relief that the court may deem appropriate;

79. That that court award or issue all other available remedies applicable by law;

80. That the court award Ms. Victor all reasonable attorney's fees and costs, including any additional expenses; in an amount no less than three million dollars ($3,000,000);

**DATED:** May 12, 2022

**BY:** ______________________
DANIELLE K. VICTOR
PLAINTIFF IN PRO SE

**DEMAND FOR A JURY TRIAL**

PLAINTIFF, DANIELLE VICTOR, hereby demands a jury trial with respect to all issues triable of right by jury. PLAINTIFF, DANIELLE VICTOR, demands that each separate request for immediate injunctions, protective orders, and emergency relief be granted prior to such jury trial. The amount demanded exceeds twenty-five thousand dollars ($25,000), pursuant to CA Government Code section 72055.

**DATED:** MAY 12, 2022

**BY:** ______________________
DANIELLE VICTOR
PLAINTIFF IN PRO SE

**VERIFICATION**

I am the Plaintiff in this action. I have read the foregoing FIRST AMENDED VERIFIED LEGAL CLAIMS AND COMPLAINT FOR DAMAGES and know its contents.

The matters stated in the foregoing FIRST AMENDED VERIFIED LEGAL CLAIMS AND COMPLAINT FOR DAMAGES are true of my own knowledge except as to those matters which are alleged on information and belief, and as to those matters I believe them to be true.

Executed on May 12, 2022, at Methuen, Massachusetts.

I declare under the penalty of perjury under the laws of the State of California and under the laws of the United States of America, that the forgoing is true and correct.

DKV

Danielle K. Victor
Plaintiff in Pro Se

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIELLE VICTOR<br><br>PLAINTIFF/PETITIONER,<br>v.<br>SOUTHWEST WINE & SPIRITS, LLC, ET AL.<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**REQUEST TO PROCEED IN FORMA PAUPERIS WITH DECLARATION IN SUPPORT** |

I, Danielle Victor, declare under penalty of perjury, that the foregoing is true and correct; that I am the petitioner/plaintiff in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefore, I state that because of my poverty I am unable to pay the costs of said proceedings or to give security therefore and that I am entitled to redress.

I further declare under penalty of perjury that the responses which I have made to the questions and instructions below are true, correct and complete.

1. Are you presently employed? ☐Yes ☑No
   a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. ______
   b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. June of 2021, I was making between $1,200 - $4,000 a month while I was working.
2. Have you received, *within the past twelve months*, any money from any of the following sources?
   a. Business, profession or form of self-employment? ☐Yes ☑No
   b. Rent payments, interest or dividends? ☐Yes ☑No
   c. Pensions, annuities or life insurance payments? ☐Yes ☑No
   d. Gifts or inheritances? ☐Yes ☑No
   e. Any other income (other than listed above)? ☐Yes ☑No
   f. Loans? ☐Yes ☑No

   If the answer to any of the above is yes, describe such source of money and state the amount received from each source during the past twelve (12) months: ______

3. Do you own any cash, or do you have money in a checking or savings account? (Include any funds in prison accounts, if applicable.) ☐Yes ☑No

   If the answer is yes, identify each account and separately state the amount of money held in **each** account for each of the *six (6) months prior* to the date of this declaration.

   ______________________________

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☑Yes ☐No

   If the answer is yes, describe the property and state its approximate value: I own an Acura TSX 2010, however, it is not registered, nor do I drive it due to PTSD from this litigation. I am looking to sale my vehicle.

5. In what year did you last file an Income Tax return? 2018

   Approximately how much income did your last tax return reflect? $35,000

6. List the persons who are dependent upon your for support, state your relationship to those persons, and indicate how much you contribute toward their support:

   ______________________________

   ______________________________

I understand that a false statement or answer to any question in this declaration will subject me to penalties for perjury. I further understand that perjury is punishable by a term of imprisonment of up to five (5) years and/or a fine of $250,000 (18 U.S.C. Sections 1621, 3571).

| California | Los Angeles |
|---|---|
| State | County (or City) |

I, Danielle Victor, declare under penalty of perjury that the foregoing is true and correct.

| 05/16/2022 | DRV |
|---|---|
| Date | Plaintiff/Petitioner (Signature) |